**MILSTEIN JACKSON
FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Andrew Whitman, State Bar No. 312244
awhitman@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**HEIDEMAN NUDELMAN &
KALIK, P.C.**
Richard D. Heideman
rdheideman@hnklaw.com
Noel J. Nudelman
njnudelman@hnklaw.com
Tracy Reichman Kalik
trkalik@hnklaw.com
1146 19th Street, NW 5th Floor
Washington, DC  20036
Tel: (202)463-1818
Fax: (202)463-2999

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONY ELKIES and DANIELLE ALFANDRY, individually and on behalf of all others situated;<br><br>        Plaintiffs,<br><br>   vs.<br><br><br>JOHNSON & JOHNSON SERVICES, INC., a New Jersey limited liability company, JOHNSON & JOHNSON CONSUMER INC. a New Jersey limited liability company, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.  2:17-cv-7320<br><br>**CLASS ACTION COMPLAINT**<br><br>1.   Violations of the False and Misleading Advertising Law, <u>Cal. Bus. & Prof. C</u>. §§ 17500, *et seq.*<br><br>2.   Negligent Misrepresentation<br><br>3.   Intentional Misrepresentation<br><br>4.   Breach of Express Warranty<br><br>5.   Breach of Implied Warranty of Merchantability<br><br>6.   Breach of Implied Warranty of Fitness for Purpose |

7.  Violations of the Consumer Legal Remedies Act, <u>Cal. Civ. C.</u> §§ 1750, *et seq.*

8.  Violations of Unfair Competition Law, 'Unfair' and 'Fraudulent' Prongs, <u>Cal. Bus. & Prof. C.</u> §§ 17200, *et seq.*

9.  Violations of Unfair Competition Law, Unfair and Fraudulent Prongs, <u>Cal. Bus. & Prof. C.</u> §§ 17200, *et seq.*

Plaintiffs Rony Elkies and Danielle Alfandry ("Plaintiffs"), by their undersigned counsel, on behalf of themselves and all persons similarly situated who purchased Infants' Tylenol, bring this Class Action Complaint against Defendants Johnson & Johnson Services, Inc. ("Johnson & Johnson") and Johnson & Johnson Consumer Inc. ("Consumer Inc.") (herein together "Defendants"). Plaintiffs allege the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge:

## <u>NATURE OF THE ACTION</u>

1.      Johnson & Johnson Services Inc., by and through its wholly owned subsidiary Johnson & Johnson Consumer Inc., manufactures, markets and sells their own brand of pain reliever and fever reducer under the "Tylenol" label including Infants' Tylenol ("Infants") and Children's Tylenol ("Children's"), respectively, two well-known brand-name Over The Counter ("OTC") medications.

2.      Taking too much Acetaminophen, the active ingredient in Tylenol, can be dangerous and even fatal, a problem that terrifies parents and causes them to be extra careful when buying medicine for their young children and babies. Defendants exploit this fear to mislead consumers and trick them into buying Infants' when they could buy Children's and receive the exact same product for less money.

3.      In reality, the medicine contained in a bottle of Infants' and a bottle of Children's contain the exact same ingredients in the exact same dosage amounts, yet Defendants market and sell Infants' to consumers, such as the Plaintiffs, for

substantially more than Children's. In stores, Infants' costs approximately four times as much per ounce over Children's for the same amount of the same medicine.

4.     Despite the products having identical compositions in the same amounts, Defendants have created and marketed these two products to deceive consumers, such as the Plaintiffs, in believing that the two products are different; to wit, that Children's is unfit for children younger than two (2) years old, and that only Infants' should be given to children younger than two (2) years old so that they will pay a premium for Infants'. In addition to the huge price difference, Defendants' purposely package Infants' with a picture of a mother holding her young baby under the name "Infants' Tylenol" while Children's contains a mother hugging her significantly older child under "Children's Tylenol."

5.     No reasonable consumer would pay approximately four times more for Infants' as for Children's unless he or she was deceived into thinking that infants cannot safely take Children's Tylenol and does not need to take Infant's Tylenol.

## JURISDICTION AND VENUE

6.     Jurisdiction and venue are properly vested in this Court because a substantial portion of the acts, events, and/or failure to act giving rise to the claims alleged herein occurred in this judicial district. In addition, the Defendants have substantial business contacts with the State of California, or otherwise avails itself of the markets within California, through promotion, sale, marketing and distribution of Infant's Tylenol and Children's Tylenol in California, to render the exercise of jurisdiction by this Court proper and necessary. Moreover, Defendants can be brought before this Court pursuant to California's 'long-arm' jurisdictional statute.

7.     This action is brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (CAFA). Jurisdiction is vested in this Court in that the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and this is a proposed nationwide class action in which more than two-thirds of the proposed

CLASS ACTION COMPLAINT

plaintiff class, on the one hand, and Defendants, on the other, are citizens of different states.

8.    Venue is proper pursuant to 28 U.S.C. § 1391 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiffs' claims occurred in this District. Specifically, Plaintiffs purchased the Infant's Tylenol in Los Angeles County.

## PARTIES

9.    At all relevant times, Plaintiffs Rony Elkies and Danielle Alfandry (collectively, "Plaintiffs") have resided in Sherman Oaks, California. At the time Plaintiff Rony Elkies and/or his wife, Danielle Alfandry, purchased Infants' for the first time on or about January 11, 2016, they resided and were domiciled at this address. Plaintiffs are the parents of a baby girl, G.E, who is was born in November 2015 and is 21 months old.

10.    Defendant Johnson & Johnson Services Inc. is, and at all times mentioned in this Complaint was, a corporation organized and existing under the laws of the State of New Jersey with headquarters at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.  Defendant Johnson & Johnson Services Inc. can sue and be sued in this Court.

11.    Defendant Johnson & Johnson Consumer Inc. is, and at all times mentioned in this Complaint was, organized and existed under the laws of the State of New Jersey with headquarters at 7050 Camp Hill road, Fort Washington, PA 19034. Johnson & Johnson Consumer Inc. was formerly McNeil PPC, Inc. ("McNeil") Defendant Johnson & Johnson Consumer Inc. can sue and be sued in this Court.

## FACTUAL ALLEGATIONS

12.    McNeil created Tylenol as a prescription painkiller for children in 1955.

13.    Defendant Johnson & Johnson Services Inc. bought McNeil in 1959, turning Tylenol into an OTC drug the next year.

14.     Defendants produce two different pediatric medicines – Infants' Tylenol and Children's Tylenol.

15.     Prior to the acts complained of herein, Infants' was only available with a concentration of 80 mg/mL of acetaminophen while Children's was only available with a concentration of 160 mg/5 mL of acetaminophen.

16.     The different concentrations caused some consumers to accidentally provide the wrong dosage of medicine to their children, causing them to overdose.

17.     In 1995, a law suit in San Francisco County Superior Court brought to light a potential for confusion between their Infants' and Children's products stemming from the different concentrations.

18.     Between 2000 and 2009 the FDA received reports of twenty (20) children dying from acetaminophen toxicity, at least three (3) deaths were tied directly to mix-ups involving the two pediatric medicines.

19.     Upon information and belief, in May 2011 Defendants changed Infants' to 160 mg/5 mL, the same concentration as their Children's product.

20.     On December 22, 2011, the FDA informed the public that liquid acetaminophen marketed for infants would only be available in 160 mg/5 mL in order to prevent confusion and accidental acetaminophen toxicity.

21.     Both products have the same concentration of acetaminophen, are interchangeable and therefore suitable for both infants and children or infants, adjusting only the dosage based on the weight and age of the child.

22.     The only differences in Infants' and Children's became the price and Infants' comes with a syringe while Children's has a plastic cup for dosing.

23.     Since at least September 2014, Defendants have been engaging in the unfair, unlawful, deceptive, and fraudulent practice of manufacturing, marketing and selling the same product as two unique medicines, and that Children's is unfit for children under the age of two, thus implying that parents must purchase the more expensive Infant's for children under two.

24. Defendants mislead consumers by using deceptive marketing techniques which obscure a critical fact—that Infant's and Children's are in fact exactly the same—from consumers nationwide.

25. The front cover of Children's contains a large image of a mother hugging her school-age daughter underneath the description "Ages 2-11 Years."

26. The medicine is named "Children's Tylenol" and is clearly marketed as only suitable for children between the ages of two (2) and eleven (11) years.

27. On the official Tylenol website, Defendants include an "Acetaminophen Dosage for Infants and Children" chart that leaves ages zero (0) to twenty-three (23) months blank for Children's.

28. Defendants use the Children's container and their official website to deceive consumers and incorrectly lead them to believe that the approximately 400% cheaper per ounce Children's product cannot be safely given to anyone younger than two years old.

29. Instead, Defendants intentionally deceive consumers so that they will buy Infants' which costs significantly more even though it is the exact same product and dosage as Children's.

30. The Infants' container has an image of a mother holding her very young baby under the word "Infants" and no age range.

31. Defendants know that consumers, such as the Plaintiffs, with young infants are typically more cautious about what medicine they give to their baby, especially when they are giving their baby a product that in the past has caused accidental deaths.

32. No reasonable consumer would be willing to pay approximately 400% more for the same product unless they have good reason to believe that they are different products.

33. Consumers will reasonably believe that Infants' has some unique qualities to it because it is so much more expensive. They buy it for their babies

CLASS ACTION COMPLAINT

1    because they are led to believe that there is no suitable Tylenol replacement.

2        34.    Consumers believe there is no suitable alternative because Children's is

3    marketed as not suitable for, and therefore not safe for, anyone younger than two

4    years old; despite this being completely false.

5        35.    Defendants' deceptive and misleading advertising, marketing, packaging

6    and sales practices harness consumers' trust for the brand and fear of the

7    consequence of acetaminophen toxicity to trick consumers into vastly overpaying for

8    a product that could easily be purchased at the same store and that can usually be

9    found on the same shelf.

10

11                **THE ELKIES FAMILY PURCHASE OF INFANTS'**

12       36.    On or about January 11, 2016, Danielle Alfandry made her first purchase

13   of Infants'.

14       37.    Ms. Alfandry made her purchase after taking her infant daughter, G.E. to

15   her pediatrician for her two-month well baby check-up.

16       38.    At that time, G.E. received vaccinations, and the pediatrician advised

17   Ms. Alfandry that if G.E. was in discomfort following the vaccine administration, she

18   could treat her baby with Tylenol.

19       39.    Following the appointment, Ms. Alfandry stopped at the CVS pharmacy

20   located at 14735 Ventura Blvd, Sherman Oaks, CA, 91403.

21       40.    Once inside the store, Ms. Alfandry went to the "Infant section" in the

22   store's OTC medicine section and located Infants' Tylenol.

23       41.    Ms. Alfandry saw that it was marketed for babies.

24       42.    Ms. Alfandry then purchased the Infants' from CVS.  She recalls paying

25   approximately $8.90 for 1 fl oz. of Infants.

26       43.    She used the Infants' when G.E. appeared to be in discomfort following

27   her vaccine administration.

28

44.    In the following months, Ms. Alfandry and/or her husband Mr. Elkies, used Infants' to treat their daughter G.E.  They made several additional purchases of Infants' at their CVS pharmacy.

45.    Just after G.E. turned one year old, G.E had been ill with a high fever. Because of her high fever, Plaintiffs took G.E. to an urgent care in Tarzana, California.

46.    The urgent care doctor determined that Mr. and Ms. Alfandry could treat G.E.'s fever by again giving her Tylenol.  At that time, the doctor told the Plaintiffs, that although G.E. was only one year old, they did not need to purchase Infants', but rather could buy Childrens', as it was the same product, but was sold for less money and in a larger volume.

47.    Following G.E.'s visit to urgent care, the Plaintiffs' returned to CVS to purchase Tylenol for G.E.  Although the doctor had told them that the products were the same, the Plaintiffs continued to purchase Infants' because they were still concerned that it was not safe to give G.E. Children's.

## CLASS ALLEGATIONS

48.    Plaintiffs  bring this action as a class action on behalf of themselves and the Class (the "Class") consisting of:

>    All persons who purchased Infants' Tylenol for personal use in
>    the United States since October 5, 2014.

49.    Plaintiffs also brings this suit as a class action on behalf of the following subclass ("California State Subclass"):

>    All persons who purchased Infants' Tylenol for personal use in
>    California since October 5, 2014.

50.    The following persons are excluded from the Class and Subclass: Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or

7

directors, or any of them.  Also excluded from the proposed Class and Sub-Class are the Court, the Court's immediate family and Court staff.

51.    The Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 21(a) and (b)(3).

52.    The members of the Class and Subclass are so numerous that joinder of all members is impracticable. On information and belief, there are in excess of tens of thousands of members of the Class.

53.    Plaintiffs' claims are typical of the Class and the California State Subclass. Plaintiffs, like all members of the Class have been subjected to Defendant's deceptive and misleading advertising, marketing, packaging and pricing for Infant's and Children's Tylenol. The harm suffered by Plaintiffs and the Class was and is caused by the same misconduct by Defendants.

54.    Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class and Subclass. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiffs are members of the Class and Subclass described herein and do not have interests antagonistic to, or in conflict with, the other members of the Class and Subclass.

55.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims was not available, Defendants would likely continue their wrongful conduct, would unjustly retain improperly obtained revenues, and/or would otherwise escape liability for their wrongdoing as asserted herein.

56.    Common questions of law and fact exist as to all members of the Class, which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

    a.    Whether Defendants' marketing, advertising, packaging and pricing of their Infants' Tylenol and Children's Tylenol products are likely to deceive reasonable consumers;

    b.    Whether marketing, advertising, packaging and pricing of their Infants' Tylenol and Children's Tylenol products caused Plaintiffs and the Class to suffer economic harm;

    c.    Whether Defendants violated California Business and Professions Code 17200, *et seq*;

    d.    Whether Defendants violated California Business and Professions Code 17500, *et seq*;

    e.    Whether Defendants' advertising, marketing, packaging, and pricing of Infants' Tylenol and/or Children's Tylenol was material to reasonable consumers;

    f.    Whether Defendants breached the implied covenant of good faith and fair dealing in their sales transactions with Plaintiffs and the Class members; and

    g.    Whether Plaintiffs are entitled to restitution and if so, the appropriate measure.

57.    Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

58.    The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for the Defendants. Prosecution as a class action will eliminate the possibility of repetitious litigation.

CLASS ACTION COMPLAINT

59.     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. If the Court were to grant an injunction making Defendant's representations no longer misleading as set forth above, then Plaintiff would consider purchasing Children's or Infant's in the future.

## FIRST CAUSE OF ACTION
### Violations of False and Misleading Advertising Law (FAL)
### California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et se*q.
### (on behalf of Plaintiff and the proposed Class)

60.     Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

61.     In their advertising of Infants', Defendants made false and misleading statements in order to induce consumers into purchasing Infants' on a false premise and failed to make material disclosures that Infants'  is the same product as Children's .

62.     Defendants are aware that the claims they make about Infants' are false, misleading, without basis, and unreasonable.

63.     Defendants engaged in the deceptive conduct alleged above, which included deceptive and untrue representations regarding Infants', representations made to induce the public to purchase the more expensive Infants' product instead of Children's.

64.     In their marketing and advertising, Defendants made knowingly false and misleading statements regarding the uses and characteristics of Infants' Tylenol.

65.     As alleged in the preceding paragraphs, the misrepresentations by Defendants of the material facts detailed above constitutes an unfair and fraudulent business practice within *Cal. Bus. & Prof. C.* § 17200.

66.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

67.     All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a course of conduct repeated on hundreds if not thousands of occasions every day.

68.     Plaintiffs and the Class were misled into purchasing Infants' by Defendants' deceptive conduct and misleading advertising as alleged hereinabove.

69.     Plaintiffs and the Class were misled and, because the misrepresentations and omissions were uniform and material, presumably believed that Infants' has benefits which it does not; namely that it is more suitable and safer for babies than Children's.

70.     In addition, Defendants' use of various forms of advertising and marketing have deceived and are likely to continue deceiving the consuming public, in violation of California Business and Professions Code § 17500.

71.     Plaintiffs have suffered injury in fact and have lost money as a result of Defendants' false representations. Indeed, Plaintiffs purchased Infants' because of Defendants' misrepresentations and claims that it is a more suitable and safer OTC medicine for babies than Children's and other products are. Plaintiffs would not have purchased the Infants' if they had known that the advertising and representations as described herein were false.

**SECOND CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On behalf of Plaintiffs and the proposed Class)**

72.     Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

73.     Defendants represented to the Plaintiffs and the Class that Infants' and Children's were designed for the particular purpose for which they were intended.

74.     Defendants' representations as alleged above were made uniformly and identically to the Plaintiffs and to all members of the Class. Said representations were

11

persuasive and made under circumstances creating an inference that such representations reached each and every member of the Class and were relied upon by the Plaintiffs and the Class when purchasing the product and services from Defendants.

75.     Said misrepresentations and omissions include, but are not limited to, the packaging, marketing and advertising of Infants' and Children's which indicate that Children's  is not a suitable and safe OTC medicine for infants.

76.     Defendants knew or should have known that the advertising, marketing, packaging, and sales of Infants' and Children's were false and misleading and likely to deceive reasonable consumers.

77.     Plaintiffs, without knowledge of the falsity of the Defendants' statements and representations, justifiably relied upon them and, as a result, paid a higher price for Infants'  when they could have purchased the lower-priced Children's .

78.     Had Plaintiffs known the true nature of Infants' and Children's , they would not have purchased Infants.'

79.     As a direct and proximate result of the wrongful misrepresentations and concealment, Plaintiffs and the Class sustained economic damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Intentional Misrepresentation
### (On behalf of Plaintiffs and the proposed Class)

80.     Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

81.     Defendants represented to the Plaintiffs and the Class that Infants' and Children's were designed for the particular purpose for which they were intended.

82.     Defendants' representations as alleged above were made uniformly and identically to the Plaintiffs and to all members of the Class. Said representations were

persuasive and made under circumstances creating an inference that such representations reached each and every member of the Class and were relied upon by the Plaintiffs and the Class when purchasing the product and services from Defendants

83.    Said misrepresentations and omissions include, but are not limited to, the packaging, marketing and advertising of Infants' and Children's which indicate that Children's Tylenol is not a suitable and safe OTC medicine for infants.

84.    Defendants intentionally marketed, advertised and designed the packaging and pricing scheme for Infants' and Children's  to be false and misleading with the intention of tricking consumers and causing them monetary injuries.

85.    Plaintiffs, without knowledge of the falsity of the Defendants' statements and representations, justifiably relied upon them and, as a result, paid valuable consideration and extra money for Infants'.

86.    Had Plaintiffs known the true nature of Infants' and Children's, they would not have purchased Infant's.

87.    As a direct and proximate result of the wrongful misrepresentations and concealment, Plaintiffs and the Class sustained economic damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(On behalf of Plaintiffs and the proposed Class)**

88.    Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

89.    Defendants are merchants with respect to goods of the kind which were sold to Plaintiffs and the Class.

90.    By and through the representations of face and guarantees alleged herein, Defendants, their agents, and employees, expressly warranted to the Plaintiffs

and the Class that the Infants' purchased were of good, merchantable quality, would be free from defects, and suitable for the particular purposes represented by the Defendants.

91.    Plaintiffs relied upon Defendants' representations and guarantees which formed a material part of the Plaintiffs' and Class' bargain when they, in reliance thereon, purchased Infants'.

92.    Infants' does not have the characteristics and uses represented by Defendants.

93.    As a result of this breach, Plaintiffs and Class members in fact did not receive goods as warranted by Defendants and were tricked into paying extra monies.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (On behalf of Plaintiffs and the proposed Class)

94.     Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

95.    Defendants are merchants with respect to goods of the kind which were sold to Plaintiffs and the Class.

96.    There was in the sale to Plaintiffs and the Class an implied warranty that those goods were each of good, merchantable quality, would be free from defects, and suitable for the purposes represented by the Defendants.

97.    By and through the representations of face and guarantees alleged herein, the Defendants, their agents, and employees, impliedly warranted to the Plaintiffs and the Class that the Infants' and Children's purchased were each of good, merchantable quality, would be free from defects, and suitable for the particular purposes represented by the Defendants.

98.    Plaintiffs relied upon Defendants' representations which formed a material part of the Plaintiffs' and Class' bargain when they, in reliance thereon,

purchased Infants'.

99.   Infants' and Children's do not have the characteristics and uses represented by Defendants.

100.   As a result of this breach, Plaintiffs and Class members in fact did not receive goods as impliedly warranted by Defendants and were tricked into paying extra monies.

## SIXTH CAUSE OF ACTION
### Breach of Implied Warranty of Fitness for Purpose
### (On behalf of Plaintiffs and the proposed Class)

101.   Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

102.   Defendants marketed and sold Infants' as the only Tylenol brand product containing Acetaminophen that is uniquely fit (i.e. safe) for infants.

103.   Defendants knew or should have known that the particular purpose for which the goods were required and that consumers would rely on Defendants' skill and judgment to select and furnish suitable goods.

104.   Plaintiffs relied upon Defendants' reputation, skill, judgment, and long-standing practice of producing and selling OTC medicines for children and infants.

105.   Defendants breached the implied warranty at the time of the sale in that Plaintiffs and Class members did not receive suitable goods and the goods were not fit for the specific purpose in that both Infants' and Children's are safe and suitable for infants and children.

106.   Plaintiffs and the Class members have incurred damages as described herein as a direct and proximate result of the Defendants' breach of the implied warranty of fitness for purpose in that Plaintiffs and the Class have been tricked into greatly overpaying for a product that Defendants marketed as specifically designed for infants while Defendants' had the same product available for nearly one-quarter of the price but misled consumers to believe it was not suitable for their purpose.

**SEVENTH CAUSE OF ACTION**
**Violations of Consumer Legal Remedies Act (CLRA)**
**California Civil Code §§ 1750, *et seq***
**(On behalf of Plaintiffs and the California Subclass)**

107.   Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

108.   Plaintiffs have standing to pursue this claim as Plaintiffs has suffered injury in fact and has lost money as a result of Defendants' actions as set forth herein.

109.   At all times relevant hereto, Defendants were and are "persons" as defined in *Cal. Civ. C.* § 1761(d).

110.   At all times relevant hereto, Defendants' Infants' and Children's are "goods" as defined in *Cal. Civ. C.* § 1761(d).

111.   At all relevant times hereto, Plaintiffs' purchases of the Products constitute "transactions" as defined in *Cal. Civ. C.* § 1761(e).

112.   The following subsections of the CLRA prohibit the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction is intended to result or which results in the sale or lease of goods or services to any consumer:

a.   *Cal. Civ. C.* § 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

b.   *Cal. Civ. C.* § 1770(a)(9): Advertising goods or services with intent not to sell them as advertised; and,

c.   *Cal. Civ. C.* § 1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

113.   Defendants have violated and continue to violate *Cal. Civ. C.* §1770(a)(5) by representing that Infants' has sponsorship, approval, characteristics, ingredients, benefits or quantities which they do not have.

114.   Defendants have violated and continue to violate *Cal. Civ. C.* §1770(a)(9) by advertising Infants' with the intent not to sell it as advertised.

115.   Defendants have violated and continue to violate *Cal. Civ. C.* §1770(a)(16) by representing that Infant's in accordance with previous representations when it has not.

116.   Defendants have violated and continue to violate *Cal. Civ. C.* § 1770(a)(5), (a)(9) and (a)(16) by deceiving consumers into thinking that infants cannot safely take Children's and representing they must take the more expensive Infant's , as described more fully above. Indeed, Plaintiffs relied on the product packaging and shelf placement before purchasing. These representations and omissions were uniformly made and would be important to a reasonable consumer in deciding whether to purchase Infant's. No reasonable person would pay approximately 400% more money for Infant's over the lower-priced Children's unless he or she was deceived into believing infants cannot safely take Children's.

117.   Defendants' misrepresentations and omissions were done with the intention of deceiving Plaintiffs and the Class and depriving them of their legal rights and money.

118.   Defendants knew that Infants' is not uniquely for infants, that Children's is the same product as Infants', and that Children's is safe and suitable for infants as Defendants deceptively advertised or intentionally omitted on their products, television commercials, and online materials.

119.   Plaintiffs have concurrently filed the declaration of venue required by *Cal. Civ. C.* § 1780(d).

120.   The policies, acts, and practices hereto described were intended to result in the sale of Infants' to the consuming public, particularly cautious parents with sick

babies who needed medicine, and violated and continues to violate § 1770(a) (5) of the act by representing that Infants' has characteristics, benefits, uses, or quantities which it does not have.

121.   Defendants' actions as described hereinabove were done with conscious disregard of Plaintiffs' rights and Defendants have acted wantonly and maliciously in their concealment of the same.

122.   Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendants continue to make the same misrepresentations and omit material information regarding Infant's and Children's.

123.   Pursuant to *Cal. Civ. C.*  § 1780(a), Plaintiffs currently seek restitution and an order enjoining Defendants from engaging in the methods, acts and practices alleged herein, and any other relief deemed proper by the Court.

124.   Concurrent with filing this complaint, Plaintiffs sent Defendants notice advising Defendants they violated and continues to violate, Section 1770 of the CLRA (the "Notice"). The Notice complies in all respects with Section 1782 of the CLRA. Plaintiff sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at Defendant's principal place of business. Plaintiffs' Notice advised Defendants they must correct, repair, replace or otherwise rectify its conduct alleged to be in violation of Section 1770. However, Plaintiffs advised Defendants that if they fails to respond to Plaintiff's demand within thirty (30) days of receipt of this notice, pursuant to Sections 1782(a) and (d) of the CLRA, Plaintiffs will amend this complaint to also seek actual damages and punitive damages.

//

//

//

//

//

### EIGHTH CAUSE OF ACTION
**Violations of Unfair Competition Law (UCL)**
**'Unfair' and 'Fraudulent' Prongs**
*Cal. Bus. & Prof. C.* **§§ 17200,** *et seq.*
**(On behalf of Plaintiffs and the Class)**

125.    Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

126.    As alleged above, Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendants' actions. Specifically, prior to the filing of this action, Plaintiffs purchased Infant's for their own personal household use. In so doing, they relied on the false representations referenced above. Plaintiffs would not have purchased Infant's had they known about the massive fraud perpetrated by Defendants, described above.

127.    Defendants' conduct in marketing, advertising, labeling and selling Infants' and Children's is likely to deceive reasonable consumers. Indeed, no reasonable consumer would pay up to 400% more money for a product that is exactly the same unless they have good reason to believe that they are different products or that giving Children's to an infant is unsafe.

128.    Defendants are aware that the claims it makes about Infants' are deceptive, false and misleading. Defendants are also aware consumers, such as Plaintiffs, with infants are typically more cautious about what medicine to give their baby, especially when they are giving their baby a product that in the past has caused accidental deaths.

129.    Plaintiffs relied on Defendants' misrepresentations and omissions of material facts, as alleged in detail above. Had Defendants disclosed to Plaintiffs that Infant's and Children's are identical and that Children's is in fact suitable and safe for infants, they would not have purchased the more expensive Infants'.

130.    The misrepresentations by Defendants make constitute unfair and fraudulent business practice within the meaning of *Cal. Bus. & Prof. C.* §§ 17500, *et seq*.

131.    Defendant's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial—they were deceived into thinking they could only purchase Infant's and that they could not purchase the identical yet cheaper Children's product; (2) the injury is not outweighed by countervailing benefits to consumers or competition, as there can be no benefit to consumers where they are required to pay nearly quadruple the price for the same medicine; (3) consumers could not reasonably have avoided the injury because Defendant intentionally misled the consuming public by means of its advertising, marketing and labeling of Infants' and Children's.

132.    Defendant's business practices are also unfair because their conduct in selling, advertising, marketing and labeling Infants' and Children's offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Such public policy is tethered to a specific constitutional and statutory provisions, including California's consumer protection statutes.

133.    Defendant's wrongful business practices constitute a continuing course of conduct of unfair competition since Defendants are marketing and selling Infant's and Children's in a manner likely to deceive the public.

134.    Defendants have peddled, and continue to peddle, its misrepresentations through a national advertising campaign.

135.    In addition, Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of *Cal. Bus. & Prof. C.* §§ 17200, *et seq.*

CLASS ACTION COMPLAINT

136.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described above.

137.    Plaintiffs were misled into purchasing Infants' by Defendants' deceptive and fraudulent conduct as alleged above.

138.    Plaintiffs were misled and, because the misrepresentations and omissions were uniform and material, presumably believed Infants' and Children's are not identical and that Children's is not in fact suitable and safe for infants.

139.    Pursuant to section 17203 of the UCL, Plaintiffs seek an order of this Court enjoining Defendants from engaging in the unfair and fraudulent business practices alleged herein in connection with the sale of Infants' and Children's.

140.    Additionally, Plaintiff seek an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendants by means of the unfair and fraudulent business practices alleged herein.

**NINTH CAUSE OF ACTION**
**Violations of Unfair Competition Law (UCL)**
**Unfair and Fraudulent Prongs**
***Cal. Bus. & Prof. C.* §§ 17200, *et seq.***
**(On behalf of Plaintiffs and the Class)**

141.    Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

1.  Defendants' actions, as alleged herein, constitute illegal and unlawful business practices in violation of *Cal. Bus. & Prof. C.* §§ 17200, *et seq.*

2.    Defendants are unlawfully labeling, selling, marketing and advertising Infant's and Children's because Defendants are violating the FAL, CLRA and the UCL, as alleged above.

3.    Plaintiffs and the Class were misled and, because Defendants' misrepresentations and omissions, described above, were uniform and material. Plaintiffs reasonably relied on those misrepresentations and material omissions,

believing based thereon that Infant's and Children's are not identical and that Children's is not in fact suitable and safe for infants.  As a result of Defendants' misrepresentations and omissions, Plaintiffs lost money or property.

4.    Pursuant to section 17203 of the UCL, Plaintiffs seek an order of this Court enjoining Defendants from engaging in the unfair and fraudulent business practices alleged herein in connection with the sale of Infant's and Children's .

5.    Additionally, Plaintiff seek an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendants by means of the unfair and fraudulent business practices alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of herself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action;

B.    An order enjoining Defendants from pursuing the policies, acts, and practices complained of herein and requiring Defendants to pay restitution to Plaintiffs and all members of the Class;

C.    Pre-judgment interest from the date of filing this suit;

D.    Restitution;

E.    Reasonable attorneys' fees;

F.    Costs of this suit; and

G.    Such other and further relief as the Court may deem necessary or appropriate.

CLASS ACTION COMPLAINT

## JURY DEMAND

Plaintiffs and the Class by counsel hereby request a trial by jury as to all issues so triable.

October 5, 2017                          Respectfully submitted,

_Gillian L. Wade_

Gillian L. Wade
Sara D. Avila
Andrew Whitman
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
**HEIDEMAN NUDELMAN & KALIK, P.C.**

*Counsel for Plaintiffs*

CLASS ACTION COMPLAINT