UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7320-GW(JEMx) | | Date | October 18, 2018 |
|---|---|---|---|---|
| Title | *Rony Elkies, et al. v. Johnson and Johnson Services, Inc., et al.* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Sara D. Avila | Matthew D. Powers |
| Tracy R. Kalik | Alexander Larro |
| Gillian L. Wade | |
| Richard D. Heideman | |

**PROCEEDINGS:     PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [74, 82]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Defendants' Motion is TAKEN UNDER SUBMISSION. Court to issue ruling.

| | : | 20 |
|---|---|---|
| Initials of Preparer | JG | |

***Elkies, et al. v. Johnson & Johnson Servs., Inc., et al.***, Case No. 2:17-cv-7320-GW-(JEMx)
Tentative Ruling on Motion for Class Certification

## I. Background

In this putative class action filed on October 5, 2017, against Johnson & Johnson Services, Inc. and Johnson & Johnson Consumer Inc. (collectively, "Defendants"), plaintiffs Rony Elkies and Danielle Alfandary (collectively "Plaintiffs") seek certification of a class (along with appointment as class representatives and appointment of class counsel) pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3).[1]   The First Amended Class Action Complaint ("FAC"), filed on November 21, 2017, generally sets forth claims that Defendants manufacture, market and sell their own brand of pain reliever and fever reducer under the "Tylenol" label, including Infants' Tylenol ("Infants'") and Children's Tylenol ("Children's"), and that they make false and misleading statements, in their advertising of Infants', in order to induce consumers to purchase Infants' on a false premise, and fail to make material disclosures that Infants' is the same product as Children's.   The FAC presents claims for: 1) violations of the False and Misleading Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("Section 17500"), 2) violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA"), 3) violations of unfair competition law, "Unfair" and "Fraudulent" prongs, Cal. Bus. & Prof. Code §§ 17200, et seq. ("Section 17200"), and 4) violations of Section 17200's "Unlawful" prong.   Plaintiffs have defined the class they now seek to certify as "all persons who purchased Infants' Tylenol for personal use[2] in California[3] since October 3, 2014."   *See*

---

[1] All the materials filed in support of and opposition to this motion have been filed under seal.  The Court might inquire with the parties what impact that would have on any resulting order the Court issues, which will – under normal circumstances – be publicly-available on the Court's electronic docketing system. Although the Court has considered the materials the parties have submitted, it has purposefully limited its factual references herein in an attempt not to reveal information that the parties sought to protect through their under-seal submissions.

[2] Defendants have not raised any issue with the use of the term "for personal use" in the proposed class definition.  While the Court could envision problems with that phrase (without any further limitation in its scope), it will not make arguments on Defendants' behalf.

[3] As Plaintiffs only seek to certify a class of California consumers (as opposed to a nationwide class), this Court need not engaged in a choice of law analysis at this point.  *See c.f. Mazza v. Am Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012).

Docket No. 82, Notice of Motion at 1:7-8; Docket No. 82, at 10:11-13.

## II. Analysis

### A. Class Certification Standards Under Fed. R. Civ. P. 23

The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *In re Northern Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982); *see also Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 629 (9th Cir. 2018) ("A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation."). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[4] and at least one of the subparagraphs of Rule 23(b).[5] *See id.* at 1234. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*"). The court is permitted to consider any material necessary to its determination, though it should not go so far as to engage in a trial of the merits. *See id.* at 350-51 (noting that the "rigorous analysis" required at class certification will "[f]requently…entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to

---

[4] Rule 23(a) requires that the party/parties seeking certification show:
    (1)    the class is so numerous that joinder of all members is impracticable;
    (2)    there are questions of law or fact common to the class;
    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4)    the representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

[5] Here, Plaintiff seeks certification under Rule 23(b)(3).

say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits *if they overlap* with the Rule 23(a) requirements.") (emphasis added); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009); *Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975); *see also Sali*, 889 F.3d at 630 ("At this preliminary stage, a district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial.")[6].

B. Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires a demonstration that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally speaking, 40 or more individuals in a proposed class has been considered sufficient to satisfy the numerosity requirement. *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."); *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011).

Defendants wisely do not contest numerosity here. Although Plaintiffs do not attempt to give a precise figure for the class size, they do cite to evidence appearing to show that more than 4 million ounces of Infants' were shipped to California from October 2014 through February 2017. *See* Deposition of Jennifer Cullen, Docket No. 82-5 ("Cullen Depo."), at 199:2-19; Declaration of D.C. Sharp, Docket No. 82-18, ¶¶ 5, 11. Although this information does not necessarily translate to the number of purchasers "for personal use" in California during that period, *see* Cullen Depo. at 199:7-14, it certainly suggests that number is large, and quite clearly large enough to satisfy any understanding of the "numerosity" requirement. *See, e.g.*, *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("Between 2005 and 2009, Bayer's national net sales of Men's Health totaled in excess of $189 million, and between 2007 and 2009, its national net sales of Men's 50+

---

[6] With the exception of Defendants' *Daubert*-based objections to Plaintiffs' experts declarations (which the Court overrules because the Court believes the objections pertain to *weight*, rather than *admissibility*), *see* Docket No. 107, both because of the admissible/non-admissible evidence consideration mentioned in *Sali* and because of the Court's determination that the evidentiary debates go more to the weight of evidence and/or merits issues that do not overlap with Rule 23 considerations, the Court does not, at this point in time, rule on the parties' evidentiary objections asserted in connection with this motion.

totaled in excess of $39 million.  Given these numbers, it is reasonable to assume a sufficient number of individuals purchased the Men's Vitamin's in California to satisfy this requirement.").  Given that Defendants have not even attempted to challenge Plaintiffs' showing on this aspect of the Rule 23(a) requirements, the Court concludes that Plaintiffs have made an adequate showing under Rule 23(a)(1).

    C.  <u>Commonality</u>

Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement has been permissively construed.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Although there must be common questions of law or fact, it is not necessary that all questions of law or fact be common. *See id.* ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953-57 (9th Cir. 2003).  There needs to be only a single common question.  *See Dukes*, 564 U.S. at 359.  Crucially, "[w]hat matters to class certification…is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id.* at 350 (omitting internal quotation marks) (quoting Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).

    There is clearly at least a single sufficiently-important common question here.  To state Section 17200 and 17500 claims "based on false advertising or promotional practices," Plaintiffs need "'only to show that members of the public are likely to be deceived.'"  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009)).  "This inquiry does not require 'individualized proof of deception, reliance and injury,'" *id.* at 986 (quoting *In re Tobacco II Cases*, 46 Cal.4th at 320), and the likelihood of deception is assessed using a "reasonable consumer standard," *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)).  "[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances,

could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003)).  Even where the Ninth Circuit has announced that "to establish a fraud claim under the UCL, a plaintiff must demonstrate actual reliance," it has been quick to note that such reliance "'is inferred from the misrepresentation of a material fact.'" *Friedman*, 855 F.3d at 1055 (quoting *Chapman v. Skype, Inc.*, 220 Cal.App.4th 217, 229 (2013)).  Similarly, a CLRA claim "'allows plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material.'  The standard 'does not require that class members have a uniform understanding of the meaning of' the challenged representation." *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-00564 NC, __ F.R.D. __, 2018 WL 3126385, *15 (N.D. Cal. June 26, 2018) (quoting *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 983 (C.D. Cal. 2015) and *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150 RS, 2017 WL 3310692, *3 (N.D. Cal. Aug. 3, 2017)); *see also Ehret v. Uber Techs., Inc.*, 148 F.Supp.3d 884, 901-02 (N.D. Cal. 2015) ("[For a CLRA claim,] reliance can be established on a class-wide basis by materiality.").

Thus, as Plaintiffs argue, the legal questions of whether Defendants' Infants' box – not, as in *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012), merely whether *some* pertinent advertising of a "limited scope"[7] – is likely to deceive members of the public and whether those representations would be considered material by a reasonable person are common questions that will produce answers apt to drive the resolution of the litigation.  *See also Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, __ F.Supp.3d __, 2018 WL 3954587, *4 (N.D. Cal. Aug. 17, 2018) (finding commonality satisfied because of numerous common questions of law and fact, "such as whether the challenged health statements are unlawful, unfair, deceptive, or misleading"), *appeal docketed*, No. 18-80106 (9th Cir. Aug. 31, 2018).  Of course, there are common factual questions as well, not least of which are what representations were contained on the Infant's (and Children's) boxes during the period in question and what the costs-of-goods-sold were for the largely-similar products.

---

[7] "For everyone in the class to have been exposed to the omissions, as the dissent claims, it is necessary for everyone in the class to have viewed the allegedly misleading advertising.  Here the limited scope of that advertising makes it unreasonable to assume that all class members viewed it." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012).

Defendants primarily argue there is no common question because the common question Plaintiffs seek to litigate is "whether the image of a mother holding her baby and the name 'Infants' leads reasonable consumers to believe that Infants' Tylenol is 'specially formulated' for infants." Docket No. 106, at 13:27-14:2. They note first that there is no clear single meaning behind the phrase "specially formulated," but also that the phrase appears on no label. But the fact that it appears on no label suggests that the concern is something of a red herring – the common questions will be whether what *was* on the label (along with what was *not*) was likely to deceive members of the public and whether it was material.

Defendants also point out that there is evidence that purchasers were exposed to other information as well, meaning that the "message" each consumer received from the box "depends on context." *Id.* at 14:17-15:1. But, as Plaintiffs point out, this is virtually always true in these types of cases, yet class certification is relatively common. The fact remains, there are common questions concerning the box/label itself. And, again, at least as to the CLRA claim, the law appears to be that class members do *not* have to have a uniform understanding of the meaning behind the challenged representation.

Next, Defendants note that the evidence demonstrates many class members would and did buy Infants' with full knowledge that the concentrations are the same. But this does not defeat commonality; in fact, it poses potentially *more* common questions, at least for a certain subset of the proposed class. It conceivably may make it more difficult, as an evidentiary matter, for Plaintiffs to be able to demonstrate that the public is likely to be deceived, or that the representation(s) on the box/label would be considered material by a reasonable person. But those merits observations do not preclude commonality.

Finally, Defendants attack commonality by arguing that Plaintiffs' expert admits that many consumers in the class have no injury at all. But variations in damages – which is normally an issue addressed when examining predominance under Rule 23(b)(3) – do not prevent certification. *See, e.g.*, *Sali*, 889 F.3d at 638-39; *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-21 (9th Cir. 2017); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). In addition, even the Supreme Court has at least suggested that inclusion of uninjured individuals in a class is not heretical to certification. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1050 (2016) (indicating that uninjured class

members may be identified at the time of allocation/disbursement of damages); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016) ("[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct.").

The Court concludes that Plaintiffs have sufficiently demonstrated commonality under Rule 23(a)(2).

### D.  Typicality and Adequacy

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose . . . ." *Id.* (citation and internal quotation marks omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (citation and internal quotation marks omitted); *see also General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("*Falcon*") (indicating that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members"); O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE:  FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2018) ("O'Connell & Stevenson"), ¶ 10:289, at 10-93 ("A plaintiff's claim is typical if it:  arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and is based on the same legal theory as their claims.").  The representative plaintiffs' claims need not be identical to those of the class, but rather need only be "reasonably co-extensive with those of absent class members . . .." *Hanlon*, 150 F.3d at 1020.  In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n.13.

Representative parties must also fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a)(4).  Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between

representatives and absentees, and the unlikelihood that the suit is collusive." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) and *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)); *see Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); *see also Sali*, 889 F.3d at 634; *Staton*, 327 F.3d at 957; *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("*Sands*") ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them. The Rule does not require more.").

Defendants' only argument for why they believe Plaintiffs fail the typicality and adequacy requirements is that "Plaintiffs' circumstances raise individualized issues that apply to some, but not necessarily all, other consumers – including being specifically told about the concentrations and deciding to buy Infants' anyway." Docket No. 106, at 24:8-11. As an initial matter, this does not appear to be an attack on Plaintiffs' adequacy at all. What it appears to constitute is an assertion that Plaintiffs would be subject to a "unique defense," one approach to the issue of typicality that can sometimes serve to defeat that showing. *See, e.g.*, *Ellis*, 657 F.3d at 984; *Hanon*, 976 F.2d at 508.

But Defendants freely admit that, if it is a defense to Plaintiffs' recovery,[8] it is not a *unique* defense at all. Defendants argue that the defense – if it is one – applies to a number of putative class members. It is therefore a common question for at least a portion of the class and does not detract in the slightest from the conclusion that – especially viewing typicality from the vantage point of whether the same course of *Defendants' conduct* produced Plaintiffs' alleged injury – Plaintiffs' claims meet the "nature of the claim" and "reasonably coextensive" typicality requirements.[9] As they have clearly explained in their motion, Plaintiffs' claims arise from the same conduct by Defendants as do the claims of

---

[8] As discussed further *infra*, at least in an omissions case an omission need only have been a *substantial factor* in a purchasing decision.

[9] *At most* it might call for the creation of a subclass, but Defendants have made no such pitch here.

all other class members, they have allegedly suffered the same injury, and they proceed under the same legal theories.  Their claims meet the Rule 23(a)(3) typicality requirement.  *See generally Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013).

As for adequacy, apart from noting that Defendants have not actually made any challenge that speaks to that requirement in particular, there is no information before the Court suggesting any antagonism between Plaintiffs and the Class they seek to represent, and Plaintiffs are obviously vigorously prosecuting this action.  *See In re Mego Fin'l Corp. Secur. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *see also* Declaration of Gillian L. Wade ("Wade Decl."), Docket No. 82-1, ¶¶ 29-31; Declaration of Noel J. Nudelman ("Nudelman Decl."), Docket No. 74-2, ¶¶ 5, 7; Declaration of Danielle Alfandary, Docket No. 74-5, ¶ 3; Declaration of Rony Elkies, Docket No. 74-6, ¶ 3.  The Court is not aware of any information which would suggest that the suit is collusive.  Finally, the proposed class counsel are clearly qualified (and assert they have sufficient resources) to litigate this action on a class-wide basis.  *See Falcon*, 457 U.S. 147, 157 (1982); *Sali*, 889 F.3d at 634-35; *Radcliffe v. Hernandez*, 818 F.3d 537, 547-48 (9th Cir. 2016); *see also* Wade Decl., ¶¶ 28-30, 32-40; Nudelman Decl., ¶¶ 4-6, 8-16.

Plaintiffs have sufficiently demonstrated typicality and adequacy, satisfying Rule 23(a)(3) and (4).

E.  Rule 23(b)(3)

Defendants' energy on this motion is devoted largely to the question of whether Plaintiffs can satisfy Rule 23(b)(3), to which the analysis now turns following the determination that Plaintiffs have satisfied Rule 23(a)(1)-(4).  Under Rule 23(b)(3),

> [a] class action may be maintained if Rule 23(a) is satisfied and if:
> . . .
> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" and is "much more rigorous" than commonality. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). It does not involve counting the number of common issues, but weighing their significance. *See, e.g., Sands*, 244 F.3d at 1163 (contrasting the "number and importance" of common issues with the "few" and "relatively easy" individualized issues). In addition, the predominance analysis looks, at least in part, to whether there are common issues the adjudication of which "will help achieve judicial economy," further the goal of efficiency and "diminish the need for individual inquiry." *See Vinole*, 571 F.3d at 939, 944 (quoting and citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("A principal purpose behind Rule 23 class actions is to promote 'efficiency and economy of litigation.'") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)); O'Connell & Stevenson, ¶ 10:411, at 10-129 – 130 ("The objective is to promote economy and efficiency in actions that are primarily for money damages. Where common questions 'predominate,' a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class.").

Neither challenges to plaintiff's legal theories nor doubts about a plaintiff's ability to prove the claim at trial, based upon "a *full* inquiry into the merits of a putative class's legal claims," are relevant in determining whether common issues predominate. *See* O'Connell & Stevenson, ¶ 10:412.5, at 10-131 (citing *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Industrial & Serv. Workers Int'l Union, AFL-CIO, CLC v. Conoco-Phillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010)) (emphasis added to quotation from *United Steel*). Ultimately, while the Court recognizes Defendants' robust evidentiary

submissions, and their robust criticisms of Plaintiffs' evidence, the Court does not see the necessary "overlap" between the merits and Rule 23 issues here, especially considering the nature of the legal claims presented in this action.

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). As set out above in the section considering Plaintiffs' ability to satisfy the "commonality" requirement, the key issues in this case and elements of Plaintiffs' causes of action can all be decided uniformly because of the manner of analysis of those elements under California law. Even though the predominance inquiry is "much more rigorous" than that for commonality, that fundamental observation does not change.

Building on that earlier discussion of the common issues raised by the particular claims at issue here, actual falsehood, the perpetrator's knowledge of falsity, and reliance on the false statements are not required to show a violation of Section 17200. *See In re Tobacco II Cases*, 46 Cal.4th at 312; *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020-21 (9th Cir. 2011), *abrogation on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) recognized by *Green v. Federal Express Corp.*, 614 Fed. Appx. 905, 906 (9th Cir. June 22, 2015); *see also Pulaski & Middleman*, 802 F.3d at 985-86. A CLRA claim is also conducive to, and understandably heavily-reliant on, common issues and evidence. "The [CLRA] prohibits 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services.'" *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting Cal. Civ. Code § 1770(a)). While a CLRA plaintiff requires that each potential class member has both an actual injury and shows that the injury is caused by the challenged practice, *see Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 155-56 (2010), if a material misrepresentation has been made to the entire class, an inference of reliance arises as to the class. *See Stearns*, 655 F.3d at 1022; *see also In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129 (2009).

Defendants' repeated emphasis on the fact that several factors – doctor recommendations, consumers' prior experience, etc. – could have influenced any class member's purchasing decision is somewhat beside the point – for present purposes – if

Plaintiffs can establish that any omission on the packaging was a substantial factor.  In an omissions-based CLRA *or* Section 17200 case, "[a] plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision."  *Daniel*, 806 F.3d at 1225.  This means "simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'"  *Id.* (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1093 (1993)).  Beyond even that, "[t]hat one would have behaved differently can be presumed, or at least inferred, when the omission is material."  *Id.*  The Court believes that – as with the Section 17200/Section 17500 question of whether consumers are likely to be deceived using a "reasonable consumer standard" – Plaintiffs have made a sufficient showing, at least at this point in time, that materiality of the information contained on the Infants' packaging and/or any omissions from that information can be determined using common evidence, on a class-wide basis.  Those common questions and that common evidence will be hugely-important to the resolution of this litigation.

Moreover, although Defendants also repeatedly point to evidence that pediatricians' and other medical professionals' recommendations and statements can impact purchasers' decisions, this does not appear to be a case where class members were "exposed to quite disparate information *from various representatives of the defendant*."  *Stearns*, 655 F.3d at 1020.  Rather, the case appears focused on the representations on the cover of the box that every class member would have been exposed to in the course of purchasing Infants'.  *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 737 (9th Cir. 2007) (affirming district court's view that "individual circumstances regarding how these disclosures were read or received would not destroy predominance" where claim was "based on uniform disclosures" to all of defendant's customers, even though appellate court "might have decided the issue differently," because its "review [was] 'limited to assuring that the district court's determination has a basis in reason'") (quoting *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005)); *see also Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009) ("Regardless of whether every class member was exposed to Dannon's television, print, and internet advertisements, the record clearly establishes that Dannon's alleged misrepresentations regarding the clinically proven health benefits of the Products are prominently displayed on all of the Products' packaging, a fact

that Dannon has never contested.  Because, by definition, every member of the class must have bought one of the Products and, thus, seen the packaging, Plaintiffs have succeeded in showing that the alleged misrepresentations were made to all class members.") (omitting internal citations).

This case will largely concern common key issues presented by common evidence – expert surveys/reports, product packaging, materials produced by Defendants regarding their products, marketing and costs.  While the expert surveys and reports might suggest some reason to do some measure of individualized inquiry, or to further refine the class definition, or – perhaps – present a basis for decertification, at this juncture the Court sees far more common issues and evidence – and far more *key* common issues and evidence – than individualized ones.  As other courts have concluded, cases raising Section 17200, Section 17500 and CLRA claims are "ideal for class certification because they will not require the court to investigate 'class members' individual interaction with the product.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (quoting *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011)).  It would be difficult to reach any conclusion at variance with that point here.

As part of their Rule 23(b)(3) attack, Defendants also assert that Plaintiffs have failed to propose a damages model that would survive the test of that issue and its impact on the predominance inquiry under *Comcast*.  The preliminary damages model proposed here is straightforward:  using the average retail price and costs of goods sold per unit (in a way that will account for the difference in costs for the products' differing bottle design and dosing instruments), Plaintiffs are simply going to attempt to account for the "price premium" paid for Infants', considering that it is the same medicine in the same concentration as Children's.  *See Pulaski & Middleman*, 802 F.3d at 988-89 (rejecting *Comcast* challenge in Section 17200/17500 case because "[w]here plaintiffs are 'deceived by misrepresentations into making a purchase, the economic harm is the same:  the consumer has purchased a product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately'") (quoting *Kwikset v. Superior Court*, 51 Cal.4th 310, 329 (2011)); *id.* at 989 ("[Section 17200 and Section 17500] restitution is based on what a purchaser would have paid at the time of purchase had the purchaser received all the information."); *id.* ("[I]n calculating restitution

under [Section 17200 and Section 17500], the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information."); *id.* ("In calculating damages, here restitution, California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.' '[T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery.'") (quoting *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938-39 (9th Cir. 1999)).

As the Court views it, the problems Defendants believe they have identified with Plaintiffs' damages model[10] would go to the *weight* of the testimony surrounding that model, not to a question of whether Plaintiffs have come up short under *Comcast*. The damages model Plaintiffs propose absolutely matches their theory of liability, which is all that *Comcast* requires.[11] It does not require – particularly at the class certification stage – that Plaintiffs affirmatively rule out all other possible contributors to, or causes of, the damage suffered. *See Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) ("In *Leyva*, we reaffirmed that uncertain damages calculations alone cannot defeat class certification because Comcast stood only for the proposition that 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.' Uncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages.") (omitting internal citation) (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14

---

[10] In brief, Defendants argue that Plaintiffs' expert "did nothing to evaluate whether his 'premium' is attributable to the allegedly misleading label (or to other factors)," that Plaintiffs' expert "literally 'assumes' what he sets out to prove," and that the model "does not take into account price variations for both products." Docket No. 106, at 22:14-15, 23:3, 34:21-22.

[11] The Court simply disagrees with the district court decisions Defendants cite that have concluded otherwise (on different facts), at least at this stage of this lawsuit and at least where there is a clear single comparison product – Children's – to be used in association with Plaintiffs' damages model. *See Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, *13 (N.D. Cal. Nov. 6, 2014) (granting motion to *decertify*); *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, *11 (C.D. Cal. June 7, 2017); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 460 (S.D. Cal. 2014). Even in *Algarin*, the district court acknowledged that "[t]o establish that any difference in price is attributed solely to the alleged misrepresentation, the Court must use a product, exactly the same but without the 24 hour claim. As Maybelline stated, the Court would have to control and neutralize all other product differences. Such a task is nearly impossible as no two products are completely identical." 300 F.R.D. at 460. At this stage of this case, it is not clear to the Court that Children's does not serve the suitable product comparison crucially absent in the plaintiff's model in *Algarin*.

14

(9th Cir. 2013)), *cert. granted*, 138 S.Ct. 2675 (June 25, 2018) (No. 17-1094); *id.* at 1182 (stating, in case proposing a "full refund" damage model, that the plaintiff "was required only to show that the full price amount of retail sales of the product could be approximated over the relevant time period, even if that figure or the data supporting it – in this case the average retail price multiplied by the number of units sold – was uncertain"); *see also Bazemore v. Friday*, 478 U.S. 385, 400 (1986) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility."). "Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Id.* at 1183 (quoting *Pulaski & Middleman*, 802 F.3d at 989); *id.* at 1184 ("Whether Lambert could prove damages to a reasonable certainty on the basis of his full refund model is a question of fact that should be decided at trial.").

With Plaintiffs having demonstrated to the Court's satisfaction that common issues predominate, only the question of "superiority" remains under Rule 23(b)(3). With respect to the "matters pertinent" to a superiority finding under that Rule, the Court sees no significant likelihood of individual consumers desiring to pursue their claims individually when there is such a small amount per bottle at stake (even under Plaintiffs' expert's calculations). It certainly is not aware of any such litigation proceeding currently. It sees no reason why litigation should not be centralized in this forum and venue. Finally, at least at this juncture, the litigation presents no obvious manageability concerns. *See also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir.) (indicating that presumption against refusing to certify a class merely on the basis of manageability concerns "makes ample sense given the variety of procedural tools courts can use to manage the administrative burdens of class litigation" such as "divid[ing] classes into subclasses or certify[ing] a class as to only particular issues"), *cert. denied*, 138 S.Ct. 313 (2017).

Defendants appear to address only one of the four "superiority" "matters" referenced by Rule 23(b)(3) – "the likely difficulties in managing a class action." *See* Docket No. 106, at 24:17. They argue that each individual class member would have to litigate a number of separate issues, including what they were told or what information they

were exposed to.  It is unclear to this Court that this is necessarily true, given the way in which Section 17200, Section 17500 and CLRA claims can be litigated, as addressed in more detail above.  The Court can certainly conceive of ways in which survey evidence could do away with, or greatly limit, such an individualized need or any *considerable* individualized inquiries.

Defendants also argue – though what this has to do with a "manageability" concern is unclear – that because every bottle of Infants' lists a phone number for consumers to call to request a refund if they feel aggrieved, a class action "makes little sense" and is unnecessary to provide redress, citing *Turcios v. Carma Laboratories, Inc.*, 296 F.R.D. 638, 648-49 (C.D. Cal. 2014).  A leading practice guide has indeed recognized that "[i]n deciding whether a class action is a 'superior remedy,' the court may consider any nonjudicial program or remedies available to the class members."  O'Connell & Stevenson, ¶ 10:478, at 10-157.  But as Plaintiffs set forth in their Reply, Defendants have not thus far *convincingly* demonstrated that the course they propose for consumers actually acts as an effective and available remedy that would simply rule out the reason or basis for any class litigation proceeding.  *See* Declaration of Jennifer Cullen, Docket No. 106-2, ¶ 16; Deposition of Carla Ziolli Oliveira, Docket No. 116-8, at 116:13-16.  In *Turcios*, in contrast, the defendant had established to the district court's satisfaction that it "already offer[ed] consumers a full refund of the amount paid for the product for any reason."  296 F.R.D. at 648; *see also Webb v. Carter's, Inc.*, 272 F.R.D. 489, 504 (C.D. Cal. 2011) ("Carter's is already offering the very relief that Plaintiffs seek:  it allows consumers to obtain refunds for the garments, even without a receipt, and reimburses consumers for out-of-pocket medical costs for treating skin irritation resulting from the tagless labels[, including] up to $250 for medical expenses without requiring any documentation."); *In re Phenylpropanolamine (PPA) Products Liability Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003) ("In addition to the $119,808 in refunds distributed to 14,000 consumers of Novartis products, American Home Products and Bayer indicate receiving requests for refunds from 16,159 and 16,935 consumers respectively."); *id.* at 622-23 ("While not all affected individuals sought refunds or replacement products, a substantial number of individuals and many retailers clearly did, while hundreds, if not thousands, of PPA-related personal injury cases have been filed in federal and state courts.")

**III.  Conclusion**

Plaintiffs have sufficiently demonstrated the requirements for certification under Rule 23(a) and 23(b)(3).  The Court would grant the motion.