**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**HEIDEMAN NUDELMAN & KALIK, P.C.**
Richard D. Heideman (admitted *pro hac vice*)
rdheideman@hnklaw.com
Noel J. Nudelman (admitted *pro hac vice*)
njnudelman@hnklaw.com
Tracy Reichman Kalik (admitted *pro hac vice*)
trkalik@hnklaw.com
1146 19th Street, NW 5th Floor
Washington, DC  20036
Tel: (202)463-1818
Fax: (202)463-2999

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONY ELKIES and DANIELLE ALFANDARY, individually and on behalf of all others situated; <br><br> Plaintiffs, <br> vs. <br><br> JOHNSON & JOHNSON SERVICES, INC., a New Jersey limited liability company, JOHNSON & JOHNSON CONSUMER INC. a New Jersey limited liability company, and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 2:17-CV-7320-GW-JEM <br><br> **NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Hearing Date:  October 10, 2019 <br> Hearing Time:  8:30 a.m. <br> Courtroom:  9D <br> Judge:  Hon. George H. Wu |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on October 10, 2019 at 8:30 a.m., or on such date as may be specified by the Court, in the courtroom of the Honorable George Wu, United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, Courtroom 9D, 9th Floor, Plaintiffs Rony Elkies and Danielle Alfandary ("Plaintiffs") on behalf of themselves and the class, will and hereby do move for an order including each of the following:

(1)   preliminarily approves the terms of the Settlement;

(2)   certifies the settlement Class;

(3)   appoints Mr. Elkies and Ms. Alfandary as the Class Representatives for the Settlement Class and their counsel as Class Counsel for the settlement Class;

(4)   appoints Kurtzman Carlson Consultants as the Settlement Administrator;

(5)   approves the form, method and plan of Settlement Class Notice;

(6)   mandates procedures and deadlines for Class Members to make claims, object or exclude themselves from the Settlement; and

(7)   schedules a Final Approval Hearing and related deadlines.

This motion is based on Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Stipulation of Settlement; the declarations of Gillian L. Wade and Carla Peak in support of this Motion, and all of the papers and pleadings on file in this action, and upon such other and further evidence as the Court may be presented at the time of the hearing, including oral argument.

Dated: September 24, 2019          Respectfully submitted,

　*/s/ Gillian L. Wade*
Gillian L. Wade
Sara D. Avila
**MILSTEIN JACKSON FAIRCHILD &
WADE, LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
**HEIDEMAN NUDELMAN &
KALIK, P.C.**

*Counsel for Plaintiffs and the Class*

# **TABLE OF CONTENTS**

I.   Introduction ...................................................................................1

II.  Factual Background .......................................................................3

    A.  Summary of Allegations and Defenses ....................................3

    B.  Procedural Background ...........................................................3

        1.  The Court Denied J&J's Motion to Dismiss ....................3

        2.  The Parties Completed Fact and Expert Discovery and Engaged in Significant Discovery-Related Motions Practice ....................4

        3.  A Litigation Class Was Certified, the Ninth Circuit Denied Defendants' Rule 23(f) Petition and Class Notice was Disseminated ....................5

        4.  Plaintiff's Expert Calculated Restitution ........................6

        5.  The Settlement Negotiations .........................................6

III. Terms of the Settlement ...............................................................7

    A.  The Settlement Class Definition .............................................7

    B.  Benefits to Class Members ......................................................7

        1.  Monetary Relief and *Cy Pres* ....................................7

        2.  Injunctive Relief ...........................................................9

        3.  The Settlement Class Release .......................................9

        4.  Payment of Litigation and Settlement Administration Costs, Attorneys' Fees and Service Awards ...............................10

    C.  The Notice Program and Settlement Administration .............10

        1.  The Notice Program .....................................................11

2.  Claims Administration ..................................................................12

IV.  The Class Definition as Contemplated by the Settlement Satisfies
Rule 23 and Certification is Warranted ...........................................12

A.  Expanding the California-Only Litigation Class to Include All Persons
Who Purchased in the U.S. is Proper for Settlement Purposes .............13

B.  The Proposed Settlement Class Satisfies Rule 23.....................................14

1.  The Settlement Class Satisfies Rule 23(a) ......................................14

a.  Numerosity.................................................................................14

b.  Commonality.............................................................................15

c.  Typicality ..................................................................................16

d.  Adequacy...................................................................................17

2.  The Settlement Class Satisfies Rule 23(b)(3) ................................18

a.  Common Issues of Law and Fact Predominate ..........19

b.  Class Treatment is Superior in This Case....................22

V.  The Proposed Settlement Merits Preliminary Approval ...............................22

A.  Legal Framework ........................................................................................22

1.  The Class Action Settlement Process.............................................22

2.  The Standard for Preliminary Approval ........................................23

B.  The Settlement is Fair, Reasonable and Adequate..................................24

1.  Procedural Concerns ........................................................................24

a.  Plaintiffs and Class Counsel Have Adequately Represented
the Class ......................................................................................24

b.  The Settlement Was Negotiated at Arms' Length ................... 24

2.  Substantive Concerns ........................................................ 25

a.  The Settlement Satisfies Fed. R. Civ. P. Rule 23(e)(2) ........... 26

i.  Strength of Plaintiffs' Case and Risk of Continuing
Litigation ............................................................................. 26

ii.  The Method for Distributing Monetary Relief is Effective
and Efficient ....................................................................... 28

iii.  The Proposed Attorneys' Fees are Fair .............................. 29

iv.  There Are No Supplemental Agreements to be Identified
Under Rule 23(e)(3) ............................................................ 29

v.  Class Members are Treated Equally .................................... 29

b.  The Ninth Circuit's Factors Weigh in Favor of Preliminary
Approval ............................................................................. 31

i.  The Parties Completed Extensive Discovery ..................... 31

ii.  The Risk in Maintaining Class Action Status Throughout
Trial .................................................................................... 32

iii.  The Settlement Amount is a Fair Compromise in Light
of the Risks and Uncertainty of Trial ................................ 32

C.  KCC Should Be Appointed as the Settlement Administrator ................ 33

D.  The Proposed Notice Program Should be Approved ........................... 34

VI.  Proposed Schedule of Events ........................................................ 35

VII.  Conclusion ................................................................................... 35

# <u>TABLE OF AUTHORITIES</u>

## <u>FEDERAL CASES</u>

*Ahmed v. HSBC Bank USA* (C.D. June 21, 2019)
    2019 U.S. Dist. LEXIS 104401 ...............................................................23, 31

*Aikins v. Cisneros* (C.D. Cal. Jul. 31, 2019)
    2019 U.S. Dist. LEXIS 131939 .............................................................23, 24

*Allen v. Bedolla* (9th Cir. 2013))
    787 F.3d 1218 ...............................................................................................22

*Amchem Prods., Inc. v. Windsor* (1997)
    521 U.S. 591 ...........................................................................................19, 22

*Armstrong v. Davis* (9th Cir. 2001)
    275 F.3d 849 .................................................................................................32

*Barbosa v. Cargill Meat Solutions Corp.* (E.D. Cal. 2013)
    297 F.R.D. 431 .............................................................................................29

*Beaver v. Tarsadia Hotels* (9th Cir. 2016)
    816 F.3d 1170 ...............................................................................................20

*Bradach v. Pharmavite, LLC* (9th Cir. 2018)
    735 Fed. Appx. 251 ......................................................................................19

*Briseno v. ConAgra Foods, Inc.* (9th Cir. 2017)
    844 F.3d 1121 ...............................................................................................32

*Carter v. Andersen Merchandisers, LP* (C.D. Cal. May 11, 2010)
    2010 U.S. Dist. LEXIS 55581 .............................................................12, 26

*Churchill Vill., L.L.C. v. GE* (9th Cir. 2004)
    361 F. 3d 566 ...........................................................................................23, 34

*Class Plaintiffs v. City of Seattle* (9th Cir. 1992)
    955 F.3d 1268 ...............................................................................................22

*Dennis v. Kellogg Co.* (9th Cir. 2012)
    697 F.3d 858 ...............................................................................................8, 33

*Ebner v. Fresh, Inc.* (9th Cir. 2016)
    838 F.3d 958 ..................................................................................15

*Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014)
    2014 U.S. Dist. LEXIS 50600 ......................................................33

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
    150 F.3d 1011 .................................................................15, 20, 24

*Hanon v. Dataproducts Corp.* (9th Cir. 1992)
    976 F.2d 497 ..................................................................................16

*Hefler v. Wells Fargo & Co.* (N.D. Cal. Dec. 17, 2018)
    2018 U.S. Dist. LEXIS 213045 ....................................................25

*In re Bluetooth Headset Prods. Liab. Litig.* (9th Cir. 2011)
    654 F.3d 935 ..................................................................................24

*In re Hyundai & Kia Fuel Econ. Litig.* (9th Cir. 2019)
    926 F.3d 539 ......................................................13, 14, 20, 22, 34

*In re Mego Fin. Corp.* (9th Cir. 2000)
    213 F. 3d 454 ..........................................................................23, 26

*In re Mexico Money Transfer Litig.* (7th Cir. 2001)
    267 F.3d 743 ..................................................................................19

*In re Online DVD-Rental* (9th Cir. 2015)
    779 F.3d 934 ..................................................................................31

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1080....................................................................24

*Johns v. Bayer Corp.* (S.D. Cal. 2012)
    280 F.R.D. 551...............................................................................15

*Kearns v. Ford Motor Co.* (9th Cir. 2009)
    567 .3d 1120 ..................................................................................20

*Kumar v. Salov N. Am. Corp.* (N.D. Cal. July 15, 2016)
    2016 U.S. Dist. LEXIS 92374 ......................................................21

*Lewis v. Starbucks Corp.* (E.D. Cal. Sept. 11, 2008)
    2008 U.S. Dist. LEXIS 83192 ......................................................31

*Linney v. Cellular Alaska Partnership* (9th Cir. 1998)
   151 F.3d 1234 ..........................................................................31, 34

*Louie v. Kaiser Found. Health Plan, Inc.* (S.D. Cal. Oct. 6, 2008)
   2008 U.S. Dist. LEXIS 78314 ..............................................26

*Lozano v. AT & T Wireless Services, Inc.* (9th Cir. 2007)
   504 F.3d 718 ................................................................17

*Mass Mut. Life Ins. Co. v. Sup. Ct.* (2002)
   97 Cal. App. 4th 1282 ....................................................21

*Molski v. Gleich* (9th Cir. 2003)
   318 F.3d 937 ................................................................25

*Mullane v. Central Hanover Bank & Trust Co* (1950)
   339 U.S. 306 ................................................................34

*Murray v. Sullivan* (2012)
   132 S. Ct. 1876 ............................................................19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.* (9th Cir. 1982)
   688 F.2d 615 ................................................................26

*Parsons v. Ryan* (9th Cir. 2014)
   754 F.3d 657 ................................................................16

*Pulaski & Middleman, LLC v. Google, Inc.* (9th Cir. 2015)
   802 F.3d 979 ..........................................................16, 21

*Reid v. Johnson & Johnson* (9th Cir. 2015
   780 F.3d 952 ................................................................16

*Ries v. Ariz. Bevs. USA LLC* (N.D. Cal. 2012)
   287 F.R.D. 523 ............................................................14

*Rodriguez v. Hayes* (9th Cir. 2010)
   591 F.3d 1105 ..................................................16, 25, 31, 34

*Rodriguez v. West Publ'g Corp.* (9th Cir. 2009)
   563 F.3d 948 ................................................................23

*Spann v. J.C. Penney Corp.* (C.D. Cal. 2016)
   314 F.R.D. 312..............................................................23

vi

*Staton v. Boeing Co.* (9th Cir. 2003)
    327 F.3d 938 ...................................................................................25

*Stearns v. Ticketmaster Corp.* (9th Cir. 2011)
    655 F.3d 1013 ...........................................................................13, 21

*Stockwell v. City & County of San Francisco* (9th Cir. 2014)
    749 F.3d 1107 ...................................................................................15

*Sullivan v. DB Invs., Inc.* (3rd Cir. 2011)
    667 F.3d 273 .....................................................................................19

*Torrisi v. Tuscon Electric Power Co.* (9th Cir. 1993)
    8 F.3d 1370 .......................................................................................26

*Tyson Foods, Inc. v. Bouaphakeo* (2016)
    136 S. Ct. 1036 ................................................................................19

*Valentino v. Carter-Wallace, Inc.* (9th Cir. 1996)
    97 F.3d 1227 .....................................................................................19

*Vizcaino v. U.S. Dist. for W.D. Wash.* (9th Cir. 1999)
    173 F.3d 713 .....................................................................................13

*Wal-Mart Stores, Inc. v. Dukes* (2011)
    564 U.S. 338 .....................................................................................15

*Weiner v. Dannon Co.* (C.D. Cal. Jan. 30, 2009)
    255 F.R.D. 658..................................................................................20

*Williams v. Gerber Prods. Co.* (9th Cir. 2008)
    552 F.3d 934 .....................................................................................21

**<u>STATE CASES</u>**

*Chapman v. Skype* (2013)
    220 Cal. App. 4th 217.......................................................................20

*Choi v. Mario Bodusco Skin Care, Inc.* (2016)
    248 Cal. App. 4th 292.......................................................................11

*In re Tobacco II Cases* (2009)
    46 Cal.4th 298.............................................................................16, 20

*Kasky v. Nike, Inc.* (2002)
    27 Cal. 4th 939 ...................................................................................21

*Kwikset Corp. v. Superior Court* (2011)
    51 Cal. 4th 310 ...................................................................................21

*Lavie v. Procter & Gamble Co.* (2003)
    105 Cal. App. 4th 496 ..............................................................15, 21

## FEDERAL STATUTES

28 U.S.C. §1715 ..............................................................................................12

Fed. R. Civ. P. Rule 23 .........................................................................*passim*

Fed. R. Civ. P. Rule 26 .....................................................................................6

## STATE STATUTES

Cal. Bus. & Prof. C. § 17200 ....................................................................3, 20

Cal. Bus. & Prof. C. § 17203 ..........................................................................13

Cal. Bus. & Prof. C. § 17500 ....................................................................3, 20

Cal. Civ. C. § 1542 ..........................................................................................10

Cal. Civ. C. § 1750 ............................................................................................3

Cal. Civ. C. § 1770 ..........................................................................................21

Cal. Civ. C. §1781 ....................................................................................11, 12

## OTHER SOURCES

*Manual for Complex Litigation (Fourth)* (2004)
    §21.63 ............................................................................................23, 34

# I.    Introduction

For nearly two years, the Parties have litigated Plaintiffs' allegation that representations on the front packaging for the over-the-counter pediatric pain reliever, Infants' Tylenol ("Infants"), are deceptive. Specifically, Plaintiffs claim the photo of a mother holding a baby and the name of the product may lead reasonable consumers to believe Infants' is unique or specially formulated for infants. After completing all fact and most expert discovery, and eleven weeks before a class trial was to commence, Plaintiffs and J&J negotiated a fair, reasonable and adequate class settlement with the help of a private mediator, Hon. Charles "Tim" McCoy (Ret.).

The proposed settlement consists of monetary and injunctive relief. There can be no doubt the Agreement was reached in a procedurally fair manner given the settlement negotiations were conducted at arms' length with Judge McCoy, after a California class was certified and the case was vigorously litigated. With respect to the substance of the proposed settlement, Rule 23(e)(2)'s recently-added requirements and the Ninth Circuit's factors for evaluating the fairness of a class settlement both weigh in favor of preliminary approval.

Specifically, in exchange for a nationwide release of claims, Defendant Johnson & Johnson Consumers, Inc. ("JJCI") will make a non-reversionary $6.315 million cash payment for the benefit of the Class. This money will be used to pay for the following: Cash payments to Class Members who submit eligible claims, with or without proof of purchase (described below); Settlement Administration Expenses; litigation costs; Class Counsel's attorneys' fees; and, service awards for Mr. Elkies and Ms. Alfandary.

With regard to the per-claim amount, the settlement provides that Class Members may receive $2.15 per bottle of Infants' purchased during the Class Period for a maximum of 7 bottles ($15.05) without proof of purchase. Class Members who have proofs of purchase for <u>all</u> Infants' purchases may receive $2.15 per bottle for all of their proven purchases, without limitation. This per-bottle amount is a great

recovery, given that Plaintiffs' economic expert calculated that consumers' best case scenario at trial was $3.89 for each bottle of Infants' purchased during the Class Period. Depending on the number of eligible claims and the amount of money remaining in the Claim Fund after paying for Settlement Administration Expenses, attorneys' fees, litigation costs and service awards, the per bottle award may increase or decrease *pro rata*. If, after these *pro rata* increases, the Claim Fund Balance is greater than the total amount to be paid for eligible claims, then the remainder of the Claim Fund Balance will be donated to Nurse Family Partnerships, a community health program that provides low-income, first-time expecting mothers with visits and support from specially trained nurses.

The injunctive component of the Agreement includes changes to the front of the Infants' packaging, changes to certain J&J-controlled web pages and how J&J's Customer Care Center responds to consumer inquiries about Infants' versus Children's. In view of the procedural posture and significant risks presented in this Action,[1] this is a tremendous result for consumers.

As part of the Agreement the Parties agreed to expand the previously-certified class of California purchasers to include consumers who purchased Infants' anywhere in the U.S., subject to court approval. This is proper because the packaging for Infants' is the same nationwide, Plaintiffs pleaded a national class in their complaint and did not limit the scope of discovery to California. Thus, certification of this new nationwide settlement class (the "Class") is proper.

For the reasons explained herein, pursuant to Rule 23 of the Federal Rules of Procedure, this Court should enter an order preliminarily approving the settlement, provisionally certifying the settlement Class, directing notice of the settlement to the Class in the manner proposed herein, and setting a schedule for final approval.

---

[1] Unless otherwise specified, all capitalized terms have the same meanings as ascribed in the Agreement, which is attached as Exhibit 1 to the Declaration of Gillian L. Wade, filed concurrently herewith in support of this Motion. References to "Ex. __" refer to exhibits attached to the Agreement.

## II.     Factual Background

### A.     Summary of Allegations and Defenses

It is undisputed that, since 2011, the medicine contained in a bottle of Infants' is the same as the medicine (160 mg/ 5mL of acetaminophen) in Children's Tylenol ("Children's"). ECF 31 at ¶20. Plaintiffs, therefore, allege the representations on the front of a box of Infants' (the name Infants' Tylenol and the photo of a mother holding a baby) are likely to deceive reasonable consumers into believing the medicine in Infants' is unique or specially formulated for infants. ECF 31 at ¶¶59-113. Indeed, the only material differences between Infants' and Children's are the sizes available, the plastic dosing device included in the products' packaging and price. ECF 74, p.3. Accordingly, the FAC alleges J&J violated California's False and Misleading Advertising Law ("FAL"), Cal. Bus. & Prof. C. §§17500, *et seq*.; Consumer Legal Remedies Act ("CLRA"), Cal. Civ. C. §§1750, *et seq*.; and, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. C. §§17200, *et seq*.

Defendants have denied and continue to deny all claims and contentions alleged by Plaintiffs. ECF 139, p 1; Agreement §II(F). Defendants further contend their advertising and marketing for Infants' is not false and misleading, and the safety benefits of the dosing device that accompanies Infants' (which J&J contend is more expensive and safer for children under two years of age) renders Infants' a different product from Children's. Agreement §II(F).

### B.     Procedural Background

#### 1.     The Court Denied J&J's Motion to Dismiss.

Plaintiffs filed their original Class Action Complaint on October 5, 2017 and an amended complaint ("FAC") on November 21, 2017. ECF 1, 31. Plaintiffs, individually and on behalf of a class, sought restitution, damages, injunctive relief, declaratory relief, attorneys' fees and costs. On December 19, 2017, Defendants filed a Motion to Dismiss, which was denied its entirety. ECF 43, 54. Defendants' answered the FAC on March 13, 2018. ECF 55.

## 2. The Parties Completed Fact and Expert Discovery and Engaged in Significant Discovery-Related Motions Practice.

Before fact discovery closed on May 17, 2019, the Parties completed full merits discovery, which was a contentious process that involved multiple in-person conferences between counsel and discovery motions before Magistrate McDermott. *See* ECF 64, 71, 85, 121, 152.

In particular, Plaintiffs obtained a significant number of documents and information regarding the safety, marketing and sale of Infants' and Children's. Wade Dec. at ¶6. This includes over 62,000 pages of documents, Defendants' responses to Requests for Admissions and Special Interrogatories. *Id.* Class Counsel also deposed J&J's four Rule 30(b)(6) corporate representatives in Philadelphia. *Id.* Following multiple conferences between the Parties, Plaintiffs brought, and prevailed on, a motion to compel J&J to produce documents and information regarding, *inter alia*, the marketing and sales of Children's. ECF 71. Plaintiffs also served Nielsen with a subpoena requesting relevant sales information regarding pediatric acetaminophen products. Wade Dec. at ¶6.

J&J sought highly personal and confidential discovery, such as medical records for Plaintiffs' two minor daughters. *Id.* at ¶7. Plaintiffs also prepared and sat for depositions, responded to 30+ Special Interrogatories (each), 127 document requests and 46 Requests for Admissions. *Id*[2]. The Parties met and conferred to discuss Plaintiffs' written discovery responses on multiple occasions, and J&J ultimately filed a L.R. 37-2 Joint Stipulation to compel further responses, which was denied. *Id.*

The Magistrate also granted, in part, Plaintiffs' motion to quash J&J's subpoenas to pediatricians who treated Plaintiffs' minor daughters. ECF 85. The Magistrate's order limited the scope of the documents and deposition testimony J&J

---

[2] The Parties also briefed J&J's request for leave to re-depose each Plaintiff to ask them about purchases of pediatric acetaminophen products during the 10 months since their depositions. ECF 143. The Magistrate denied J&J's request. ECF 152.

could obtain from the pediatricians. *Id*. Their depositions went forward prior to J&J opposing class certification. *Id. See also* ECF 102.

At the time of settlement, the parties had almost completed full expert discovery. The Parties exchanged expert reports on April 19, 2019, and rebuttal reports on May 20, 2019. Wade Dec. at ¶9. Plaintiffs' experts (Drs. Maronick and Sharp) were deposed.[3] *Id*. J&J designated two retained experts and five non-retained experts, as well as rebuttal experts to Drs. Maronick and Sharp. *Id*. Four of these designated experts were scheduled to be deposed[4] but only Dr. Kochanowski's deposition had been completed at the time Parties reached a settlement. *Id*.

### 3. A Litigation Class Was Certified, the Ninth Circuit Denied Defendants' Rule 23(f) Petition and Class Notice was Disseminated.

Plaintiffs filed their Motion for Class Certification, which J&J strongly opposed. ECF 74, 102. On October 19, 2018, the Court granted the motion. ECF 117, 118. J&J immediately sought interlocutory appellate review in a Rule 23(f) Petition. Wade Dec. at ¶10. Plaintiffs opposed, and on December 19, 2018 the Ninth Circuit denied J&J's Petition. Wade Dec. at ¶10.

After the class was certified (and while the Rule 23(f) Petition was pending), Class Counsel researched third party administrators who could provide notice to the class. *Id*. at ¶ 11. Plaintiffs selected KCC and extensively met and conferred with J&J about KCC's notice plan before submitting it to the Court for approval. ECF 124. After two hearings on Plaintiffs' contested Motion for Order to Approve Class Notice Plan and Content of Notice, the Court approved the proposed plan and appointed KCC as the notice administrator on January 10, 2019. ECF 123, 127, 129,

---

[3] Dr. Sharp was deposed twice—once regarding the contents of his preliminary expert analysis submitted in support of class certification and again after he produced his formal expert report. Wade Dec. at ¶13.

[4] Three of Defendant's non-retained experts had already been deposed by Plaintiffs: Plaintiffs treating physicians, Dr. Shapiro, and Dr. Seligmann, and JJCI's designated 30(b)(6) representative, Dr. Kuffner. Wade Dec. at ¶8-9.

131. A few days later the Court granted the Parties' stipulation to slightly revise the class definition to "All persons who purchased, in California, Infants' Tylenol for personal use since October 3, 2014" (the "Litigation Class").  ECF 132. Notice to the Litigation Class was disseminated on February 1, 2019. Wade Dec. at ¶12. There were no requests for exclusion. *Id.*

### 4.    Plaintiff's Expert Calculated Restitution.

At the class certification stage, Dr. Sharp submitted a declaration that described how he could craft a class-wide damages model in this case. ECF 74-3. His declaration also included a preliminary damages estimate, based on the data available to him at the time. *Id.* J&J deposed Dr. Sharp about his declaration and submitted a rebuttal report from their expert. ECF 102-8. Following certification of the Litigation Class, Dr. Sharp obtained additional data and produced a report under Rule 26(a)(2)(B). Wade Dec. ¶13. His report contained a proposed damages model for trial. *Id.* J&J deposed Dr. Sharp a second time and designated a different expert to rebut Dr. Sharp's Rule 26(a)(2)(B) report. *Id.*

Dr. Sharp offered opinions regarding: (1) the average retail prices for Infants' and Children's in California; (2) the price premium consumers paid for Infants' (versus Children's); and (3) aggregate damages on behalf of the Litigation Class. Wade Dec. at ¶14. Dr. Sharp calculated aggregate damages by multiplying the price premium by the approximate number of Infants' sold. *Id*. Based on this model, Dr. Sharp calculated, *inter alia,* the following: from October 3, 2014 to March 16, 2019, California purchasers of Infants' paid a weighted average price premium of $2.41 per ounce (or $3.89 per unit[5]) for Infants' Tylenol, totaling $21,687,457 in the aggregate. Wade Dec. at ¶14.

### 5.  The Settlement Negotiations.

The parties attended private mediation with Judge McCoy at JAMS on April 4,

---

[5] "Unit" refers to both 1oz and 2oz bottles of Infants' which were sold in California during the Class Period. For computation purposes, each Infants' bottle, regardless of the number of fluid ounces contained, is considered a unit.

2019. Wade Dec. at ¶15; ECF 121, 135, and 138. A settlement was not reached during the mediation, but Judge McCoy continued facilitating settlement discussions over the next three months. Wade Dec. at ¶15. On the eve of the close of expert discovery, and less than a week before the motion cutoff, the parties reached a class settlement, in principle. ECF 121. The parties spent three additional months negotiating the details of the Agreement. Wade Dec. at ¶15.

## III.   Terms of the Settlement

### A.   The Settlement Class Definition

The Settlement includes expanding the Litigation Class—which is limited to individuals who bought Infants' in California—to a larger, national class. Agreement §V. Accordingly, Plaintiffs respectfully request certification of the following Class for settlement: all individuals in the United States who purchased Infants' Tylenol (the "Challenged Product") within the Class Period for personal or household use. Specifically excluded from the Class are (a) Defendants, (b) the officers, directors, or employees of Defendants and their immediate family members, (c) any entity in which Defendants have a controlling interest, (d) any affiliate, legal representative, heir, or assign of Defendants, (e) all federal court judges who have presided over this Action and their immediate family members; (f) all persons who submit a valid request for exclusion from the Class; and (g) those who purchased the Challenged Product for the purpose of resale or for use in a business setting. *Id.* at §I(11).

### B.   Benefits to Class Members

#### 1.   Monetary Relief and *Cy Pres*

JJCI will make a total cash payment of $6.315 million. Agreement §III(B). Money from the cash payment will be used to pay the following, in this order: (1) Settlement Administration Expenses; (2) reasonable attorneys' fees, costs and expenses approved by the Court; (3) any Court-approved service award to Plaintiffs; and, (4) eligible claims by Class Members. *Id.*

Each settlement Class Member is eligible to obtain $2.15 per bottle of Infants'

Tylenol purchased during the Class Period, regardless of the size purchased. Class Members *with* proof of their purchase for all of their Infants' Tylenol purchases during the Class Period can make claims for every bottle, without limitation.[6] Class Members *without* proof of purchase for all of their Infants' Tylenol purchases during the Class Period can make claims for up to 7 bottles, for a total of up to $15.05 total.

Depending on the amount of eligible claims, the Class Members' awards may either decrease *pro rata* or increase *pro rata* up to $6.99 for a 1 oz. bottle and $9.99 for a 2 oz. bottle (the MSRP during the Class Period). Agreement §§III(B)(f)-(h). Specifically, in determining the *pro rata* amounts, Class Members with proofs of purchase will be reimbursed first, up to $6.99/ $9.99 per bottle. *Id.* at §III(B)(g)(1). If any money remains in the Claim Fund Balance after the initial *pro rata* increase, the remaining claims for bottles *without* proofs of purchase will then be increased, up to $6.99/ $9.99 per bottle. *Id.* at §III(B)(g)(2). Practically speaking, this means that claimants' compensation will be limited to the greater of (i) refunds for 7 bottles or (ii) refunds for the number of bottles for which claimants provide proof of purchase.

After accounting for these two *pro rata* increases in Class Claims, the remaining Claim Fund Balance will be distributed *cy pres*[7] to Nurse Family Partnerships, a community health program that provides low-income, first-time expecting mothers with visits and support from specially trained nurses. Agreement §§III(B)(8), III(B)(2)(h); *see also* Wade Dec. at ¶16. Ex. 4 (copy of 'About Us' page for Nurse Family Partnerships).

Claim Fund proceeds allocated to the Class will be distributed to Class Members who submit timely, valid claims. *Id.* at §II(B). If any distribution payments to Class Members are not cashed within 180 days or otherwise not payable, the

---

[6] A valid proof of purchase means a receipt or other documentation, produced by a third-party commercial source, that reasonably establishes the fact and date of purchase of Infants' Tylenol during the Class Period in the United States. Agreement §III(B)(1)(e)(1).

[7] The parties may designate a *cy pres* recipient so long as the recipient qualifies as "the next best distribution" to giving the funds to class members. *Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012).

remaining money will be disbursed to Nurse Family Partnerships. Agreement §III(B).

### 2. Injunctive Relief

JJCI agreed to injunctive relief that directly addresses Plaintiffs' claims. Specifically, within 180 days of the Effective Date or December 31, 2019 (whichever is later), JJCI agrees to do the following for a period of 2 years: (a) modify Infants' current packaging so that the child depicted is at least two years of age;[8] (b) add text on JJCI-controlled websites to the effect that the medicine in Infants' and Children's contain the same concentration of liquid acetaminophen; (c) in response to inquiries and complaints to the CCC regarding comparisons of Infant's and Children's, educate and inform consumers that the medicine in Infants' and Children's contains the same concentration of acetaminophen; and (d) continue to include language on dosing charts that JJCI provides to healthcare providers to the effect that the medicine in Infants' and Children's contains the same concentration of acetaminophen. Agreement §III(A)(1).

### 3. The Settlement Class Release

Class Members who do not properly exclude themselves by the deadline to do so will be bound by the following Release:

> As of the Effective Date, in consideration of the settlement obligations set forth herein, any and all claims, demands, rights, causes of action, suits, petitions, complaints, damages of any kind, liabilities, debts, punitive or statutory damages, penalties, losses and issues of any kind or nature whatsoever, asserted or unasserted, known or unknown (including, but not limited to, any and all claims relating to or alleging deceptive or unfair business practices, false or misleading advertising, intentional or negligent misrepresentation, negligence, concealment, omission, unfair competition, promise without intent to perform, unsuitability, unjust enrichment, and any and all claims or causes of action arising under or based upon any statute, act, ordinance, or regulation governing or applying to business practices generally, including, but not limited to, any and all claims relating to or

---

[8] This excludes packaging of Infants' on retailer websites and/or other channels outside of JJCI's control. If FDA approves relevant changes to the dosing instructions on the label of Infants' within that timeframe, JJCI can update the image accordingly.

alleging violation of Cal. Bus. & Prof. Code § 17200 *et seq.*; Cal. Bus. & Prof. Code § 17500 *et seq.*; and Cal. Civ. Code § 1750 *et seq.*, arising out of or related to the Action, including the alleged false advertising at issue in the Action, that were asserted or reasonably could have been asserted in the Action by or on behalf of all Releasing Parties, whether individual, class, representative, legal, equitable, administrative, direct or indirect, or any other type or in any other capacity, against any Released Party ("Released Claims") shall be finally and irrevocably compromised, settled, released, and discharged with prejudice.

Agreement §IV(A). The Release also includes a Cal. Civ. C. §1542 waiver. *Id.* at §IV(B).

### 4.   Payment of Litigation and Settlement Administration Costs, Attorneys' Fees and Service Awards

Class Counsel will seek service awards of $4,000 each to Mr. Elkies and Ms. Alfandary. Agreement §III(B)(1). The service awards will compensate Plaintiffs for their time and effort in the case, and for the risks they undertook in prosecuting the Action.

Class Counsel will file a motion requesting attorneys' fees of up to $2,083,950, which is 33% of the Claim Fund. *Id.* at §VIII(A). They will also seek reimbursement of litigation costs of up to $385,000. *Id.* at §VIII(A). As will be fully briefed in Class Counsel's forthcoming application for attorneys' fees and costs,[9] significant (but necessary and reasonable) costs were incurred, including the costs of litigation class notice (approx. $68,500), fees for testifying and consulting experts, and twelve depositions (many of which took place outside of California). Wade Decl. at ¶ 17.

### C.   The Notice Program and Settlement Administration

Up to $516,000 of the $6.315 million cash fund will be used to pay for Settlement Administration Expenses. Agreement § III(B). Not more than 30 days after the Court's order granting Preliminary Approval, JJCI shall pay $516,000 to be used toward the Settlement Administration Expenses. The parties selected KCC as

---

[9] This application will be filed no later than 21 days before the deadline for Class Members to object or opt out. *Id.* at §VIII(A)(2).

the Settlement Claim Administrator. *Id.* at §I(A)(3); Declaration of Carla Peak ("Peak Dec.") at ¶4. KCC estimates that the Settlement Administration Expenses will be between $447,930 and $515,901, depending on the number of claims made. Peak Dec. at ¶¶24-26.

The Notice Program tailored by KCC to reach putative Class Members was designed to give the best notice practicable. Indeed, the Notice Program is reasonably calculated under the circumstances to apprise Class Members of the Settlement and their right to make claim for money, opt-out, or object. *Id.* at ¶¶27-28; Ex. D (Notice Plan). KCC will also administer the claims. *Id.* at Ex. A.

### 1.    The Notice Program

The Notice Program consists of (1) Publication Notice (Ex. 2 to Peak Dec.) to appear as a 1/3 page ad in *Parents* magazine—both in print and in its online digital replica; (2) digital advertisements (Ex. 3 to Peak Dec.) to be distributed over desktop and mobile devices, including tablets and smartphones, via the Google Display Network, Facebook, Instagram and You Tube over a period of 60 days; (3) a press release (Ex. 4 to Peak Dec.) issued to individual journalists who are interested in children's healthcare; (4) a dedicated case website allowing Class Members to obtain additional information and access key documents, including the Detailed Class Notice, Claim Form, Agreement and Preliminary Approval Order; (5) summary notice of the settlement on Class Counsel's respective websites. Peak Dec. ¶¶12-21; Agreement §VI(B). The press release, a portion of the digital advertising, and the tagline for the Publication notice will also be in Spanish. Peak Dec. ¶¶16, 18, 19.

Additionally, to fulfill the CLRA's publication requirement, the Publication Notice will also appear as four 1/8 page notices once a week for four consecutive weeks in the *Los Angeles Daily News,* which boasts an average daily circulation of 31, 907. Peak Dec. at ¶¶14-15. *See also* Cal. Civ. C. §1781(d).[10]  KCC will also give

---

[10] Though Civil Code section 1781 does not appear to govern nationwide consumer class actions, it is being provided in an abundance of caution. *See Choi v. Mario Bodusco Skin Care, Inc.,* 248 Cal. App. 4th 292 (2016) (affirming final approval and

notice to the appropriate federal and state officials, as required by the Class Action Fairness Act of 2005 (CAFA). Peak Dec. ¶9. *See* CAFA, 28 U.S.C. §1715(b)(1)-(8).

Class Members will have at least 60 days from the last day of the notice period to object, make a claim, or opt-out. *See* Agreement §VI(B)(3). Class Members will be able to complete the Claim Form (Ex. F) and submit it online on the Settlement Website, or request that a paper copy be mailed so it can be completed and mailed to KCC's designated P.O. Box. Peak Dec. at ¶¶22-23.

### 2.    Claims Administration

KCC's duties and responsibilities include: (a) arranging for publication of the Class Notice and digital advertisements; (b) answering inquiries from Class Members; (c) creating and maintaining the Settlement Website and toll-free telephone line; (d) receiving and processing claims; and (e) distributing payments to the Class. Peak Dec. at ¶25. KCC will approve or reject claims according to the claims criteria in the Claims Administration Protocol. Agreement §III(B)(6), Ex. A.

### IV.    The Class Definition as Contemplated by the Settlement Satisfies Rule 23 and Certification is Warranted.

Plaintiffs' filed suit individually and on behalf of a national class and a California subclass. ECF 1 at ¶¶48-49; ECF 31 at ¶¶47-48. Plaintiffs conducted nationwide discovery, but ultimately only sought—and was granted—certification of a class of consumers who purchased Infants' in California, pursuant to Rules 23(a) and 23(b)(3). ECF 117, 118, 132. Ordinarily, there would be no reason to revisit the class definitions at this juncture. *See Carter v. Andersen Merchandisers, LP,* No. EDCV 08-0025-VAP (OPx), 2010 U.S. Dist. LEXIS 55581, at *15 (C.D. Cal. May 11, 2010) ("Since a certification under Rule 23(a) is not conditional…the Court is not required to revisit certification absent any evidence suggesting reconsideration is necessary"). However, the Settlement is conditioned upon certification of the following Class: all persons who purchased, in the United States, Infants' Tylenol for personal use since

rejecting objector's contention notice failed to comport with the Cal. Civ. 1781(d)).

October 3, 2014 to the date notice to the Class is published. Agreement §V.[11] Accordingly, Plaintiffs respectfully request that the Court expand the Litigation Class to include the individuals encompassed in the settlement Class, for settlement purposes only, and certify the settlement Class.

### A. Expanding the California-Only Litigation Class to Include All Persons Who Purchased in the U.S. is Proper for Settlement Purposes.

The Court can amend or alter the class definition at any time before a decision on the merits. Fed. R. Civ. P. 23(c)(1)(C); *Vizcaino v. U.S. Dist. for W.D. Wash.,* 173 F.3d 713, 721 (9th Cir. 1999) (citing Rule 23(c)(1), giving court "explicit permission to alter or amend a certification order before [a] decision on the merits"). For purposes of certifying the proposed nationwide Class for settlement, this Court, sitting in diversity, must apply California law by default "unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 561 (9th Cir. 2019). Here, because no party has argued to the contrary, California law should be applied to the Class.

The requested modification should be granted because it is appropriate to include and award settlement proceeds to those consumers who were likely exposed to the same or similar representations and omissions, as the Infants' packaging was the same throughout the United States during the Class Period. Wade Dec. ¶18, Ex. 2 (Cullen Dep. at 98:2-10), Ex. 3 (Harman Dep. at 117:25-118:6).  Additionally, many states require similar elements or proof with respect to Plaintiffs' consumer fraud claims. *See* Cal. Bus. & Prof. C. 17203 (authorizing Court to restore to any person any money "which may have been acquired" as a result of unfair competition); *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1020 (9th Cir. 2011), *cert. denied,* 132 S. Ct.

---

[11] *See* Section §III(A) above for exclusions.

1970 (2012) (recognizing that "relief under the UCL is available without individualized proof of deception, reliance, and injury"); *see also In re Hyundai*, 926 F.3d 539 (affirming approval of nationwide settlement and applying California law to nationwide class). It is also appropriate for J&J to buy and obtain peace with respect to all consumers who were exposed to the challenged representations, and the Agreement was negotiated with these principles in mind. Wade Dec. ¶19.

## B. The Proposed Settlement Class Satisfies Rule 23.

Federal Rule of Civil Procedure 23 governs class certification, whether the proposed class is a litigated class or settlement class. Here, the litigated class of California consumers already satisfied this prong, and the national settlement class would follow suit. Class certification is appropriate where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Certification of a class seeking monetary compensation also requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As demonstrated below, the Court's prior Rule 23 analysis applies with equal force to the settlement Class.

### 1. The Settlement Class Satisfies Rule 23(a)

#### a. Numerosity

Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally satisfied when the class exceeds forty members. *See Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies

the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not.").

The Court found the number of members in the Litigation Class to be "clearly large enough to satisfy an understanding of the 'numerosity' requirement," relying on evidence showing "more than 4 million ounces of Infants' were shipped to California from October 2014 through February 2017." Dkt. No. 117 at 4 (*citing Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) ("Given [the national net sales], it is reasonable to assume a sufficient number of individuals purchased the Men's Vitamin's in California to satisfy this requirement."). The same conclusion should be reached for the nationwide settlement Class, which encompasses more consumers.

### b.    Commonality

"Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). Assessing commonality requires courts to determine if the class claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement has been "construed permissively," and its requirements deemed "minimal." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). It is not necessary that all questions of law or fact be common. *See id.* Even a single common question will do. *Dukes*, 564 U.S. at 359.

Here, Plaintiffs contend the representations on (and omissions from) the front of the Infants' box deceive consumers into believing Infants' is unique or specially formulated for infants, in violation of the UCL, FAL and CLRA, all of which apply an objectively reasonable consumer standard focused on Defendants' conduct. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504, 509-10 (2003); *Ebner v. Fresh,*

*Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). To establish a claim of false advertising under these statutes, Plaintiffs need only show "members of the public are likely to be deceived." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "This inquiry does not require 'individualized proof of deception, reliance and injury.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) (*quoting In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009)).

Common questions abound with respect to the messaging on Infants' packaging. The key common questions which have driven this litigation include whether the misrepresentations are likely to deceive and are material, and whether Plaintiffs and the class are entitled to damages. *See, e.g.,* Dkt. No. 117 at 7 ("the common questions will be whether what *was* on the label (along with what was *not*) was likely to deceive members of the public and whether it was material"). Because each of these questions may be demonstrated on a class-wide basis as to the national Class in the same way they applied to the Litigation Class, "Plaintiffs have sufficiently demonstrated commonality under Rule 23(a)(2)." *Id.* at 8.

### c. Typicality

"Rule 23(a)(3) requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (*quoting* Fed. R. Civ. P. 23(a)(3)). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (*quoting Hanlon*, 150 F.3d at 1020). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"

*Parsons*, 754 F.3d at 685 (*quoting Hanon*, 976 F.2d at 508). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (internal quotations omitted).

Like the Court found in certifying the California-only Litigation Class, the typicality requirement is satisfied here as to the nationwide Class. Dkt. No. 117 at 9-10. Plaintiffs allege a common pattern of wrongdoing—J&J's deceptive marketing of Infants' Tylenol—and can present the same evidence (based on the same legal theories and the same conduct by J&J) to support both their claims and the claims of the Class. *See, e.g.,* FAC at ¶¶2-4, 24, 52, 60. Similarly, each Plaintiff and members of the Class seek the same relief: an injunction putting an end to J & J's deception of consumers and monetary relief. *Id.* at ¶¶91, 92, 106, 107, 112, 113.

### d.    Adequacy

Finally, Rule 23(a)(4) requires that "the representative parties adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Generally speaking, whether the class representatives satisfy the adequacy requirement "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Rodriguez*, 591 F.3d at 1125 (omitting internal quotations). Courts must resolve two questions to determine whether named plaintiffs and their counsel will adequately represent a class: (1) do they have any conflicts of interest with other class members and (2) will they prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020.

As this Court found in certifying the California-only Litigation Class, Plaintiffs do not have any interests antagonistic to the other Class Members and will continue to vigorously protect their interests. *See id.* Plaintiffs and Class Members are entirely aligned in their interest in proving that J&J misled them and share the common goal of obtaining redress for their injuries. *See* Dkt. No. 117 at 10 ("there is no information

17

before the Court suggesting any antagonism between Plaintiffs and the Class they seek to represent, and Plaintiffs are obviously vigorously prosecuting this action").

Plaintiffs' conduct and participation in this case make clear that they are adequate. They understand their duties as class representatives, have agreed to consider the interests of absent Class members, and have actively participated in this litigation. Specifically, Plaintiffs have given deposition testimony, searched for documents and responded to written discovery. Dkt. No. 74-1, at 6, ¶31; Dkt. No. 74-4 at 3, ¶7. Furthermore, they have regularly communicated with their counsel regarding various issues pertaining to this case, and they will continue to do so until settlement is approved and its administration completed. *Id.*

In determining if proposed Class Counsel is adequate, courts consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Class Counsel have already demonstrated their qualifications to the Court. *See* Dkt. No. 117 at 10 ("the proposed class counsel are clearly qualified (and assert they have sufficient resources) to litigate this action on a class-wide basis"). Indeed, Plaintiffs' undersigned counsel have significant experience prosecuting class actions, complex litigation and the types of consumer fraud claims asserted in the instant matter.  Dkt. No. 74-1, at 6-10, ¶¶34-41; Dkt. No. 74-4 at 3-7,  ¶¶11-16. They have also demonstrated a willingness and ability to prosecute this action vigorously and to dedicate the resources and expertise necessary to represent the Class for settlement purposes. Dkt. No. 74-1, at 5-6, ¶¶28-33; Dkt. No. 74-4 at 2-3, ¶¶4-10.

### 2.      The Settlement Class Satisfies Rule 23(b)(3)

In addition to the requirements of Rule 23(a), the Court must find that the provisions of Rule 23(b)(3) are satisfied. The Court should certify a Rule 23(b)(3) class when: (i) "questions of law or fact common to class members predominate over

any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed settlement Class satisfies both requirements.

### a. Common Issues of Law and Fact Predominate

The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" and is "much more rigorous" than commonality. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "When common questions present a significant aspect of a case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The Ninth Circuit recently stated that "CLRA and UCL claims are 'ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Bradach v. Pharmavite, LLC*, 735 Fed. Appx. 251, 254-55 (9th Cir. 2018).

Courts have repeatedly found that national settlement classes may be certified notwithstanding state law variations. *Hanlon*, 150 F.3d at 1022; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3rd Cir. 2011) (*en banc*), *cert denied sub nom., Murray v. Sullivan,* 132 S. Ct. 1876 (2012) (variations in state law do not preclude a finding of predominance for purposes of nationwide class action settlement); *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001).

As the Ninth Circuit reaffirmed in *Hyundai*, even if variations in state law were an issue, it would not obviate the required analysis of whether common issues

nevertheless predominate. *Hyundai*, 926 F.3d at 557 ("[w]e held that common questions as to the defendant's knowledge and the existence of the problem . . . predominated, notwithstanding 'variations in state law'") (*citing Hanlon*, 150 F.3d at 1020, 1022-23)). That same reasoning applies with even greater force here, where the class claims turn on J&J's common course of conduct and no party has established that the law of any other states applied. *Id.* at 563.

Questions of law and fact common to all members of the proposed Class are central to this litigation, which is about whether the front of the packaging is likely to deceive. *Chapman v. Skype,* 220 Cal. App. 4th 217, 229-30 (2013). The record makes clear J&J made these representations to the entire Class (nationally), as they appeared on every unit of Infants' sold in the Country during the Class Period. *See* Dkt. No. 74-1 at 35-38. By definition, consumers must have bought Infants' to be a member of the Class, and in doing so saw the front of the box. *See Weiner v. Dannon Co.,* 255 F.R.D. 658 (C.D. Cal. Jan. 30, 2009) (representations on packaging made to all class members because "by definition, every member of the class must have bought one of the Products and, thus, seen the packaging"). As detailed below, Plaintiffs' UCL, FAL and CLRA claims are perfectly suited for class treatment for a national settlement Class.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. C. § 17200. Each prong is separately actionable. *Kearns v. Ford Motor Co.,* 567 .3d 1120, 1127 (9th Cir. 2009); *accord Beaver v. Tarsadia Hotels,* 816 F.3d 1170, 1177 (9th Cir. 2016). The FAL makes it unlawful for any person to make or disseminate an advertisement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. C. § 17500. A violation of the UCL's 'fraudulent' prong is also a violation of the FAL. *In re Tobacco II Cases,* 46 Cal. App. 4th 298, 312 n. 8 (2009). The CLRA prohibits "unfair methods of competition and unfair or deceptive practices." Cal. Civ.

C. § 1770. Under the CLRA, Plaintiffs must ultimately prove three elements: (1) deceptive conduct; (2) causation; and, (3) damages. *See Mass Mut. Life Ins. Co. v. Sup. Ct.,* 97 Cal. App. 4th 1282, 1292 (2002) (plaintiffs must "show not only that a defendant's conduct was deceptive but that the deception caused the harm").

As outlined in the commonality analysis, "[t]o state a claim under the UCL or the FAL based on false advertising or promotion practices, it is necessary only to show members of the public are likely to be deceived." *Pulaski & Middleman, LLC v. Google, Inc*., 802 F. 3d 979, 986 (9th Cir. 2015). *See also Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002); *Kumar v. Salov  N. Am. Corp.,* No. 14-CV-2411-YGR, 2016 U.S. Dist. LEXIS 92374 (N.D. Cal. July 15, 2016). This requires "a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Lavie*, 105 Cal. App. 4th at 508). Similarly, under the CLRA, "causation, on a classwide basis, may be established by *materiality*. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises to the class." *Stearns,* 655 F.3d at 1022 (emphasis in original). The CLRA does not require an individualized assessment of absent class members' subjective beliefs. *Id.*

As with the California-only Litigation Class, a trier of fact could find the challenged representations on the front of the Infants' box are material and likely to deceive. As decided by this Court, Plaintiffs have "have made a sufficient showing…materiality of the information contained on the Infants' packaging and/or any omissions from that information can be determined using common evidence, on a class-wide basis." Dkt. No. 117 at 13. The same could be said as to the proposed national settlement Class.

A challenged representation need not be "the sole or even decisive cause" in a consumer's purchasing decisions. *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 326-327 (2011). Plaintiffs have demonstrated standing here: they relied on the

misrepresentations on the front of the Infants' box in deciding to buy it, and lost money as a result of the deception. Dkt. No. 74-5 at 2, ¶2; Dkt. No. 74-6 at 2, ¶2; Dkt. No. 74-1, at 61-62, Rog. No. 1 (recalling price of Infants' was between $8 and $9 for 1 fl oz.); 74-1, at 83-84, Rog. No. 1 (same).

In sum, Plaintiffs previously presented 'generalized evidence'—the packaging itself (to which every Class Member was exposed), J&J's own internal documents and testimony, and expert proof—proving the representations are likely to deceive reasonable consumers into thinking Infants' Tylenol is specially made for infants. Accordingly, Plaintiffs' claims should be certified on behalf of the national settlement Class.

### b.     Class Treatment is Superior in This Case

Rule 23(b)(3) requires a class action to be superior to all other methods of dispute resolution. When examining the "matters pertinent" to a finding superiority under Rule 23(b)(3) in its class certification order, the Court identified "no significant likelihood of individual consumers desiring to pursue their claims individually when there is such a small amount per bottle at stake." Dkt. No. 117 at 16. The same applies here with respect to the national Class. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there will be no trial." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Accordingly, a finding of superiority is appropriate for the settlement Class.

## V.     The Proposed Settlement Merits Preliminary Approval.
### A.     Legal Framework
#### 1.     The Class Action Settlement Process

The Ninth Circuit maintains "a strong judicial policy" favoring class action settlements. *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.),* 2019 U.S. App. LEXIS 17047, at *14 (9th Cir. 2019) (quoting *Allen v. Bedolla,* 787 F.3d 1218, 1223 (9th Cir. 2013)); *see also Class Plaintiffs v. City of Seattle,* 955 F.3d 1268, 1276

(9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Nevertheless, a decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp.,* 213 F. 3d 454, 458 (9th Cir. 2000); Fed. R. Civ. P. 23(e).

Approval is a three-step process: (1) preliminary approval of the proposed settlement; (2) dissemination of the notice of the settlement to class members, providing for, among other things, a period for potential objectors and dissenters to raise challenges to the settlement's reasonableness; and (3) a formal fairness and final settlement approval hearing. *Manual for Complex Litigation (Fourth)* (2004) (the "Manual") at § 21.63; *see, e.g. Churchill Vill., L.L.C. v. GE,* 361 F. 3d 566, 575 (9th Cir. 2004) (discussing the district court's use of a preliminary approval order).

### 2. The Standard for Preliminary Approval

The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009). The Court takes a "closer look" at the ultimate question of fairness, reasonableness and adequacy of the settlement at final approval. *Id.*

At this stage, a court may grant preliminary approval and direct notice to the class if the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Spann v. J.C. Penney Corp.,* 314 F.R.D. 312, 319 (C.D. Cal. 2016)); *see also Aikins v. Cisneros*, 2019 U.S. Dist. LEXIS 131939, *18 (C.D. Cal. Jul. 31, 2019) (granting preliminary approval); *Ahmed v. HSBC Bank USA,* 2019 U.S. Dist. LEXIS 104401, *12 (C.D. June 21, 2019) (same). Whether a

settlement is fair, adequate, and reasonable is considered as a whole. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Thus, to preliminarily assess a settlement, a court should review both the substance of the deal and the process used to arrive at the settlement. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 ("Preliminary approval . . . has a both procedural and substantive requirement"). A "full fairness analysis is unnecessary" at preliminary approval. *Aikins*, 2019 U.S. Dist. LEXIS 131939, *17.

Here, the substantive quality of the Agreement and the procedurally fair manner in which it was reached weigh in favor of approval.

**B.    The Settlement is Fair, Reasonable and Adequate.**

      **1.    Procedural Concerns.**

            **a.    Plaintiffs and Class Counsel Have Adequately Represented the Class.**

As part of its Rule 23(a) analysis in certifying the California class for litigation, this Court held that Plaintiffs are adequate class representatives, noting they "are obviously vigorously prosecuting this action." ECF 117 at 10; ECF 118. The Court also found that "the proposed class counsel are clearly qualified (and assert they have sufficient resources) to litigate this action on a class-wide basis." ECF 117 at 10. Thus, Plaintiffs and Class Counsel have demonstrated their adequacy.

            **b.    The Settlement Was Negotiated at Arms' Length.**

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez,* 563 F.3d at 965. Protracted settlement negotiations with the assistance of a mediator also weigh highly in favor of granting preliminary approval. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) ("presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness").  Here, the parties first engaged in settlement negotiations at a Court-ordered private mediation in April 2019 with Judge McCoy, and it took four months for the Parties to ultimately work out the details of the agreement. Wade Decl. at ¶20.

It is an understatement to say that the parties benefited from the assistance of Judge McCoy, who played a crucial role in conducting the negotiations. *Id.*

### 2.    Substantive Concerns.

Recent amendments to Rule 23 direct courts to consider the following "substantive" factors: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed R. Civ. P. 23(e)(2)(C). Courts must also consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

Courts should also apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.,* No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13 (N.D. Cal. Dec. 17, 2018).[12] A district court "may consider some or all of the following factors" when assessing whether a class action settlement is fair, reasonable and adequate: (1) strength of the plaintiffs' case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) presence of a government participant; and (8) reaction of the class members to the settlement. *See Rodriguez v. W. Publ'g Corp.,* 563 F. 3d 948, 963 (9th Cir. 2009) (citing *Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003) and *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003)). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s)

---

[12] In the notes accompanying these amendments, the Advisory Committee explains that adding these specific factors to Rule 23(e)(2) was not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982).

As set forth below, the settlement is well within the range of what the Court might finally approve.

### a.   The Settlement Satisfies Fed. R. Civ. P. Rule 23(e)(2).

### i.   Strength of Plaintiffs' Case and Risk of Continuing Litigation

Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in this Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial," *Hanlon,*150 F. 3d at 1026. Generally, the principle risks to be assessed are the difficulties and complexities of proving liability and damages. *See, e.g., Mego,* 213 F. 3d at 458-59; *Torrisi v. Tuscon Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (approving settlement based on uncertainty of claims and avoidance of summary judgment); *Officers for,* 688 F.2d at 625 (approving settlement based in part on possibility judgment after trial, when discounted, might not reward members for their patience and delay). Where counsel are well-qualified to represent the class in a settlement based on their class action experience and familiarity with the strengths and weaknesses of the action, "[c]ounsel's opinion is accorded considerable weight." *Carter v. Anderson Merchandisers, LP,* No. EDCV 07-0025-VAP, 2010 U.S. Dist. LEXIS 55629, at *8 (C.D. Cal. May 11, 2010)). *See also Louie v. Kaiser Found. Health Plan, Inc.,* No. 08-cv-0795, 2008 U.S. Dist. LEXIS 78314, at *6 (S.D. Cal. Oct. 6, 2008) ("counsel's extensive investigation, discovery, and research weighs in favor of preliminary settlement approval").

In considering whether to enter into the Settlement, Plaintiffs, represented by counsel experienced in class actions involving false advertising and consumer fraud,

weighed the risks inherent in establishing all the elements of their claims at trial. Wade Decl. at ¶¶ 22-23. They also considered the expense of a trial (just two and a half months away at the time of settlement) and likely duration of post-trial motions and appeals. *Id.* Plaintiffs agreed to settle this litigation on these terms based on their careful investigation and evaluation of the facts and law relating to Plaintiffs' allegations and J&J's defenses and the Parties' respective experts' analyses. *Id.*

Plaintiffs and their Counsel believe their claims are meritorious, but J&J raised, and would continue to raise, challenges to the legal and factual basis for such claims. Wade Decl. at ¶¶25, 27. To prevail at trial, Plaintiffs would need to prove not only that the challenged representations mislead consumers into believing Infants' was specially formulated for infants, but also that J&J's omission of an express statement telling consumers that Infants' contains the same medicine as Children's is material; that the representations and/or omissions caused injuries; that restitution (under the UCL) and/or damages (under the CLRA) was recoverable; and to obtain punitive damages, that J&J's conduct constitutes fraud, oppression or malice. *Id.*

Plaintiffs and Class Counsel are also pragmatic in their awareness that to succeed at trial, Plaintiffs would need to overcome J&J's defenses on the merits and prove damages. *Id.* J&J has consistently contended that the representations are not deceptive. *Id.* They further argued that the phrase "specially formulated" does not appear in any Infants' marketing and is undefined and immaterial. *Id.* J&J has also taken the position that Infants' and Children's are not the same products because— for safety reasons—they contain different dosing devices and utilize different bottle flow restrictors to prevent accidental overdose. Moreover, J&J also presented expert testimony they claim demonstrates that some Class Members bought Infants' for the syringe, and are willing to pay more for it. *Id.* Further, J&J criticized Plaintiffs' consumer survey as flawed and unreliable. Plaintiffs also faced substantial challenges in establishing the amount of class-wide damages. *Id.* J&J argued Dr. Sharp's model is faulty and unreliable for various reasons such as failing to consider the syringe's

value and the other "benefits" that J&J claimed Infant's provided to consumers. *Id.*

At the time of settlement, J&J was less than a week away from filing motions seeking summary judgment, exclusion of Plaintiffs' experts, and decertification. Wade Decl. at ¶¶27. While Class Counsel are confident in their positions, they are also experienced and realistic enough to know the recovery and certainty achieved through settlement, as opposed to the uncertainty inherent in the trial and appellate process, weighs heavily in favor of settlement. *Id.* Even if Plaintiffs prevailed at a class trial, any recovery could be delayed for years by appeal, which could have further delayed and jeopardized the Litigation Class' recovery. *Id.* And if the Litigation Class stayed certified through trial, any adverse judgment would bind the entire Litigation Class. *Id.* Under these circumstances, Plaintiffs appropriately determined that this settlement outweighs the gamble of continued litigation. *Id.*

### ii.   The Method for Distributing Monetary Relief is Effective and Efficient.

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). As explained by the 2018 Advisory Committee Notes to Rule 23, a "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." The proposed method of processing claims here strikes that delicate balance. Class Members who seek monetary relief under the Settlement need only submit a relatively simple claim form. Agreement §III(B)(3); Exs. A, F. The one-page Claim Form only requires Class Members to provide their contact information and basic information about their purchases of Infants' (e.g. number of bottles purchased and whether they purchased 1oz or 2 oz bottles). Ex. F.[13] Thus, it is, clear, precise and simple for Class Members to complete.

Settlement Class Members will have the option of making claims online or by

---

[13] Receipts are not required, but claimants may attach them to maximize their potential recovery. *Id.*

printing the Claim Form and mailing it to the Settlement Administrator. Ex. F. Payments to Class Members who submitted valid Claim Forms will be disbursed directly to eligible claimants. This procedure is claimant-friendly, efficient, cost-effective, proportional and reasonable.

### iii.   The Proposed Attorneys' Fees are Fair.

The Agreement provides that Class Counsel may apply for an award of attorneys' fees of no more than 33% of the Settlement Fund ($2,083,950). Agreement §VIII(A)(1), (3). *See, e.g., Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431, 448-455 (E.D. Cal. 2013) (awarding fees equal to one-third of the common fund in class action settlement and collecting cases). The Agreement also provides that Class Counsel may apply for an award of litigation expenses up to $385,000. Agreement §VIII(A)(4). Such requests have frequently been granted in class actions in this Circuit. Class Members, and the Court, will have an opportunity to review the application for an award of fees and expenses request. *Id.* §VIII(A)(2).

If attorneys' fees and costs are awarded by the Court, the timing for payment of attorneys' fees under the Agreement is fair and reasonable. Specifically, payment will occur after the Effective Date, which is well after the appeals process and entry of a Final Settlement Order and Judgment. *Id.* §VII(A). Moreover, in the event that the Court denies or decreases the amount of attorneys' fees and/or costs requested, such denial or decrease will not invalidate the Agreement. *Id.* at §VIII(A)(6).

### iv.   There Are No Supplemental Agreements to be Identified Under Rule 23(e)(3).

Rule 23(e) requires that the parties identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The only agreement made in connection with the proposed Settlement is the Stipulation of Settlement, which is being concurrently filed, and has been summarized in section III above.

### v.   Class Members Are Treated Equally.

The 2018 Advisory Committee Notes to Rule 23 explain that this factor

concerns "inequitable treatment of some class members vis-à-vis others. Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.* None of those concerns are present here.

Each member of the Class is treated in the same manner with respect to the claims they are releasing and their eligibility for an award. Even though Infants' may have been sold at different prices based on retail location, the best case scenario at trial was approximately $3.89 per bottle. *See* Wade Decl. at ¶ 28. Under the Agreement, each Class Member can submit a claim for $2.15 per bottle, regardless of the size actually purchased and the amount actually paid. Agreement §III(B)(2)(e). Practically speaking, this means that claimants' compensation will be limited to the greater of (i) refunds for 7 bottles or (ii) refunds for the number of bottles for which claimants provide proof of purchase.

If there is an excess of funds, Class Members with valid proofs of purchase for all of their Infants' purchases will receive the *pro rata* increase first, but the maximum *pro rata* increase is the same regardless of whether Class Members have proofs of purchase (i.e. both groups max out at $6.99 for each 1 oz bottle and $9.99 for each 2 oz bottle). *Id.* at §III(B)(2)(f)-(g). Overall, this approach provides claimants the ability to obtain a payment commensurate with their potential losses, as compared to other Class Members. This structure is fully in line with the 2018 Committee Notes' directive to "deter or defeat unjustified claims" without being "unduly demanding."

The Settlement, which provides that Plaintiffs may apply for service awards of up to $4,000 each, does not improperly grant them preferential treatment. Rather, it is an appropriate amount to compensate them for their time and dedication to the case, particularly where they (and their daughters' pediatricians) were deposed and asked to provide highly controversial information and documentation concerning their

daughters' medical history. *See, eg.,* ECF Nos. 85, 143, 152. *See also Ahmed v. HSBC Bank USA,* No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, *34 (C.D. Cal. Jun. 21, 2019) (finding $5,000 incentive award "presumptively reasonable") (citing *In re Online DVD-Rental,* 779 F.3d 934, 947-48 (9th Cir. 2015) (upholding $5,000 incentive awards that were roughly 417 times larger).

### b.   The Ninth Circuit's Factors Weigh in Favor of Preliminary Approval.

Several of the factors articulated by the Ninth Circuit in *Rodriguez,* 563 F. 3d at 963, are encompassed within Rule 23(e)(C)'s new criteria, thus Plaintiffs respectfully refer to the analysis of these issues in section VI(B)(2) above. Because there is no government entity involved and notice of the settlement has not gone out to the settlement Class, Plaintiff will not address those factors at this time. As set forth below, consideration of the remaining *Rodriguez* factors further support approval.

### i.   The Parties Completed Extensive Discovery.

Before entering into settlement discussions on behalf of a class, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998). The amount of discovery and investigation completed prior to reaching a settlement is an important factor in determining its reasonableness because it demonstrates the Parties and the Court have sufficient information before them to assess the merits of the claims. *See Lewis v. Starbucks Corp.,* No. 2:07-CV-00490-MCE-DAD, 2008 U.S. Dist. LEXIS 83192, at *6 (E.D. Cal. Sept. 11, 2008) (approval proper "as long as discovery allowed the parties to form a clear view of the strengths and weaknesses").

Here, by the time settlement negotiations began, the case had been actively litigated for nearly two years, a class was certified and the parties had exchanged extensive merits and expert discovery. *See* Section II(B)(5) above. The fruits of vigorous discovery and motion practice enabled the Parties to assess the merits and arrive at a fair, reasonable and adequate resolution.

### ii. The Risk of Maintaining Class Action Status Throughout Trial

Protracted litigation carries inherent risks that would have endangered maintaining the Litigation Class' certification status. Though the Ninth Circuit declined to hear J&J's Rule 23(f) Petition, J&J advised Class Counsel of its intent to file a motion to decertify. Wade Decl. at ¶27. Class Counsel is confident the decertification motion would have been denied, but recognize that any class certification order "may be altered or amended" at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C). *See also Armstrong v. Davis,* 275 F.3d 849, 871 (9th Cir. 2001) (district court retains broad authority to modify or withdraw certification).

### iii. The Settlement Amount is a Fair Compromise in Light of the Risks and Uncertainty of Trial.

A comparison of the settlement award to the potential damages that might be recovered for the Litigation Class at trial, given the risks of the litigation, supports the reasonableness of the Settlement. Dr. Sharp preliminarily opined that Litigation Class Members paid a price premium of approximately $3.89 per unit. Wade Decl. at ¶28. The refund available to Class Members under the Agreement—$2.15 per unit for up to seven units without proof of purchase—is an excellent recovery, which would have been achieved at trial only if the trier of fact found J&J liable and determined consumers overpaid for Infants' (a contention J&J vigorously denies). The *pro rata* increase of up to $6.99 for a 1 oz. bottle and $9.99 for a 2 oz. bottle  is also fair, as these were the approximate MSRPs for each size bottle during the Class Period. Additionally, there is substantial value to the proposed injunctive relief, which includes meaningful changes to the Infants' packaging. Agreement §III(A).

Moreover, the aggregate amount available to the Class is a fair compromise. Even after prevailing at trial, class members would have to make claims in order to share in any monetary award, because they cannot otherwise be identified. *See* Agreement §III(B); *Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1131-32 (9th Cir.

2017) ("Rule 23 specifically contemplates the need for such individualized determinations after a finding of liability"). In cases involving inexpensive consumer products such as Infants', claims rates are often between 1% and 5%.[14] There is no reason to believe the post-trial claim rate would exceed a settlement claim rate. And even if the proposed settlement were to amount to only a fraction of the potential recovery, that "does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney,* 151 F.3d at 1242.

The Settlement further provides that if any balance remaining in the Claim Fund after paying for Approved Claims, Settlement Administration Expenses, attorneys' fees and costs, and Service Awards, such funds will be donated to the *cy pres* recipient Nurse Family Partnerships . Agreement § II(B)(h). Any uncashed distribution checks will also be donated to Nurse Family Partnerships . Agreement § II(B)(i). This will ensure that any unused funds do not revert back to J&J.[15]

In light of the uncertainties of trial, the value of the settlement meets (and exceeds) the standard and is based on the actual recovery amount, per unit.

## C. KCC Should Be Appointed as the Settlement Administrator.

In connection with preliminary approval of the settlement, Plaintiffs also ask the Court to appoint KCC to serve as the Settlement Administrator. As explained in Section III(C) above, KCC is well-qualified and was the third party appointed by the Court to provide notice to the Litigation Class. ECF 132. Plaintiffs respectfully request that KCC be appointed as the Claims Administrator for the Settlement.

---

[14] *See Forcellati v. Hyland's, Inc.,* No. CV 12-1983-GHK MRWX, 2014 U.S. Dist. LEXIS 50600, *6 (C.D. Cal. Apr. 9, 2014) ("prevailing rule of thumb" is a claims rate of 3-5%); *Poertner v. Gillette Co.,* 618 Fed. Appx. 624 (11th Cir. Jul. 16, 2015) (affirming final approval with 1% claims rate); Tiffany Allen, Anticipating Claims Filing Rates in Class Action Settlements, Class Action Persp. (Rust Consulting, Inc., Minneapolis, Minn.), Nov. 2008, available at http://www.rustconsulting.com/Portals/0/pdf/Monograph_ClaimsFilingRates.pdf.
[15] There is "a driving nexus" between the settlement Class and the *cy pres* beneficiaries. *Dennis v. Kellogg Co.,* 697 F.3d 858 (9th Cir. 2012) (holding any *cy pres* award must be "guided by" (1) the objective of the underlying statute(s) and (2) the interests of silent class members, and must not benefit a group too remote from the plaintiff class). Here, the *cy pres* recipients share in the objectives of the Class—the health of young children and educating new parents.

### D.   The Proposed Notice Program Should be Approved.

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) requires the "best notice that is practicable under the circumstances[.]" The notice may be "electronic means, or other appropriate means." *Id.* The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to object." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

With respect to the contents of settlement notice, to satisfy Rule 23(e)(1) the notice must " present information about a proposed settlement neutrally, simply, and understandably.'" *In re Hyundai,* 926 F.3d at 567 (quoting *Rodriguez,* 563 F.3d at 962). Notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Id.* (citing *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations omitted)). The Class Notice Package (Exs. A, C-F) and the Notice Plan constitute sufficient notice to the Class, satisfy Rule 23 and comply with the constitutional requirements of due process.

The notice documents will inform Class Members of their eligibility, options for opting out or objecting to the settlement, the date and location of the Final Approval Hearing, the salient terms of the Agreement, and how to obtain additional information. *See* Exs. C and E. They also provide neutral and objective information about the nature of the Settlement. *Id.* The notice documents also explain that Class Members must complete and return a Claim Form to receive payment under the Agreement. *Id.* The language of the notice documents and Claim Form, which will be available in English and Spanish, are plain and easy to understand. *See* Exs. C, E, F.

The Notice Plan also satisfies Rule 23(e) and Ninth Circuit standards and is consistent with the guidelines set forth in the *Manual for Complex Litigation, Fourth,*

and the Federal Judicial Center's Checklist regarding class notice. *Id.* at ¶ 28. Because J&J did not sell Infants' Tylenol directly to consumers, it does not possess Settlement Class Members' contact information and their contact information cannot otherwise be obtained through reasonable efforts for purposes of giving Settlement Notice. Agreement §III. The parties have agreed on a Class Notice Package designed to reach as many Class Members as possible and encourage them to claim compensation under the settlement. *See* Ex. D. The Notice Plan ensures Class Members are alerted to the settlement's terms and given an opportunity to respond to it. The Notice Plan is virtually identical to the litigation class notice program approved by this Court and successfully completed. *See* ECF 132.

The Notice Program is expected to effectively reach approximately 70% of likely Class Members via the publication in *Parents* and digital media notice efforts. Peak Dec. at 27. The Notice Plan should be approved.

## VI.   Proposed Schedule of Events

Attached as Appendix A is a proposed calendar of the relevant deadlines based on an October 10 Preliminary Approval date. If approval is not granted that day Class Counsel will propose revised dates.

## VII.  Conclusion

Plaintiff respectfully requests that the Court enter the [Proposed] Preliminary Approval Order, which: (1) preliminarily approves the Settlement; (2) certifies the Settlement Class; (3) appoints Mr. Elkies and Ms. Alfandary as the Class Representatives for the Settlement Class and their counsel as Class counsel; (4) appoints Kurtzman Carlson Consultants ("KCC") as the Settlement Administrator; (5) approves the form, method and plan of Settlement Class Notice; (6) mandates procedures and deadlines for Settlement Class Members to make claims, object or opt-out; and (7) schedules a Final Approval Hearing and related deadlines.

1   Dated: September 24, 2019                Respectfully submitted,

2                                               */s/ Gillian L. Wade*
3                                            Gillian L. Wade
                                             Sara D. Avila
4                                            **MILSTEIN JACKSON FAIRCHILD &
                                             WADE, LLP**
5

6                                            Richard D. Heideman
7                                            Noel J. Nudelman
                                             Tracy Reichman Kalik
8                                            **HEIDEMAN NUDELMAN &
                                             KALIK, P.C.**
9

10                                           *Counsel for Plaintiffs and the Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Appendix A

The following proposed deadlines for notice, claims and Final Approval-related deadlines are based on an October 10, 2019 Preliminary Approval date:

| Deadline | Deadline | NOTES |
|---|---|---|
| Class Notice Program Begins | November 8, 2019 | No later than 30 days after Preliminary Approval<br><br>[banner ads run for 60 days] |
| Deadline to File Motion for Final Approval and Applications for Service Award, Attorneys' Fees and Costs | January 16, 2020 | No later than 21 days before the deadline to Object and Opt-Out of Settlement |
| Deadline to Submit Claims, Opt-Out or Object to Settlement | February 6, 2020 | At least 90 days after the notice program begins [class members have 30 days after last day of internet notice]<br><br>AND<br><br>At least 28 days before Final Approval |
| Deadline to file Reply in Support of Motion for Final Approval (Optional) | March 5, 2020 | No later than  7 days before Final Approval Hearing<br><br>[deadline to respond to objectors and update court on # of claims, opt outs, etc.] |
| Final Approval Hearing | March 12, 2020 | At least 148 days after Preliminary Approval [120 days after preliminary approval + 28 days before final approval] |