**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**HEIDEMAN NUDELMAN &**
**KALIK, P.C.**
Richard D. Heideman (admitted *pro hac vice*)
rdheideman@hnklaw.com
Noel J. Nudelman (admitted *pro hac vice*)
njnudelman@hnklaw.com
Tracy Reichman Kalik (admitted *pro hac vice*)
trkalik@hnklaw.com
1146 19th Street, NW 5th Floor
Washington, DC  20036
Tel: (202)463-1818
Fax: (202)463-2999

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONY ELKIES and DANIELLE ALFANDARY, individually and on behalf of all others situated;<br><br>        Plaintiffs,<br>   vs.<br><br>JOHNSON & JOHNSON SERVICES, INC., a New Jersey limited liability company, JOHNSON & JOHNSON CONSUMER INC. a New Jersey limited liability company, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. 2:17-CV-7320-GW-JEM<br><br>**DECLARATION OF GILLIAN L. WADE IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date:  October 10, 2019<br>Hearing Time:  8:30 a.m.<br>Courtroom:     9D<br>Judge:        Hon. George H. Wu |

1.     I am an attorney duly licensed to practice law before all Courts of this state. I am a Partner at Milstein Jackson Fairchild & Wade, LLP ("MJFW"), attorney of record for Plaintiffs Rony Elkies and Danielle Alfandary and the Litigation Class that was certified in this Action in October 2019. I have personal knowledge of each of the facts set forth in this Declaration, and can and would testify competently thereto.

2.     I make this declaration in support of Plaintiff' Unopposed Motion for Preliminary Approval of Class Action Settlement.

3.     Attached hereto as **Exhibit 1** is a true and correct copy of the fully executed Stipulation of Settlement (the "Agreement"). Unless otherwise specified, all capitalized terms have the same meanings as ascribed in the Agreement. References to "Ex. __" refer to exhibits attached to the Agreement.

4.     Attached hereto as **Exhibit 2** is a true and correct copy of excerpts from the transcript of the deposition of Jennifer Cullen, designated as one of Defendants' corporate representatives pursuant to Fed. R. Civ. P. Rule 30(b)(6), taken in this case on July 10, 2018.

5.     Attached hereto as **Exhibit 3** is a true and correct copy of excerpts from the transcript of the deposition of Eileen Harman, designated as one of Defendants' corporate representatives pursuant to Fed. R. Civ. P. Rule 30(b)(6), taken in this case on May 29, 2014.

6.     In particular, Plaintiffs obtained a significant number of documents and information regarding the safety, marketing and sale of Infants' and Children's. This includes over 62,000 pages of documents, Defendants' responses to Requests for Admissions and Special Interrogatories. My co-counsel and I also deposed, under Rule 30(b)(6), four of J&J's corporate representatives in Philadelphia. Following multiple conferences between the Parties, we brought, and prevailed on, a motion to compel J&J to produce documents and information regarding, inter alia, the marketing

**DECLARATION OF GILLIAN L. WADE**

and sales of Children's. We also served subpoenas with a subpoena requesting relevant sales information regarding pediatric acetaminophen products.

7.      J&J sought highly personal and confidential discovery, such as medical records for Plaintiffs' two minor daughters and depositions of their pediatricians. Plaintiffs also prepared and sat for depositions, responded to 30+ Special Interrogatories (each), 127 document requests and 46 Requests for Admissions. The Parties met and conferred to discuss Plaintiffs' written discovery responses on multiple occasions, and J&J ultimately filed a L.R. 37-2 Joint Stipulation to compel further responses, which was denied.

8.      The Magistrate also granted, in part, Plaintiffs' motion to quash J&J's subpoenas to pediatricians who treated Plaintiffs' minor daughters. ECF 85. The Magistrate's order limited the scope of the documents and deposition testimony J&J could obtain from the pediatricians. Their depositions went forward prior to J&J opposing class certification.

9.      At the time of settlement, the parties had almost completed full expert discovery. The Parties exchanged expert reports on April 19, 2019, and rebuttal reports on May 20, 2019. Plaintiffs' experts (Drs. Maronick and Sharp) were deposed. J&J designated two retained experts and five non-retained experts, as well as rebuttal experts to Drs. Maronick and Sharp.  Four of these designated experts were scheduled to be deposed but only Dr. Kochanowski's deposition had been completed at the time Parties reached a settlement.

10.      Plaintiffs' filed their Motion for Class Certification, which J&J strongly opposed. ECF 74, 102. On October 19, 2018, the Court granted the motion. ECF 117, 118. J&J immediately sought interlocutory appellate review in a Rule 23(f) Petition. Plaintiffs opposed, and on December 19, 2018 the 9th Circuit denied J&J's Petition.

11.      After the class was certified (and while the Rule 23(f) Petition was pending), my office researched third party administrators who could provide notice to

**DECLARATION OF GILLIAN L. WADE**

the class. Plaintiffs selected KCC and extensively met and conferred with J&J about KCC's notice plan before submitting it to the Court for approval.

12. Notice to the Litigation Class was disseminated on February 1, 2019. I have been informed by KCC that there were no requests for exclusion.

13. At the class certification stage, Dr. Sharp submitted a declaration that described how he could craft a class-wide damages model in this case. His declaration also included a preliminary damages estimate, based on the data available to him at the time. J&J deposed Dr. Sharp about his declaration and submitted a rebuttal report from their expert. Following certification of the Litigation Class, Dr. Sharp obtained additional data and produced a report under Rule 26(a)(2)(B). His report containing a proposed damages model for trial. J&J deposed Dr. Sharp a second time and designated a different expert to rebut Dr. Sharp's Rule 26(a)(2)(B) report.

14. Dr. Sharp offered opinions regarding: (1) the average retail prices for Infants' and Children's in California; (2) the price premium consumers paid for Infants' (versus Children's); and (3) aggregate damages on behalf of the Litigation Class. Dr. Sharp calculated aggregate damages by multiplying the price premium by the approximate number of Infants' sold. Based on this model, Dr. Sharp calculated, *inter alia*, the following: from October 3, 2014 to March 16, 2019, California purchasers of Infants' paid a weighted average price premium of $2.41 per ounce (or $3.89 per unit ) for Infants' Tylenol, amounting $21,687,457 in aggregate damages.

15. The parties attended private mediation with Judge McCoy at JAMS on April 4, 2019. A settlement was not reached during the mediation, but Judge McCoy continued facilitating settlement discussions over the next three months. On the eve of the close of expert discovery, and less than a week before the motion cutoff, the parties reached a class settlement, in principle. The parties spent three additional months negotiating the details of the Agreement.

16. After accounting for the *pro rata* increases in Class Claims, the remaining Claim Fund Balance will be distributed *cy pres*   to Nurse Family

3

**DECLARATION OF GILLIAN L. WADE**

Partnerships, a community health program that provides low-income, first-time expecting mothers and mothers with visits and support from specially trained nurses. Attached hereto as **Exhibit 4** is a true and correct printout of the "About Us" page for Nurse Family Partnerships, last viewed September 19, 2019.

17.    My firm, along with co-counsel, will file a motion requesting attorneys' fees of up to $2,083,950, which is 33% of the Claim Fund. We will also seek reimbursement of litigation costs of up to $385,000. As will be fully briefed in our forthcoming application for attorneys' fees and costs,  significant (but necessary and reasonable) costs were incurred, including the costs of litigation class notice (approx. $68,500), fees for testifying and consulting experts, and twelve depositions (many of which took place outside of California).

18.    Here, the requested modification should be granted because it is appropriate to include and award settlement proceeds to those consumers who were likely exposed to the same or similar representations and omissions, as the Infants' packaging was the same throughout the United States during the Class Period. *See* Exs. 2 and 3.

19.    Many states require similar elements or proof with respect to Plaintiffs' consumer fraud claims. Additionally, J&J seeks to buy and obtain peace with respect to all consumers who were exposed to the challenged representations, and the Agreement was negotiated with these principles in mind.

20.    The parties first engaged in settlement negotiations at a Court-ordered private mediation in April 2019 with Judge McCoy, and it took four months for the Parties to ultimately reach the Agreement. It is an understatement to say that the parties benefited from the assistance of Judge McCoy, who played a crucial role in conducting the negotiations.

21.    Along with co-counsel I am experienced in class actions involving false advertising and consumer fraud.

**DECLARATION OF GILLIAN L. WADE**

22.     In considering whether to enter into the Settlement, co-counsel and I, weighed the risks inherent in establishing all the elements of their claims at trial. We also considered the expense of a trial (just two and a half months away at the time of settlement) and likely duration of post-trial motions and appeals. We, along with Plaintiffs, agreed to settle this litigation on these terms based on our careful investigation and evaluation of the facts and law relating to Plaintiffs' allegations and J&J's defenses and considering the Parties' experts' anticipated testimony.

23.     We are also pragmatic in their awareness that to succeed at trial, Plaintiffs would need to overcome J&J's defenses on the merits and prove damages. J&J has consistently argued that only Infants' (and not Children's) may be given to infants in the proper dosage amount, thus the representations are not deceptive. They also argue that the phrase "specially formulated" does not appear in any Infants' marketing and is undefined. J&J further argued Infants' and Children's are not the same products because—for safety reasons—they contain different dosing devices, utilize different bottle flow restrictors to prevent accidental overdose. Moreover, J&J also presented expert testimony they claim demonstrates that some Class Members bought Infants' for the syringe, and are willing to pay more for it. Further, J&J criticized Plaintiffs' consumer survey as flawed and unreliable. Plaintiffs also faced substantial challenges in establishing the amount of class-wide damages. J&J argued Dr. Sharp's model is faulty and unreliable for various reasons such as failing to consider the syringe's value and the other "benefits" that J&J claimed Infant's provided to consumers (e.g., the syringe and bottle design).

24.     At the time of settlement, J&J was less than a week away from filing motions seeking summary judgment, exclusion of Plaintiffs' experts, and decertification. While we are confident in Plaintiffs' positions, we are also experienced and realistic enough to know the recovery and certainty achieved through settlement, as opposed to the uncertainty inherent in the trial and appellate process, weighs heavily in favor of settlement.

5
**DECLARATION OF GILLIAN L. WADE**

25.     Even if Plaintiffs prevailed at a class trial, any recovery could be delayed for years by appeal, which could have further delayed and jeopardized the Litigation Class' recovery. And if the Litigation Class stayed certified through trial, any adverse judgment would bind the Litigation Class. Under these circumstances, we appropriately determined that this settlement outweighs the gamble of continued litigation.

26.     Each member of the Class is treated in the same manner with respect to the claims they are releasing and their eligibility for an award. Even though Infants' may have been sold at different prices based on retail location, the best case scenario at trial was approximately $3.89 per bottle. This was the "blended" price premium Dr. Sharp calculated in his expert report.

27.     Protracted litigation carries inherent risks that would have endangered maintaining the Litigation Class' certification status. Though the Ninth Circuit declined to hear J&J's Rule 23(f) Petition, J&J advised us of its intent to file a motion to decertify. We are confident the decertification motion would have been denied, but recognize that any class certification order "may be altered or amended" at any time before final judgment.

28.     A comparison of the settlement award to the potential damages that might be recovered for the Litigation Class at trial, given the risks of the litigation, supports the reasonableness of the Settlement. Dr. Sharp preliminarily opined that Litigation Class Members paid a price premium of approximately $3.89 per unit. The refund available to Class Members under the Agreement—$2.15 per unit for up to seven units without proof of purchase—is an excellent recovery, which would have been achieved at trial only if the trier of fact found J&J liable and determined consumers overpaid for Infants' (a contention J&J vigorously denies).

**DECLARATION OF GILLIAN L. WADE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 24th day of September, 2019 at Los Angeles, California.

*/s/ Gillian L. Wade*
Gillian L. Wade, Declarant

**DECLARATION OF GILLIAN L. WADE**

# EXHIBIT 1

MATTHEW D. POWERS (SB 212682)
mpowers@omm.com
HANNAH Y. CHANOINE (*pro hac vice*)
hchanoine@omm.com
JOSEPH R. O'CONNOR (SB 274421)
joconnor@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONY ELKIES *et al.*; | Case No. 2:17-cv-7320-GW(JEMx) |
| Plaintiffs, | CLASS ACTION |
| vs. | STIPULATION OF SETTLEMENT |
| JOHNSON & JOHNSON SERVICES, INC., *et al.*, | |
| Defendants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.      DEFINITIONS ............................................................................................................. 1

II.     RECITALS .................................................................................................................. 6

III.    SETTLEMENT RELIEF ........................................................................................... 8

IV.     RELEASES ............................................................................................................... 13

V.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY ........................... 15

VI.     CLASS NOTICE AND COURT APPROVAL ................................................................ 16

VII.    CONDITIONS; TERMINATION ................................................................................. 22

VIII.   COSTS, FEES AND EXPENSES ................................................................................. 22

IX.     COVENANTS AND WARRANTIES ........................................................................... 24

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

This Stipulation of Settlement is made and entered into by plaintiffs Rony Elkies and Danielle Alfandary on behalf of themselves and all others similarly situated, and defendants Johnson & Johnson Consumer Inc. and Johnson & Johnson Services, Inc.

## I.    DEFINITIONS

A.    As used in this Stipulation, the following capitalized terms have the meanings specified below:

1.    "Action" means the case entitled *Elkies v. Johnson & Johnson Services, Inc.*, filed on October 5, 2017, in the U.S. District Court for the Central District of California and assigned Case No. 2:17-cv-7320-GW(JEMx).

2.    "Approved Claim(s)" means the claims approved by the Claim Administrator according to the claims criteria in Exhibit A.

3.    "Claim Administrator" means the independent company agreed upon by the Parties to provide the Class and Publication Notice and administer the claims process.  The Parties agree that the Kurtzman Carson Consultants LLC ("KCC") will be retained as the Claim Administrator.

4.    "Claims Cost Estimate" is the Claim Administrator's good faith best estimate of all the expenses to be incurred in the claims process.

5.    "Claim Form" means the form that is substantially in the form of Exhibit F hereto.

6.    "Claim Fund" means the fund for payment of Class Members' claims, attorneys' fees and expenses in an amount to be approved by the Court, a service award to the named plaintiffs in an amount to be approved by the Court, if any, certain notice and administration costs, and Claim Fund Expenses, if any.

7.    "Claim Fund Balance" means the balance, if any, at the end of the Claim Review Period, consisting of the Settlement Amount paid into the Claim Fund minus: (i) the total amount paid to Class Members who submit Approved Claims; (ii) the total amount, up to $516,000, paid to the Claim Administrator

toward Settlement Administration Expenses, including CAFA notice; (iii) Claim Fund Expenses;  (iv) attorneys' fees and expenses in an amount to be approved by the Court; and (v) service awards to the named plaintiffs, if any, in an amount to be approved by the Court.

8.    "Claim Fund Expenses" are expenses associated with maintaining the Claim Fund (including taxes that may be owed by the Claim Fund).

9.    "Claim Review Period" means the three-month period beginning no later than 30 days after the Preliminary Approval Order.

10.    "Claim Submission Period" means the period beginning on the date notice to the Class is first published, and continuing until 120 days after the date of the Preliminary Approval Order.

11.    "Class" and/or "Class Members" means all individuals in the United States who purchased Infants' Tylenol (the "Challenged Product") within the Class Period for personal or household use.  Specifically excluded from the Class are (a) Defendants, (b) the officers, directors, or employees of Defendants and their immediate family members, (c) any entity in which Defendants have a controlling interest, (d) any affiliate, legal representative, heir, or assign of Defendants, (e) all federal court judges who have presided over this Action and their immediate family members; (f) all persons who submit a valid request for exclusion from the Class; and (g) those who purchased the Challenged Product for the purpose of resale or for use in a business setting.

12.    "Class Counsel" means the attorneys of record for Plaintiffs in this Action.

13.    "Class Notice" means the "Notice of Class Action Settlement" substantially in the same form as Exhibit E attached hereto.

14.    "Class Notice Package" means the information as approved in form and content by Class Counsel and Defendants' Counsel and to be approved by the Court.  Class Notice Packages will include (a) the Class Notice, and (b) the

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

Claim Form.  The Class Notice Package will be available in English and in Spanish.

15.    "Class Period" is from October 3, 2014 to the date notice to the Class is first published.

16.    "Court" means the U.S. District Court for the Central District of California.

17.    "Defendants" means Johnson & Johnson Consumer Inc., also referred to herein as "JJCI," and Johnson & Johnson Services, Inc., also referred to herein as "JJSI."

18.    "Defendants' Counsel" means the law firm of O'Melveny & Myers LLP.

19.    "Distribution Plan" means a written final accounting and plan of distribution prepared by the Claim Administrator, identifying (a) each claimant whose claim was approved, including the dollar amount of the payment awarded to each such claimant, and the dollar amount of any pro rata reduction or increase required by ¶ III.B.2(e); (b) each claimant whose claim was rejected; (c) the dollar amount of the Claim Fund Balance to be disbursed to the recipient(s) selected by the Court as provided in ¶ III.B.2(f); and (d) a final accounting of all administration fees and expenses incurred by the Claim Administrator.

20.    "Effective Date" means the date described in ¶ VII.A.

21.    "Final Approval Hearing" means the hearing to be held by the Court to consider and determine whether the proposed settlement of the Action as contained in this Stipulation should be approved as fair, reasonable, and adequate, and whether the Final Settlement Order and Judgment approving the Settlement contained in this Stipulation should be entered.

22.    "Final Settlement Order and Judgment" means an order and judgment entered by the Court:

(a)    Giving final approval to the terms of this Stipulation as fair, adequate, and reasonable;

(b)     Providing for the orderly performance and enforcement of the terms and conditions of the Stipulation;

(c)     Dismissing the Action with prejudice;

(d)     Discharging the Released Parties of and from all further liability for the Released Claims to the Releasing Parties; and

(e)     Permanently barring and enjoining the Releasing Parties from instituting, filing, commencing, prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them, or in any other capacity of any kind whatsoever, any action in the California Superior Courts, any other state court, any federal court, before any regulatory authority, or in any other tribunal, forum, or proceeding of any kind, against the Released Parties that asserts any Released Claims that would be released and discharged upon final approval of the Settlement as provided in ¶¶ IV.A and B of this Stipulation.

(f)     The actual form of the Final Settlement Order and Judgment entered by the Court may include additional provisions as the Court may direct that are not inconsistent with this Stipulation, and will be substantially in the form attached hereto as Exhibit G.

23.     "Notice Plan" or "Notice Program" means the plan for dissemination of the Publication Notice and Class Notice Package as described in ¶ VI.

24.     "Fund Institution" means a third-party institution which the Parties will approve and to which JJCI shall pay the Settlement Amount in trust to a fund to be administered by the Claim Administrator as described herein.

25.     "Parties" means the Plaintiffs and the Defendants.

26.     "Plaintiff" or "Plaintiffs" means Rony Elkies and Danielle Alfandary.

27.     "Preliminary Approval Order" means the "Order re:

Preliminary Approval of Class Action Settlement," substantially in the form of Exhibit B.

28. "Publication Notice" means information as approved in form and content by Class Counsel and Defendant's Counsel and to be approved by the Court, substantially in the same form as Exhibit C attached hereto. The Publication Notice will be translated into Spanish for dissemination pursuant to the Notice Plan.

29. "Rejected Claims" means all claims rejected according to the claims criteria in Exhibit A.

30. "Released Claims" means those claims released pursuant to ¶¶ IV.A and B of this Stipulation.

31. "Released Parties" means Defendants and each of its parent, affiliated and subsidiary corporations and all of their agents, employees, partners, predecessors, successors, assigns, insurers, attorneys, officers and directors.

32. "Releasing Parties" means the Plaintiffs, individually and as representatives of all those similarly situated, and the Class Members who do not exclude themselves pursuant to ¶VI.D.

33. "Settlement Amount" means the amount of $6.315 million.

34. "Settlement Administration Expenses" means the costs and expenses associated with notifying the Class of this proposed settlement and administration of the claim process.

35. "Settlement Website" means the website established by the Claim Administrator that will contain documents relevant to the settlement, including the Class Notice Package in English and Spanish. Claim Forms may be submitted by Class Members via the Settlement Website.

36. "Stipulation of Settlement" and/or "Stipulation" means this Stipulation of Settlement, including its attached exhibits (which are incorporated herein by reference), duly executed by Plaintiffs, Class Counsel, Defendants and Defendants' Counsel.

B.     Capitalized terms used in this Stipulation, but not defined above, shall have the meaning ascribed to them in this Stipulation and the exhibits attached hereto.

## II.     RECITALS

A.     On October 5, 2017, Plaintiffs Rony Elkies and Danielle Alfandary filed a complaint against Defendants in the U.S. District Court for the Central District of California.  The complaint alleged (1) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*.; and California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*.; (2) negligent and intentional misrepresentation; and (3) breach of the implied warranties of merchantability and fitness for a particular purpose with regard to Infants' Tylenol.  The complaint sought certification of a nationwide class of "All persons who purchased Infants' Tylenol for personal use in the United States since October 5, 2014."  The complaint also sought certification of a California sub-class of "All persons who purchased Infants' Tylenol for personal use in California since October 5, 2014."  Class Counsel confirm that before commencing the Action, they conducted an examination and evaluation of the relevant law and facts to assess the merits of the claims and to determine how to best serve the interests of the members of the proposed classes.

B.     On November 21, 2017, Plaintiffs filed a First Amended Complaint alleging only violations of (1) the UCL, (2) FAL, and (3) CLRA.

C.     The First Amended Complaint alleged that Defendants engaged in a false and misleading advertising campaign related to Infants' Tylenol.  Plaintiffs alleged that because the label of Infants' Tylenol includes the name "Infants'" and an image of a mother holding her baby, the Challenged Product communicates to consumers that the product is specially formulated for infants, when another product manufactured by JJCI—Children's Tylenol—contains the same medicine

with the same concentration of the active ingredient, acetaminophen.  The First

Amended Complaint sought certification of a nationwide class of "All persons who

purchased Infants' Tylenol for personal use in the United States since October 5,

2014."  The First Amended Complaint also sought certification of a California sub-

class of "All persons who purchased Infants' Tylenol for personal use in California

since October 5, 2014."  The First Amended Complaint sought monetary damages,

restitution, and injunctive relief.

D.      After the Parties engaged in extensive discovery over the course of

more than a year into the marketing and sale of Infants' Tylenol throughout the

United States, on October 19, 2018, the Court granted Plaintiffs' Motion for Class

Certification, and certified a class of all persons who purchased Infants' Tylenol for

personal use in California since October 3, 2014.  On January 15, 2019, the Court

slightly revised the class definition to "All persons who purchased, in California,

Infants' Tylenol for personal use since October 3, 2014."

E.      On April 4, 2019, Class Counsel, Defendants, and Defendants'

Counsel participated in a settlement mediation with the Honorable Charles W.

"Tim" McCoy (Ret.).  A settlement was not reached during the mediation, but the

parties continued to discuss the possibility of settlement, facilitated by Judge

McCoy.  Based upon Plaintiffs' investigation, the discovery exchanged during the

litigation, and evaluation of the facts and law relating to the matters alleged in the

pleadings, Plaintiffs and Class Counsel agreed to settle the Action pursuant to the

provisions of this Stipulation after considering, among other things:  (1) the

substantial benefits available to the Class under the terms of this Stipulation; (2) the

attendant risks and uncertainty of litigation, especially in complex actions such as

this, as well as the difficulties and delays inherent in such litigation; and (3) the

desirability of consummating this Stipulation promptly to provide effective relief to

Plaintiffs and the Class.

F.      Defendants have denied and continue to deny each and all of the

claims and contentions alleged by Plaintiffs. Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action and state that their advertising and marketing of the Challenged Product are not false or misleading, and that the safety benefits of the dosing device that accompanies Infants' Tylenol—a device that is more expensive to manufacture and is materially safer for children under the age of 2 and other children who cannot safely drink from a cup— renders Infants' a different product from Children's Tylenol.

G.     Nonetheless, Defendants have concluded that further defense of the Action would be protracted and expensive and have also have taken into account the uncertainty and risks inherent in any litigation. Defendants, therefore, have determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in the Stipulation.

**III.    SETTLEMENT RELIEF**

In consideration of the covenants set forth herein, the Parties agree as follows:

A.     <u>Injunctive Relief</u>

1.     By the later of (i) 180 days following the Effective Date or (ii) December 31, 2019 ("the Injunctive Relief Effective Date"), whichever is later, JJCI agrees that, for a period of 2 years, it will:

(a) use reasonably diligent efforts under the circumstances to modify the Challenged Product's current packaging so that the child depicted shall be at least two years of age to reflect the age of the child for which dosing instructions are provided (excluding packaging of Infants' Tylenol seen on retailer websites and/or other channels outside of JJCI's control); provided however, that if the FDA approves placing dosing instructions for children two years and younger on over-the-

counter pediatric acetaminophen products, JJCI may use an image on the packaging of Infants' Tylenol to reflect the age of the child for whom dosing instructions are provided on the label of Infants' Tylenol;

(b) add text on the appropriate JJCI controlled websites to the effect that the liquid medicine within the bottles of both Infants' Tylenol and Children's Tylenol contains the same concentration of liquid acetaminophen;

(c) commit to educating and informing consumers, in response to inquiries and complaints to JJCI's Consumer Care Center (CCC) relating to comparisons of Infant's Tylenol and Children's Tylenol, that the liquid medicine within the bottles of both Infants' Tylenol and Children's Tylenol contains the same concentration of liquid acetaminophen; and

(d) continue to include language on dosing charts that JJCI provides to healthcare providers to the effect that the liquid medicine within the bottles of both Infants' Tylenol and Children's Tylenol contains the same concentration of liquid acetaminophen.

2.     Sales of Infants' Tylenol manufactured prior to the Injunctive Relief Effective Date, or during the time JJCI is using reasonably diligent efforts under the circumstances to modify its current packaging as described in ¶ III.A.(1)(a) above, shall not constitute a violation of this Stipulation.

B.     Monetary Relief

JJCI primarily sells Infants' Tylenol to retailers, not directly to consumers, and thus has no way to identify all individual Class Members.  Additionally, an individual Class Member's recovery may be too small to make traditional methods of proof economically feasible.  To assure that Class Members have access to the proceeds of this settlement, a Claim Fund will be established and administered as

follows:

1.      JJCI shall pay the Settlement Amount to the Fund Institution to establish the Claim Fund for payment of Class Member claims for alleged misrepresentations, for attorneys' fees and costs in an amount to be approved by the Court, for a service award to the named plaintiffs in an amount to be approved by the court, if any, and for the payment of certain notice and administration costs and expenses (including CAFA notice), as follows:

(a)      Not more than 30 days after the Court's order granting Preliminary Approval, JJCI shall pay $516,000 to the Fund Institution to cover the Settlement Administration Expenses.

(b)      Within 30 days after the Effective Date, JJCI shall pay the remaining  $5,799,000 in trust to the Fund Institution.

2.      The Claim Fund shall be applied as follows in the following order:

(a)      To reimburse or pay up to, but not to exceed, $516,000 of the total costs reasonably and actually incurred by the Claim Administrator in connection with providing notice to and administering claims submitted by the Class and to pay for Claim Fund Expenses;

(b)      To the payment of attorneys' fees in the amount approved by the Court;

(c)      To the payment of costs and expenses in the amount approved by the Court;

(d)      To the payment of the class representative service awards in an amount as approved by the Court; and

(e)      To distribute to Class Members who submit Approved Claims to the Claim Administrator as follows:

1.      With Proof of Purchase:

1    Class Members who have a proof of  purchase for all of their Infants'

2    Tylenol purchases during the Class Period will be entitled to a refund of $2.15 for

3    every 1 fl oz. bottle of Infants' Tylenol and 2 fl oz. bottle of Infants' Tylenol for

4    which they have a valid proof of purchase, for each and every bottle without

5    limitation.  A valid proof of purchase means a receipt or other documentation,

6    produced by a third-party commercial source, that reasonably establishes the fact

7    and date of purchase of Infants' Tylenol during the Class Period in the United

8    States.  Class Members will be restricted to 1 claim per household.  For purposes of

9    this Settlement and calculating cash refunds, a 2-pack (*e.g.* "club" size) of Infants'

10   Tylenol is the same as 2 bottles.

11                              2.    Without Proof of Purchase:

12                 Class Members who do not have a proof of purchase for all of their

13   Infants' Tylenol purchase(s) during the Class Period will be entitled to a refund of

14   $2.15 for every 1 fl oz and 2 fl oz bottle of Infants' Tylenol for a maximum of 7

15   units, i.e., a total of up to $15.05 per household.  For purposes of this Settlement

16   and calculating cash refunds, a 2-pack (*e.g.* "club" size) of Infants' Tylenol is the

17   same as 2 bottles.  Class Members will be restricted to 1 claim per household.  For

18   the sake of clarity, Class Members may not receive reimbursement for any bottle

19   over 7 bottles unless the Class Member has a proof of purchase for every bottle,

20   including the bottles over the 7 bottle cap.

21                 (f)    If the total amount to be paid for eligible claims pursuant

22   to ¶¶ III.B(2)(e) above exceeds the Claim Fund Balance after accounting for and

23   deducting the items described in ¶¶ III.B(2)(a) through (d) above, then each Class

24   Member's award shall be proportionately reduced on a pro rata basis.

25                 (g)    If the Claim Fund Balance is greater than the total amount

26   to be paid for eligible claims pursuant to ¶¶ III.B(2)(a) above, after accounting for

27   and deducting the items described in ¶¶ III.B(2)(a) through (d) above, then each

28   Class Member's award shall be proportionately increased on a pro rata basis up to

11

$6.99 for a 1 oz. bottle and $9.99 for a 2 oz. bottle (such amount being based on the MSRP during the majority of the class period) in the following sequence:

(1)    first, all claims with proofs of purchase will be reimbursed up to $6.99 for a 1 oz. bottle and $9.99 for a 2 oz. bottle;

(2)    if there remains money in the Claim Fund Balance after the initial pro rata increase described in ¶ III.B.2.(g)(1) has been accounted for, the remaining claims for bottles without proofs of purchase will be increased up to $6.99 for a 1 oz. bottle and $9.99 for a 2 oz. bottle.

(h)    If after the pro rata increases described in ¶¶ III.B.2.(g)(1)&(2) above, the Claim Fund Balance is greater than the total amount to be paid for eligible claims, then the remainder of the Claim Fund Balance shall be donated to Nurse Family Partnerships.

(i)    If, after all eligible claims are paid, checks sent to eligible claimants remain unclaimed or otherwise not redeemed after 180 days from the date of the check, then the total amount of those unclaimed checks shall be donated to Nurse Family Partnerships.

3.    Class Members shall have the opportunity to submit a claim to the Claim Administrator during the Claim Submission Period.  Class Members must fill out a Claim Form substantially in the form of Exhibit F and submit it as described in Exhibits C and F attached hereto.  Class Members will submit the Claim Form under penalty of perjury and must specify the approximate purchase date(s), and the number of the Challenged Products purchased.

4.    The claim process will be administered by a Claim Administrator, according to the criteria set forth in Exhibit A, and neither Class Counsel nor Defendants shall participate in resolution of such claims.

5.    All expenses of the Claim Administrator shall be paid as provided in ¶ III.B.2.(a).

6.    The Claim Administrator shall approve or reject all claims

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

according to the claims criteria in Exhibit A.  The determination of claims shall occur during the Claim Review Period.  The decision of the Claim Administrator shall be final and binding on Defendants and all Class Members submitting Claims, and neither Defendants nor such Class Members shall have the right to challenge or appeal the Claim Administrator's decision.

7.      Within 30 days after conclusion of the Claim Review Period, the Claim Administrator shall provide to JJCI and Class Counsel a written final accounting and Distribution Plan identifying (a) each claimant whose claim was approved, including the dollar amount of the payment awarded to each such claimant, and the dollar amount of any pro rata reduction or increase required by ¶¶ III.B.2(g); (b) each claimant whose claim was rejected; and (c) a final accounting of all administration fees and expenses incurred by the Claim Administrator.  No sooner than 20 days, but not later than 45 days after delivering the Distribution Plan, the Claim Administrator shall disburse the remaining amounts in the Claim Fund according to the Distribution Plan and mail and/or email letters to all claimants with Rejected Claims explaining the rejection.  In no event shall a Class Member's claim be paid until the conclusion of the Claim Review Period.

8.      If any distribution payments delivered to Class Members are returned as non-deliverable, or are not cashed within 180 days, or are otherwise not payable, any such funds shall be disbursed as provided in ¶ III.B.2(i).

## IV.   RELEASES

A.      As of the Effective Date, in consideration of the settlement obligations set forth herein, any and all claims, demands, rights, causes of action, suits, petitions, complaints, damages of any kind, liabilities, debts, punitive or statutory damages, penalties, losses and issues of any kind or nature whatsoever, asserted or unasserted, known or unknown (including, but not limited to, any and all claims relating to or alleging deceptive or unfair business practices, false or misleading

advertising, intentional or negligent misrepresentation, negligence, concealment, omission, unfair competition, promise without intent to perform, unsuitability, unjust enrichment, and any and all claims or causes of action arising under or based upon any statute, act, ordinance, or regulation governing or applying to business practices generally, including, but not limited to, any and all claims relating to or alleging violation of Cal. Bus. & Prof. Code § 17200 *et seq.*; Cal. Bus. & Prof. Code § 17500 *et seq.*; and Cal. Civ. Code § 1750 *et seq.*, arising out of or related to the Action, including the alleged false advertising at issue in the Action, that were asserted or reasonably could have been asserted in the Action by or on behalf of all Releasing Parties, whether individual, class, representative, legal, equitable, administrative, direct or indirect, or any other type or in any other capacity, against any Released Party ("Released Claims") shall be finally and irrevocably compromised, settled, released, and discharged with prejudice.

B.     Each of the Releasing Parties hereby waives any and all rights and benefits arising out of the facts alleged in the Action by virtue of the provisions of Civil Code § 1542, or any other provision in the law of the United States, or any state or territory of the United States, or principle of common law or equity that is similar, comparable or equivalent to Civil Code § 1542, with respect to this release. The Releasing Parties are aware that Civil Code § 1542 provides as follows:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.*

The Releasing Parties expressly acknowledge that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but the Releasing Parties, upon the Effective Date, shall be deemed to have, and by operation of law shall have, fully, finally and forever settled, released, and discharged any and all Released Claims,

known or unknown, suspected or unsuspected, whether or not concealed or hidden, that now exist or heretofore have existed upon any theory of law or equity, including, but not limited to, Released Claims based on conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties agree that the Released Claims constitute a specific and not a general release.

C.      The Releasing Parties shall be deemed to have agreed that the release set forth in ¶¶ IV.A and B (the "Release") will be and may be raised as a complete defense to and will preclude any action or proceeding based on the Released Claims.  The Releasing Parties agree that any members of the current Class are barred from bringing a future claim against JJCI on the same theory alleged in the Complaint based on any purchase of Infants' Tylenol after the Class Period.

D.      As of the Effective Date, by operation of entry of judgment, the Released Parties shall be deemed to have fully released and forever discharged Plaintiffs, all other Class Members and Class Counsel from any and all claims of abuse of process, malicious prosecution, or any other claims arising out of the initiation, prosecution or resolution of the Action, including, but not limited to, claims for attorneys' fees, costs of suit or sanctions of any kind, or any claims arising out of the allocation or distribution of any of the consideration distributed pursuant to this Stipulation of Settlement.

## V.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

Solely for the purposes of the settlement of this Action, the Parties agree to the certification of a Class of all persons who purchased, in the United States, Infants' Tylenol for personal use since October 3, 2014 to the date notice to the Class is published.  Plaintiffs shall make this request for certification to the U.S. District Court for the Central District of California, currently assigned to the Honorable George H. Wu; and Class Counsel shall request the Court to enter an

order, which, among other things, certifies the Class for settlement purposes, as set forth in this paragraph.  Defendants contend that certification of the alleged class (other than on a settlement basis) would not be possible absent this settlement because individual issues would predominate.

In the event this Stipulation of Settlement and the settlement proposed herein is not finally approved, or is terminated, canceled, or fails to become effective for any reason whatsoever, this class certification, to which the parties have stipulated solely for the purpose of the settlement of the Action, shall be null and void and the Parties will revert to their respective positions immediately prior to the execution of this Stipulation of Settlement.  Under no circumstances may this Stipulation of Settlement be used as an admission or as evidence concerning the appropriateness of class certification in these or any other actions against Defendants.

## VI.   CLASS NOTICE AND COURT APPROVAL

### A.   Notice Order; Preliminary Approval

Within 30 days after the execution of the Stipulation of Settlement, the Parties shall apply to the Court for a Preliminary Approval Order substantially in the form and content of Exhibit B, conditionally certifying the Class for settlement purposes as defined in ¶ V, for preliminary approval of the settlement, for scheduling a final approval hearing, and for approving the contents and method of dissemination of the proposed Publication Notice and Class Notice Package.

### B.   The Notice Program

The notice program shall consist of notice by publication (the Publication Notice, attached hereto as Exhibit C) which generally describes the settlement and directs all interested parties to a detailed Class Notice available on the Settlement Website and, at the request of interested parties, by U.S. Mail.  Class Counsel shall also place a link to the Settlement Website on the websites of Milstein Jackson Fairchild & Wade, LLP and Heideman Nudelman & Kalik, P.C. for a period starting from the date the Publication Notice is published, and continuing no longer

than the end of the Claim Submission Period.  The cost associated with the
Publication Notice and Class Notice Package shall be paid from the Claim Fund as
described in ¶III.B.1.(a), except those costs associated with posting and maintaining
notice on Class Counsel's Internet websites.

### 1.   Publication Notice

Commencing at least 90 days before the Final Approval Hearing or some
other date as set by the Court, the Claim Administrator shall cause to be published
the Publication Notice substantially in the form and content of Exhibit C pursuant
to the Notice Plan described in Exhibit D.  The Notice Plan shall include
dissemination of the Publication Notice translated into Spanish.

### 2.   Class Notice Package

The Class Notice Package shall be available in electronic format on the
Settlement Website and mailed as a hard copy or emailed by the Claim
Administrator upon request.  The Parties are not currently aware of any other
litigation involving the same claims as the Action.  However, should the parties
become aware, within the Claim Submission Period, of pending litigation that
concerns false advertising claims related to the Challenged Products, they will
notify JJCI and JJCI shall direct the Claim Administrator to mail or email the Class
Notice Package to counsel for the plaintiff(s) in such pending litigation.

Each Class Notice Package shall contain a Class Notice substantially in the
form of Exhibit E and the Claim Form substantially in the form of Exhibit F.

### 3.   Notice of Deadlines

Both the Publication Notice and the Class Notice shall inform Class
Members of the dates by which they must file any objections, requests for
exclusions, and submit a Claim Form.  Class Members must file any objections,
notices of intent to appear at the Final Approval Hearing, or to submit exclusion
requests no later than 120 days after the date of the Preliminary Approval Order and
28 days prior to the Final Approval Hearing.  Class Members will have the

1 opportunity to submit a Claim Form during the period beginning on the date notice

2 to the Class is first published, and continuing until 120 days after the date of the

3 Preliminary Approval Order and 28 days prior to the Final Approval Hearing.

4     C.     Final Approval Hearing

5         Not later than twenty-one (21) days prior to the deadline to object to the

6 Settlement (described in ¶ VI(E)), Class Counsel shall move for entry of an order of

7 a Final Settlement Order and Judgment granting final approval of this Settlement

8 and holding this Agreement to be final, fair, reasonable and adequate, and ordering

9 that the settlement relief be provided as set forth in ¶ III, ordering the releases as set

10 forth in ¶ IV, and entering judgment in this case. The Parties shall request that after

11 notice is given, the Court hold a Final Approval Hearing for the purpose of

12 determining whether final approval of the settlement of the Action as set forth

13 herein is fair, adequate, and reasonable to the Class Members, and enter a Final

14 Settlement Order and Judgment dismissing the Action with prejudice substantially

15 in the form and content of Exhibit G.

16     D.     Requests for Exclusion

17         1.     Members of the Class shall have the right to elect to exclude

18 themselves, or "opt out," of the monetary portion of this Agreement, relinquishing

19 their rights to cash compensation under this Stipulation and preserving their claims

20 for damages that accrued during the Class Period, pursuant to this paragraph :

21         (a)     A member of the Class wishing to opt out of this

22 Stipulation must send to the Claim Administrator by U.S. Mail a personally signed

23 letter including his or her name and address, and providing a clear statement

24 communicating that he or she elects to be excluded from the Class. The request for

25 exclusion must be personally signed by the member of the Class wishing to opt out.

26 A member of the Class cannot opt out on behalf of anyone other than himself or

27 herself.

28         (b)     Any request for exclusion must be postmarked on or

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

before the opt-out deadline specified in the Preliminary Approval Order, which shall be no later than twenty-eight (28) calendar days before the Final Approval Hearing. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.

    2. Any member of the Class who does not file a timely request for exclusion as provided in the preceding ¶ VI(D)(1) shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release in this Action.

    3. If the number of putative Class Members who timely request exclusion from the class in accordance with the provisions of the Preliminary Approval Order exceeds 100, Defendants shall have the right, but not the obligation, to terminate this Stipulation of Settlement or to seek appropriate modifications to this Stipulation of Settlement that adequately protect the Parties.

    4. Copies of all Requests for Exclusion received by the Claim Administrator, together with copies of all written revocations of Requests for Exclusion received, shall be delivered to the Parties' counsel no later than 8 days after the Class Members' deadline to submit such exclusion requests, or at such other time as the Parties may mutually agree in writing.

    E. <u>Objections to Settlement</u>

    1. Any Class Member wishing to object to or oppose the approval of this Settlement, the motion for the service award to Plaintiffs and/or the Fee and Cost Applications shall file with the Court a written objection no later than twenty-eight (28) days before the date of the Final Approval Hearing. The objecting Class Member must send a copy of the written objection and supporting documents to the counsel listed in ¶X(M) of this Stipulation. The objection must contain:

      (a) The name of this Action;

      (b) The objecting Class Member's full name, address, email

address (if available) and signature (a Class Member's attorney's signature is not sufficient);

(c)     A written statement containing all grounds for the objection, accompanied by any legal support known to the objecting Class Member or his or her counsel and any supporting papers, evidence and/or documents;

(d)     A statement of the objecting Class Member's membership in the Class, including all information required by the Claim Form;

(e)     The identity of all counsel who represent the objecting Class Member, including any former or current counsel who may be entitled to compensation for any reason relating to the objection;

(f)     A statement confirming whether the objecting Class Member or any counsel representing the objecting Class Member intends to personally appear and/or testify at the Final Approval Hearing;

(g)     A detailed list of any other objections submitted by the objecting Class Member and/or his/her counsel, to any class actions submitted in any court in any jurisdiction within the United States in the previous five (5) years. If the Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the written objection to this Settlement; and,

(h)     A list of persons who may be called to testify at the Final Approval Hearing in support of the objection.

Any Class Member who fails to timely file and serve a written Objection containing all of the information listed in (a) through (h) of the previous paragraph shall not be permitted to object to the Settlement and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by any means, including but not limited to an appeal.

2.     If any objection is received by the Settlement Administrator, but

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

not filed with the Court, the Settlement Administrator shall forward the Objection and all supporting documentation to Class Counsel and Counsel for Defendants. The failure of the Class Member to file the written objection with the Court shall be grounds for striking and/or overruling the objection, even if the objection is submitted to the Settlement Administrator.

          3.     A Class Member who objects to the settlement may also submit a Claim Form on or before the deadline to do so, which shall be processed in the same way as all other Claim Forms. A Class Member shall not be entitled to an extension to the deadline to submit a Claim Form merely because the Class Member has also submitted an objection.

          4.     Class Counsel will file with the Court his briefs in support of Final Approval, the requested service awards for Plaintiffs and an application for attorneys' fees and costs no later than twenty-one (21) days before the deadline for Class Members to object to the Settlement.

          5.     Class Counsel and/or Defendants have the right, but not the obligation, to respond to any objection no later than seven (7) days prior to the Final Approval Hearing. The party so responding shall file a copy of the response with the Court, and shall serve a copy, by regular mail, hand or overnight delivery, to the objecting member of the Class or to the individually-hired attorney for the objecting member of the Settlement Class; to Class Counsel; and to Defendants' Counsel.

        F.     <u>Parties' Duty to Defend</u>

       From the date of execution of this Stipulation, the Parties, via Class Counsel and Defendants' Counsel, shall take all reasonable steps to defend the terms of this Stipulation as fair, reasonable, and adequate, shall defend the proposed Class as meeting the requirements of Federal Rule of Civil Procedure 23 as applied to proposed settlement class, and shall defend the notice program set forth in the Stipulation as meeting the requirements of Federal Rule of Civil Procedure 23 and

21

giving the best and most reasonable notice practicable under the circumstances.

## VII.   CONDITIONS; TERMINATION

A.    This Settlement shall become final on the first date after which all of the following events and conditions have been met or have occurred (the "Effective Date"):

1.    The Court has entered a Final Settlement Order and Judgment in the Action; and

2.    One of the following has occurred:

(a)    The time to appeal from such order has expired and no appeals have been timely filed;

(b)    If any such appeal has been filed, it has finally been resolved and the appeal has resulted in an affirmation of the Final Settlement Order and Judgment; or

(c)    The Court, following the resolution of all appeals, has entered a further order or orders approving the Settlement of the Action on the terms set forth in this Stipulation of Settlement.

B.    If the Settlement is not made final (per the provisions of ¶ VII.A), this entire Stipulation shall become null and void as set forth in ¶ V of this Stipulation, except that the Parties shall have the option to agree in writing to waive the event or condition and proceed with this settlement, in which event the Stipulation of Settlement shall be deemed to have become final on the date of such written agreement.

## VIII.  COSTS, FEES AND EXPENSES

A.    <u>Attorneys' Fees and Expenses</u>

1.    The Parties agree that an award of attorneys' fees and expenses to Class Counsel, in an amount to be approved by the Court and which will be drawn from the Settlement Fund, will be in addition to the consideration to Plaintiffs, the Class Members and the general public, and shall in no way reduce the

settlement consideration.

2.    No later than twenty-one (21) days prior to the deadline for Class Members to make an objection to the Settlement, Class Counsel shall make, an application for an award of attorneys' fees and expenses.  Class Counsel acknowledges that the amount of attorneys' fees and expenses remains in the discretion of the Court.

3.    In the application described in ¶ VIII(A)(2), Class Counsel will seek an award of attorneys' fees in an amount  not to exceed $2,083,950.

4.    In the application described in ¶ VIII(A)(2), Class Counsel will seek reimbursement of litigation costs and expenses, estimated to be approximately $385,000 This amount includes the cost of the class notice disseminated at the time the California class was certified, as described in § II(D) above, but does not include the Settlement Administration Expenses.  The Claims Administrator shall pay from the Claim Fund the award of Class Counsels' fees and expenses within 10 days after the Effective Date.

5.    In the event the amount of the attorney's fees requested is decreased or denied by the Court, such denial or decrease in the requested fees shall have no effect on this Stipulation and shall not invalidate the settlement agreed to herein.

6.    Class Counsel, in their sole discretion, shall allocate and distribute the award of attorneys' fees and expenses among Class Counsel.  In the event that any Class Members object to any aspect of this Stipulation of Settlement, JJCI shall under no circumstances be obligated or required to pay attorneys' fees or costs claimed by or associated with such objectors (if any).

B.    Class Representative Awards

Defendants agree not to oppose an application for class representative service awards to be paid out of the Claim Fund to Plaintiffs in an amount not to exceed $4,000 for Plaintiff Alfandary and $4,000 for Plaintiff Elkies.  Such awards shall be

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

paid within 30 days after the Effective Date or within 30 days after the issuance of an order awarding such amount, whichever is later.  In the event that a Class Member appeals the award of attorneys' fees and costs, or the class representative service awards, Defendants shall not take a position contrary to this Stipulation.

        C.     Claim Administration Costs and Costs of Class Notice

The Settlement Administration Expenses shall be paid from the Claim Fund as described in ¶III.

## IX.   COVENANTS AND WARRANTIES

        A.     Authority to Enter Agreement

Plaintiffs and Defendants each covenant and warrant that they have the full power and authority to enter into this Stipulation of Settlement and to carry out its terms, and that they have not previously assigned, sold, or otherwise pledged or encumbered any right, title or interest in the claims released herein or their right, power and authority to enter into this Stipulation of Settlement.  Any person signing this Stipulation of Settlement on behalf of any other person or entity represents and warrants that he or she has full power and authority to do so and that said other person or entity is bound hereby.

        B.     Represented by Counsel

In entering into this Stipulation of Settlement, the Parties represent they have relied upon the advice of attorneys, who are the attorneys of their own choice, concerning the legal consequences of this Stipulation of Settlement; that the terms of this Stipulation of Settlement have been explained to them by their attorneys; and that the terms of this Stipulation of Settlement are fully understood and voluntarily accepted by the Parties.

        C.     No Other Actions

As of the date of executing this Stipulation, Plaintiffs and Class Counsel represent and warrant that they are not aware of any action or potential action other than the Action that (1) raises allegations similar to those asserted in the Action,

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

1    and (2) is pending or is expected to be filed in any forum by any person or entity

2    against Defendants.  Until the Effective Date, Plaintiffs and Class Counsel shall

3    have a continuing duty to notify Defendants if Plaintiffs or Class Counsel become

4    aware of any such action.

5    **X.     MISCELLANEOUS**

6         A.     Governing Law

7         The interpretation and construction of this Stipulation of Settlement shall be

8    governed by the laws of the State of California.

9         B.     Counterparts

10        This Stipulation of Settlement may be executed in counterparts.  All

11   counterparts so executed shall constitute one agreement binding on all of the Parties

12   hereto, notwithstanding that all Parties are not signatories to the original or the

13   same counterpart.

14        C.     No Drafting Party

15        Any statute or rule of construction that ambiguities are to be resolved against

16   the drafting party shall not be employed in the interpretation of this Stipulation of

17   Settlement, and the Parties agree that the drafting of this Stipulation has been a

18   mutual undertaking.

19        D.     Entire Agreement

20        All agreements, covenants, representations and warranties, express or

21   implied, written or oral, of the Parties hereto concerning the subject matter hereof

22   are contained in this Stipulation of Settlement and the exhibits hereto.  Any and all

23   prior or contemporaneous conversations, negotiations, drafts, terms sheets, possible

24   or alleged agreements, covenants, representations and warranties concerning the

25   subject matter of this Stipulation of Settlement are waived, merged herein and

26   superseded hereby.

27        E.     Retained Jurisdiction

28        The Court shall retain jurisdiction with respect to the implementation and

25

enforcement of the terms of this Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Stipulation.

F.   Cooperation

Each of the Parties hereto shall execute such additional pleadings and other documents and take such additional actions as are reasonably necessary to effectuate the purposes of this Stipulation of Settlement.

G.   Amendments in Writing

This Stipulation of Settlement may only be amended in writing signed by Class Counsel and Defendant's Counsel.

H.   Binding Effect; Successors and Assigns

This Stipulation of Settlement shall inure to the benefit of, and shall be binding upon, the Parties hereto as well as the legal successors and assigns of the Parties hereto and each of them.

I.   Construction

As used in this Stipulation of Settlement, the terms "herein" and "hereof" shall refer to this Stipulation in its entirety, including all exhibits and attachments, and not limited to any specific sections.  Whenever appropriate in this Stipulation of Settlement, the singular shall be deemed to refer to the plural, and the plural to the singular, and pronouns of any gender shall be deemed to include both genders.

J.   Waiver in Writing

No waiver of any right under this Stipulation of Settlement shall be valid unless in writing.

K.   Computation of Time

All time periods set forth herein shall be computed in business days, if seven days or fewer, and calendar days, if eight days or more, unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Stipulation or by order of the Court, the day of the act, event or default from which

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

the designated period of time begins to run shall not be included.  The last day of
the period so computed shall be included, unless it is a Saturday, a Sunday, or a
legal or court holiday, or, when the act to be done is the filing of a paper in Court, a
day in which weather or other conditions have made the office of the clerk of the
Court inaccessible, in which event the period shall run until the end of the next day
as not one of the aforementioned days.  As used in this subsection, "legal or court
holiday" includes New Year's Day, Martin Luther King Day, Presidents' Day,
Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day,
Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the
President or the Congress of the United States or by the State of California.

L.      No Admission of Liability

Each of the Parties understands and agrees that he, she or it has entered into
this Stipulation of Settlement for purpose of purchasing peace and preventing the
risks and costs of any further litigation or dispute.  This settlement involves
disputed claims; specifically, Defendants deny any wrongdoing, and the Parties
understand and agree that neither this Stipulation of Settlement, nor the fact of this
settlement, may be used as evidence or admission of any wrongdoing by
Defendants.

M.      Notice

Any notice to the Parties required by this Stipulation of Settlement shall be
given in writing by first-class U.S. Mail and e-mail to:

For Plaintiff:

Noel J. Nudelman
Tracy Reichman Kalik
Heideman Nudelman & Kalik, PC
1146 19th Street, NW, Fifth Floor
Washington, DC 20036
njnudelman@hnklaw.com
trkalik@hnklaw.com

27

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

1       For Defendants:

2            Matthew D. Powers
             O'Melveny & Myers LLP
3            Two Embarcadero Center, 28th Floor
             San Francisco, CA 94111
4            Telephone:  (415) 984-8700
             mpowers@omm.com
5

6            Joe O'Connor
             O'Melveny & Myers LLP
7            400 South Hope Street
             Los Angeles, California  90071-2899
8            Telephone: 1 (213) 430-8365
             joconnor@omm.com

9

10      IN WITNESS WHEREOF, the parties hereto have executed this Stipulation

11 of Settlement as of the dates set forth below.

12

13  DATED:  9/24/19           /s/

14                      DANIELLE ALFANDARY

15

16

17  DATED:  9/24/19           /s/

18                      RONY ELKIES

19

20

21  DATED:                 JOHNSON & JOHNSON CONSUMER INC.

22                   /s/

23                   BY:  _____

24                   TITLE:  _____

25

26

27

28

CLASS ACTION
STIPULATION OF SETTLEMENT
CASE NO. 2:17-CV-7320-GW(JEMX)

1    For Defendants:

2         Matthew D. Powers
          O'Melveny & Myers LLP
3         Two Embarcadero Center, 28th Floor
          San Francisco, CA 94111
4         Telephone:  (415) 984-8700
          mpowers@omm.com
5
          Joe O'Connor
6         O'Melveny & Myers LLP
          400 South Hope Street
7         Los Angeles, California  90071-2899
          Telephone: 1 (213) 430-8365
8         joconnor@omm.com

9

10        IN WITNESS WHEREOF, the parties hereto have executed this Stipulation

11   of Settlement as of the dates set forth below.

12

13   DATED:                    /s/
14                                DANIELLE ALFANDARY

15

16

17   DATED:                    /s/
18                                RONY ELKIES

19

20   DATED:                    JOHNSON & JOHNSON CONSUMER INC.

21
22                    /s/ *Michelle W Goodie*
23                    BY: _Michelle W Goodridge_
24                    TITLE: _President. Johnson + Johnson_
25                    _Consumer Self Care_

26

27

28

1

2

DATED:                                          JOHNSON & JOHNSON SERVICES, INC.

3                                                /s/

4                                                BY:  _NIMISH  AMIN_

5                                                TITLE: _DIRECTOR_

6

7

DATED: September 24, 2019              MILSTEIN JACKSON
                                                  FAIRCHILD & WADE, LLP
                                                  GILLIAN L. WADE

8

9                                                /s/
                                                  GILLIAN L. WADE

10
                                                  10250 Constellation Blvd., Ste. 1400
11                                                Los Angeles, CA 90067
                                                  Telephone: (310) 396-9600

12

13                                                HEIDEMAN NUDELMAN &
                                                  KALIK, P.C.
14            9/24/19                            NOEL J. NUDELMAN

15                                                /s/
                                                  NOEL J. NUDELMAN

16

17                                                1146 19th Street, NW 5th Floor
                                                  Washington, DC 20036
                                                  Telephone: (202)463-1818

18

19                                                Attorneys for Plaintiff

20

DATED:                                          O'MELVENY & MYERS LLP
                                                  MATTHEW D. POWERS

21                                                /s/
                                                  MATTHEW D. POWERS

22

23                                                Two Embarcadero Center, 28th Floor
                                                  San Francisco, CA 94111
24                                                Telephone: (415) 984-8700

25                                                Attorneys for Defendants

26

27

28

29                     CLASS ACTION
                       STIPULATION OF SETTLEMENT
                       CASE NO. 2:17-CV-7320-GW(JEMX)

DATED:                   JOHNSON & JOHNSON SERVICES, INC.

/s/ _____

BY: _____

TITLE: _____

DATED:                   MILSTEIN JACKSON
FAIRCHILD & WADE, LLP
GILLIAN L. WADE

/s/ _____
             GILLIAN L. WADE

10250 Constellation Blvd., Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 396-9600

HEIDEMAN NUDELMAN &
KALIK, P.C.
NOEL J. NUDELMAN

/s/ _____
             NOEL J. NUDELMAN

1146 19th Street, NW 5th Floor
Washington, DC 20036
Telephone: (202)463-1818

Attorneys for Plaintiff

DATED:                   O'MELVENY & MYERS LLP
MATTHEW D. POWERS

/s/ _____
             MATTHEW D. POWERS

Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700

Attorneys for Defendants

**LIST OF EXHIBITS**

A.   Claims Administration Protocols

B.   Order re:  Preliminary Approval of Class Action Settlement

C.   Publication Notice

D.   Notice Plan

E.   Notice of Class Action Settlement

F.   Claim Form

G.   Final Settlement Order and Judgment

# Exhibit A

# Claims Administration Protocols

**EXHIBIT A**

**CLAIM ADMINISTRATION PROTOCOLS**

These Claim Administration Protocols ("Protocols") are part of the Stipulation of Settlement ("Stipulation") between Plaintiffs and Johnson & Johnson Consumer Inc. ("JJCI") and Johnson & Johnson Services, Inc. ("JJSI") (collectively, "Defendants").  All provisions of the Stipulation are incorporated into these Protocols by reference, including without limitation all definitions.  All capitalized terms used here shall have the same meaning given them in the Stipulation.  These Protocols shall define the duties of the Claim Administrator retained to implement the claim process as described in Paragraph III.B of the Stipulation.

**A.1     Appointment of Claim Administrator**

The Parties have agreed that Kurtzman Carson Consultants LLC ("KCC") will serve as the Claim Administrator to implement the claim process described in Paragraph III.B of the Stipulation.  The Claim Administrator represents that it is experienced in fairly and independently administering class action settlement claims.  If the Claim Administrator fails to perform adequately all duties described in the Stipulation and these Protocols on behalf of Defendants, Class Counsel or the Class, then Defendants and Class Counsel by agreement may remove the Claim Administrator for good cause.  If there is any disagreement between Defendants and Class Counsel regarding the removal of the Claim Administrator, the Court shall resolve the dispute.

**A.2     Agreement by Claim Administrator**

By executing these Protocols, the Claim Administrator hereby consents to serve, and agrees to abide by the obligations of the Stipulation and these Protocols.

**A.3     Control of Claim Fund**

1

The Claim Fund described in Paragraphs III.B.1 and 2 of the Stipulation shall be maintained by an independent financial institution (the "Fund Institution"), selected by the Claim Administrator and approved by JJCI and Class Counsel.  Disbursement from the Claim Fund shall be pursuant to the directions provided in these Protocols and Paragraph III.B of the Stipulation, and shall occur only upon joint written instructions of JJCI and Class Counsel to the Claim Administrator.  The Claim Administrator shall have access to information from the Fund Institution about the balance in the Fund as necessary for the Claim Administrator to perform calculations in preparing the Distribution Plan.

**A.4    Conflicts of Interest**

The Claim Administrator hereby warrants that it knows of no reason why it cannot fairly and impartially administer claims.  The Claim Administrator shall not adjudicate the claim of any Class Member if the Claim Administrator, Defendants, and/or Class Counsel determines there is a conflict of interest.  If the Claim Administrator, Defendants and/or Class Counsel learns of a conflict of interest as to a claim, that party shall give written notice to the other parties, who shall resolve any such circumstances by further written agreement.  Any unresolved dispute over such conflict of interest shall be submitted to the Court for resolution.  The Claim Administrator shall indemnify and defend the Parties and their counsel against any liability arising from the Claim Administrator's breach of this provision.

**A.5    Timing**

The Claim Administrator shall begin to review the claims no later than 10 days after the Effective Date, and shall conclude the review process during the time provided in Paragraph I.A.9 of the Stipulation (the "Claim Review Period").  The deadline for Class members to submit their claim to the Claim Administrator (the "Claim Deadline") shall be 5 days after the date of the Final

Approval Hearing or such other date as may be set by order of the Court and/or agreement of the parties.  The Claim Deadline shall be specified in the Class Notice and Publication Notice.  In no event shall payments be made to Class Members until the end of the Claim Review Period and preparation of the Distribution Plan.

**A.6     Communications with claimants**

No communications with a claimant or others shall be initiated by the Claim Administrator unless necessary or appropriate to resolve the claims according to these Protocols or to randomly verify claims.  Where necessary or appropriate to resolve the claims, the Claim Administrator may communicate with the claimant or others relating to the claim, including the witnesses listed on the Claim Forms.  If the claimant has indicated to the Claim Administrator that he or she has counsel, the Claim Administrator shall only contact the claimant through his or her counsel unless the claimant or the claimant's designated counsel instructs otherwise.  In all communications, the Claim Administrator shall treat the claimant with courtesy, responsiveness and professionalism. The Claim Administrator also shall establish a toll free number which will have recorded information answering questions about the claims submission process and representatives available to answer questions.

**A.7     Maintenance and Preservation of Records**

The Claim Administrator shall keep a clear and careful record of all communications with claimants, all claims decisions, all expenses, and all tasks performed in administering the claims process.  The Claim Administrator shall preserve all such records until 365 days after the last check is mailed to a claimant, after which all records shall be conveyed to JJCI.

**A.8     Method of Submitting Claims**

3

Claims may be submitted on the Claim Forms by mail or electronically through internet-based Claim Forms.  The Claim Administrator shall establish and maintain a special internet site, easily accessible through commonly used internet service providers, for the submission of claims, including the submission of Spanish language Claim Forms.  The internet site may be the same site as the Settlement Website.  The site shall be maintained continuously until the Effective Date. The site address shall be identified in the Class Notice and the Publication Notice.  The Claim Administrator shall be solely responsible for receiving and processing requests for Claim Forms and for promptly delivering Claim Forms to the Class Members who request them.  The Claim Forms on the internet site and the hard copy Claim Forms shall be identical in content.

**A.9**    **Approval or Denial of Claims**

After the deadline for submitting claims has passed, the Claim Administrator shall gather all Claim Forms, whether submitted by internet website or by mail.  Before the end of the Claim Review Period, the Claim Administrator shall select the claims which will be paid and the amount of each such payment ("Approved Claims") and claims that will not be paid ("Rejected Claims"). The Claim Administrator shall determine whether claims are Approved Claims or Rejected Claims, subject to pro rata reduction or increase, by the following criteria:

**A.9.1   Duplicative Claims**

No claimant may submit more than one Claim Form, and two or more claimants may not submit Claim Forms for the same alleged product purchases.  In addition, only 1 Claim form may be submitted per household.  The Claim Administrator shall determine whether there is any duplication of claims, if necessary by contacting the claimant(s).  The Claim Administrator shall award settlement relief to only one claimant for the same alleged product purchases and designate as appropriate duplicative claims as Rejected Claims.

4

**A.9.2   Claims Process**

Claimants that purchased Infants' Tylenol during the Class Period may submit claims using the Claim Form. The claimant must provide information that allows the Claim Administrator to determine: (1) the identity and contact information for each claimant; (2) the number of products that the claimant purchased and the fluid ounces of each product—i.e., 1 fl. oz. or 2 fl. oz.; and (3) the approximate date the purchase(s) occurred. The Claim Administrator shall also verify that the Claim Form has been executed under penalty of perjury.

Once the Claim Administrator has verified that the claimant has complied with each of these requirements to the satisfaction of the Claim Administrator, the claim shall be designated as an Approved Claim without further inquiry aside from the duplicative determination process described above. However, the Claim Administrator in its discretion may examine and verify a random sample of Claims to prevent fraud and abuse. If a claimant has not complied with all of these requirements to the satisfaction of the Claim Administrator, the claim shall be designated as a Rejected Claim.

**A.9.3   Untimely or Incomplete Claims**

The Claim Administrator shall, in its discretion, decide whether to accept Claim Forms submitted after the Claims Deadline. In deciding whether to accept a late-submitted Claim Form, the Claim Administrator shall take into account the length of time the Claim Form was submitted after the Claims Deadline, including whether the late-submitted claim would delay the distribution of the Claim Fund to claimants and the reasons for the late submission of the Claim Form. In the event the Claim Administrator determines that a Claim Form is incomplete, but may be cured by the claimant, the Claim Administrator shall contact the claimant if reasonably practical to cure any deficiency with the Claim Form.

**A.10   Distribution Plan**

Within 30 days after conclusion of the Claim Review Period, the Claim Administrator shall
deliver the Distribution Plan as described in Paragraph III.B.7 of the Stipulation.

**A.11   Claim Administrator's Fees and Expenses**

As provided in Paragraph III of the Stipulation the actual cost of the Claim Administrator
shall be paid out of the Claim Fund.  The Claim Administrator shall take all reasonable efforts to
administer the claims efficiently and avoid unnecessary fees and expenses.   The Claim
Administrator shall only be reimbursed for fees and expenses supported by detailed and clear
timesheets and receipts for costs.  As soon as work commences, the Claim Administrator shall
provide a detailed written accounting of all fees and expenses on a monthly basis to JJCI and Class
Counsel, and shall respond promptly to inquiries by JJCI and Class Counsel concerning fees and
expenses.  In no event shall fees and expenses paid to the Claim Administrator exceed $516,000,
and in no event shall Defendants be responsible for additional fees and expenses.

**A.12   Access to Information from the Claim Administrator**

The Parties are entitled to observe and monitor the performance of the Claim Administrator
to assure compliance with the Stipulation of Settlement and these protocols.   The Claim
Administrator shall promptly respond to all inquiries and requests for information made by either
Defendants or Class Counsel.

[CLAIM ADMINISTRATOR]
[NAME OF CONTACT]

Dated: _____          _____

[ADDRESS INFO]

6

# Exhibit B

# Order re:  Preliminary Approval of Class Action Settlement



**EXHIBIT B**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONY ELKIES *et al.*;<br><br>Plaintiffs,<br><br>vs.<br><br>JOHNSON & JOHNSON SERVICES, INC., *et al.*,<br><br>Defendants. | Case No. 2:17-cv-7320-GW(JEMx)<br><br><u>CLASS ACTION</u><br><br>[PROPOSED] ORDER PRELIMINARILY ) APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER |

WHEREAS, Plaintiffs[1] in the action entitled *Elkies v. Johnson & Johnson Services, Inc.*, filed on October 5, 2017, in the U.S. District Court for the Central District of California and assigned Case No. 2:17-cv-7320-GW(JEMx) and Defendants have entered into a Stipulation of Settlement, filed September 19, 2019, after arms-length settlement discussions;

AND, WHEREAS, the Court has received and considered the Stipulation, including the accompanying exhibits;

AND, WHEREAS, the Parties have made an application for an order preliminarily approving the settlement of this Action, and for its dismissal with prejudice upon the terms and conditions set forth in the Stipulation;

AND, WHEREAS, the Court has reviewed the Parties' application for such order, and has found good cause for same.

NOW, THEREFORE, IT IS HEREBY ORDERED:

**A.    The Settlement Class Is Conditionally Certified**

1.    Pursuant to Federal Rule of Civil Procedure 23, and for settlement purposes only, the Court hereby certifies the following Class:

> All individuals who purchased, in the United States, Infants' Tylenol for personal or household use since October 3, 2014 until _____ (the date notice of this Settlement to the Class is first published). Specifically excluded from the Class are (a) Defendants, (b) the officers, directors, or employees of Defendants and their immediate family, (c) any entity in which Defendants have a controlling interest, (d) any affiliate, legal representative, heir, or assign of Defendants, (e) all federal court judges who have presided over this Action and their immediate family; (f) all persons who have submitted a valid request for exclusion from the Class; and (g) those who purchased the Challenged Product for the purpose of resale or for use in a business setting.

2.    With respect to the Class and for settlement purposes only, the Court preliminarily finds the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been met, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the class representatives and Class

---

[1]    All capitalized terms herein shall have the same meanings as set forth in the Stipulation unless otherwise specifically defined.

[PROPOSED] ORDER PRELIMINARILY
APPROVING CLASS
ACTION SETTLEMENT

Counsel; (e) predominance of common questions of fact and law among the Class for purposes of settlement; and (f) superiority.

3. Pursuant to Federal Rule of Civil Procedure 23, the Court hereby appoints the Plaintiffs in the Action, Danielle Alfandary and Rony Elkies, as the class representatives.

4. Having considered the factors set forth in Federal Rule of Civil Procedure 23(g)(1), the Court hereby appoints the law firms of Milstein Jackson Fairchild & Wade, LLP and Heideman Nudelman & Kalik, P.C., as Class Counsel.

**B.    The Stipulation Is Preliminarily Approved and Final Approval Schedule Set**

5. The Court hereby preliminarily approves the Stipulation and the terms and conditions of settlement set forth therein, subject to further consideration at the Final Approval Hearing described below.

6. The Court has conducted a preliminary assessment of the fairness, reasonableness, and adequacy of the Stipulation, and hereby finds that the settlement falls within the range of reasonableness meriting possible final approval. The Court therefore preliminarily approves the proposed settlement as set forth in the Stipulation.

7. Pursuant to Federal Rule of Civil Procedure 23(e), the Court will hold a Final Approval Hearing on _____, at _____ a.m./p.m., in the Courtroom of the Honorable George H. Wu, United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, California 90012, Courtroom 9D, for the following purposes:

(a) finally determining whether the Class meets all applicable requirements of Federal Rule of Civil Procedure 23 and, thus, the Class should be certified for purposes of effectuating the settlement;

[PROPOSED] ORDER PRELIMINARILY
                                            APPROVING CLASS
                                            ACTION SETTLEMENT

(b)    determining whether the proposed settlement of the Action on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate and should be approved by the Court;

(c)    considering the application of Class Counsel for an award of attorneys' fees and reimbursement of expenses, as provided for under the Stipulation;

(d)    considering the applications of Plaintiffs for class representative service awards, as provided for under the Stipulation;

(e)    considering whether the Court should enter the [Proposed] Final Settlement Order and Judgment;

(f)    considering whether the release of the Released Claims as set forth in the Stipulation should be provided; and

(g)    ruling upon such other matters as the Court may deem just and appropriate.

8.    The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to Class Members.

9.    The Parties may further modify the Stipulation prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the settlement provided thereunder.  The Court may approve the Stipulation with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Class Members.

10.    Plaintiffs' applications for attorneys' fees, costs and incentive awards must be filed no later than 21 days before the deadline for Class Members to object, opt out or make claims under the Stipulation. All further papers in support of the settlement and any application for an award of attorneys' fees and expenses and/or class representative incentive awards must be filed with the Court and served at least seven days prior to the Final Approval Hearing.

**C.    The Court Approves the Form and Method of Class Notice**

11.    The Court approves, as to form and content, the proposed Publication

Notice and Class Notice (collectively the "Notice"), which are Exhibits C and E, respectively, to the Stipulation.

12.     The Court finds that the distribution of Notice substantially in the manner and form set forth in the Stipulation meets the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

13.     The Court approves the designation of Kurtzman Carson Consultants LLC ("KCC") to serve as the Court-appointed Claim Administrator for the settlement.  The Claim Administrator shall cause the Publication Notice to be published, disseminate Class Notice, and supervise and carry out the notice procedure, the processing of claims, and other administrative functions, and shall respond to Class Member inquiries, as set forth in the Stipulation and this Order under the direction and supervision of the Court.

14.     The Court directs the Claim Administrator to establish a Settlement Website, making available copies of this Order, Class Notice, Claim Forms that may be downloaded and submitted online, by mail, or by facsimile, the Stipulation and all Exhibits thereto, a toll-free hotline, and such other information as may be of assistance to Class Members or required under the Stipulation. The Class Notice and Claim Forms shall be made available to Class Members through the Settlement Website on the date notice is first published and continuously thereafter through the Effective Date (and on the websites of Class Counsel at their option during the same period).

15.     The Claim Administrator is ordered to complete publication of the Publication Notice no later than 30 days after Preliminary Approval.

16.     The costs of Notice, processing of claims of Class Members, creating and maintaining the Settlement Website, and all other Claim Administrator and Notice expenses shall be paid by JJCI in accordance with the applicable provisions

[PROPOSED] ORDER PRELIMINARILY
APPROVING CLASS
ACTION SETTLEMENT

of the Stipulation.

**D.      Procedure for Class Members to Participate in the Settlement**

17.      The Court approves the Parties' proposed Claim Form.  Any Class Member who wishes to participate in the settlement shall complete a Claim Form in accordance with the instructions contained therein and submit it to the Claim Administrator during the Claim Submission Period set forth in the Stipulation, which date will be specifically identified in the Claim Form.  Such deadline may be further extended without notice to the Class by written agreement of the Parties.

18.      The Claim Administrator shall have the authority to accept or reject claims in accordance with the Stipulation, including the Claims Administration Protocols.

19.      Any Class Member may enter an appearance in the Action, at his or her own expense, individually or through counsel who is qualified to appear in the jurisdiction.  All Class Members who do not enter an appearance will be represented by Class Counsel.

**E.      Procedure for Requesting Exclusion from the Class**

20.      All Class Members who do not timely exclude themselves from the Class shall be bound by all determinations and judgments in the Action concerning the settlement, whether favorable or unfavorable to the Class.

21.      Any person or entity falling within the definition of the Class may, upon his, her or its request, be excluded from the Class.  Any such person or entity must submit a request for exclusion to the Clerk of the Court c/o the Class Action Administrator, postmarked or delivered no later than 28 calendar days prior to the date of the Final Approval Hearing, the date for which will be specifically identified in the Publication Notice and Class Notice.  Requests for exclusion purportedly filed on behalf of groups of persons/or entities are prohibited and will be deemed to be void.

22.      Any Class Member who does not send a signed request for exclusion

postmarked or delivered on or before the time period described above will be deemed to be a Class Member for all purposes and will be bound by all judgments and further orders of this Court related to the settlement of this Action and by the terms of the settlement, if finally approved by the Court.  The written request for exclusion must request exclusion from the Class, must be signed by the potential Class Member and include a statement indicating that the person or entity is a member of the Class.  All persons or entities who submit valid and timely requests for exclusion in the manner set forth in the Stipulation shall have no rights under the Stipulation and shall not be bound by the Stipulation or the Final Judgment and Order.

23.    A list reflecting all requests for exclusion shall be filed with the Court by Class Counsel at or before the Final Approval Hearing.

**F.    Procedure for Objecting to the Settlement**

24.    Any Class Member wishing to object to or oppose the approval of this Settlement, the motion for the service award to Plaintiffs and/or the Fee and Cost Applications shall file with the Court a written objection no later than twenty-eight (28) days before the date of the Final Approval Hearing. The objecting Class Member must send a copy of the written objection and supporting documents to the counsel listed in ¶X(M) of this Stipulation. The objection must contain:

(a)    The name of this Action;

(b)    The objecting Class Member's full name, address, email address (if available) and signature (a Class Member's attorney's signature is not sufficient);

(c)    A written statement containing all grounds for the objection, accompanied by any legal support known to the objecting Class Member or his or her counsel and any supporting papers, evidence and/or documents;

(d)    A statement of the objecting Class Member's membership in the Class, including all information required by the Claim Form;

[PROPOSED] ORDER PRELIMINARILY
APPROVING CLASS
ACTION SETTLEMENT

(e)     The identity of all counsel who represent the objecting Class Member, including any former or current counsel who may be entitled to compensation for any reason relating to the objection;

(f)     A statement confirming whether the objecting Class Member or any counsel representing the objecting Class Member intends to personally appear and/or testify at the Final Approval Hearing;

(g)     A detailed list of any other objections submitted by the objecting Class Member and/or his/her counsel, to any class actions submitted in any court in any jurisdiction within the United States in the previous five (5) years. If the Class Member or his/her counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, he/she shall affirmatively state so in the written materials provided in connection with the written objection to this Settlement; and,

(h)     A list of persons who may be called to testify at the Final Approval Hearing in support of the objection.

Any Class Member who fails to timely file and serve a written Objection containing all of the information listed in (a) through (h) of the previous paragraph shall not be permitted to object to the Settlement and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by any means, including but not limited to an appeal.

25.     If any objection is received by the Settlement Administrator, but not filed with the Court, the Settlement Administrator shall forward the Objection and all supporting documentation to Class Counsel and Counsel for Defendants. The failure of the Class Member to file the written objection with the Court shall be grounds for striking and/or overruling the objection, even if the objection is submitted

to the Settlement Administrator.

26.   A Class Member who objects to the settlement may also submit a Claim Form on or before the deadline to do so, which shall be processed in the same way as all other Claim Forms. A Class Member shall not be entitled to an extension to the deadline to submit a Claim Form merely because the Class Member has also submitted an objection.

27.   Class Counsel will file with the Court his briefs in support of Final Approval, the requested service awards for Plaintiffs and an application for attorneys' fees and costs no later than twenty-one (21) days before the deadline for Class Members to object to the Settlement.

28.   Class Counsel and/or Defendants have the right, but not the obligation, to respond to any objection no later than seven (7) days prior to the Final Approval Hearing. The party so responding shall file a copy of the response with the Court, and shall serve a copy, by regular mail, hand or overnight delivery, to the objecting member of the Class or to the individually-hired attorney for the objecting member of the Settlement Class; to Class Counsel; and to Defendants' Counsel.IT IS SO ORDERED

DATED: _____       _____
                                      THE HONORABLE GEORGE H. WU
                                      UNITED STATES DISTRICT JUDGE

[PROPOSED] ORDER PRELIMINARILY
                                                APPROVING CLASS
                                                ACTION SETTLEMENT

# Exhibit C

# Publication Notice

**EXHIBIT C**

<u>**LEGAL NOTICE**</u>

# If You Bought Infants' Tylenol You May be Entitled to Cash from a Class Settlement
## Para una notificación en Espanol, visite nuestro sitio Web,
## www.[XXXXX].com

A proposed settlement has been reached with Johnson & Johnson Consumer Inc. ("JJCI") in a class action lawsuit about the packaging and advertising of Infants' Tylenol. The plaintiffs in the lawsuit claim that the Infants' Tylenol packaging (the text "Infants" and a picture of a mother holding her baby) deceives consumers into believing Infants' Tylenol is unique/specially formulated for infants, when the bottle contains liquid acetaminophen of the same concentration in Children's Tylenol, and therefore causes consumers to overpay for Infants' Tylenol. JJCI denies all the plaintiffs' allegations of deception, and asserts that the safety features of Infants' Tylenol, especially the accompanying syringe for safe dosing of very young children, means Infants' and Children's are different products. JJCI is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

**Am I Included?** You are included in the settlement as a "Class Member" if you bought Infants' Tylenol for personal or household use in the United States any time between October 3, 2014 and [**insert first date notice will be published**] (the "Class Period").

**What Can I Get From the Settlement?** A $6.315 million fund will be created. After deducting administrative costs, Class Counsel's attorneys' fees and expenses, and service awards for the named plaintiffs, the balance will be used to pay Class Member claims. Class Members may claim $2.15 for every 1 and 2 fl oz bottle of Infants' Tylenol purchased. A maximum of 7 bottles or $15.05 may be claimed without proof of purchase. An unlimited number of bottles may be claimed with proof of purchase for <u>all</u> Infants' Tylenol purchases. If the total amount to be paid for claims are more or less than $6.315 million after the payment of administrative costs, attorneys'

fees and expenses to Class Counsel and a service award to each of the named plaintiffs, the payments to Class Members will be reduced or increased *pro rata.* Claims with proof of purchase will receive priority.

**How do I get a Payment?** You must submit a Claim Form by **Month day, 2019**, to receive a settlement payment. Claim Forms may be printed or submitted online at www.[XXXX].com or obtained by calling 800-xxx-xxxx.

**What are My Options?** If you are a Class Member and do nothing, your rights will be affected but you will not get a settlement payment. If you are a Class Member but do not want to be legally bound by the settlement, you must exclude yourself from it by **month day, 2019**. Unless you exclude yourself, you will not be able to sue or continue to sue JJCI and related parties for any legal claim resolved by this settlement or released by the Settlement Agreement. If you exclude yourself, you cannot get a payment from the settlement. If you stay in the settlement (do not exclude yourself), you may object to the settlement by **month day, 2019**. You may hire your own lawyer at your expense to represent you in this proposed settlement. Complete information, including the Stipulation of Settlement is available at www.XXXX.com.

**The Court's Fairness Hearing.** Before any money is paid, the Court will have a hearing on [**month day, 2019**] to decide whether to approve the settlement and Class Counsel's request for up to $2,083,950 in attorney fees and up to $385,000 in expenses and $4,000 service awards to each of the two Class Representatives. The motion(s) by Class Counsel for attorneys' fees will be available for viewing on the settlement website after they are filed. You don't have to attend the hearing.

---

CLAIM FORMS MUST BE RETURNED BY [MONTH DAY, 2019].
QUESTIONS? VISIT WWW.[XXXX].COM OR CALL 1-800-XXX-XXXX.

# Exhibit D

# Notice Plan

**EXHIBIT D**

**Notice Plan**

_____, 2019

1. **Settlement Website**:  A Settlement Website will be established that will contain:  1) a summary of the settlement; 2) a list of frequently asked questions and answers; 3) key deadlines; 4) downloadable copies of orders of the Court and other pleadings pertaining to the settlement; 5) a downloadable copy of the Stipulation; 6) a downloadable copy of the Class Notice and Claim Form; 7) information about how to contact the Claim Administrator via a toll-free number, via email and mail; and 8) other information required for Class Members to file a claim.  The Settlement Website will be maintained until the Effective Date.

2. **Toll-Free Telephone Support**:  A toll-free telephone support system will be established that will provide Class Members with 1) general information about the settlement; 2) frequently asked questions and answers; and 3) the ability to request a Class Notice and Claim Form.  The toll-free telephone support system will be maintained until 101 days after entry of Final Settlement Order and Judgment.

3. **Published Notice**:  Notice will be provided via _Parents_ magazine as soon as it is commercially reasonable.  Notice will also be provided pursuant to Government Code Section 6064 by a 1/8 page advertisement inserted four consecutive weeks in The Los Angeles Daily News.  The notice will direct Class Members to the Settlement Website and the toll-free telephone number referenced below.  Class Members may download a Class Notice and Claim Form from the Settlement Website, request a Class Notice and Claim Form via U.S. Mail, or via the toll-free telephone number.  The specific language of this notice will be mutually agreed upon by the Parties.

4. **PR Newswire Press Release**:  A press release targeting all 50 states will be sent once via the PR Newswire's U.S.1 and Hispanic newslines within 10 days of the Court's entry of the Preliminary Approval Order.  In addition, the press release will be sent to influencers covering stories related to child healthcare.  The specific language of every release contemplated by this section will be mutually agreed upon by the Parties.

5. **Internet Advertisements**:  For an eight-week period following provision of the notices specified in Paragraphs 3 and 4, internet advertisements will be run targeting potential Class Members through services provided by Facebook, Instagram, YouTube and Google Display Network. The notices will appear on both desktop and mobile devices, including tablets and smartphones, and will include an embedded link to the settlement website. The specific content of each internet advertisement will be mutually agreed upon by the Parties.

# Exhibit E

# Notice of Class Action Settlement

**EXHIBIT E**

UNITED STATES DISTRICT COURT,
CENTRAL DISTRICT OF CALIFORNIA

**IF YOU PURCHASED INFANTS' TYLENOL
YOU MAY BE ENTITLED TO A CASH PAYMENT**

THIS NOTICE AFFECTS YOUR RIGHTS.

*A Federal Court authorized this notice.*
*This is not a solicitation from a lawyer.*

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to get a cash payment. |
| EXCLUDE YOURSELF | Get no settlement benefits.  Remove yourself from both the settlement and the lawsuit. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| DO NOTHING | Get no cash payment.  Give up your rights. |
| GO TO A HEARING | Object to the settlement and ask the Court for permission to speak at the fairness hearing about your objection. |

Please read this entire Class Notice carefully.

Your rights and options – **and the deadlines to exercise them** – are explained in this notice.

| WHAT IS THIS LAWSUIT ABOUT? |
|---|
| A proposed settlement has been reached in a class action lawsuit about the packaging and advertising of Infants' Tylenol. The plaintiffs in the lawsuit claim that the Infants' Tylenol packaging (the text "Infants" and a picture of a mother holding her baby) deceives consumers into believing Infants' Tylenol is unique/ specially formulated for infants, when the bottle contains liquid acetaminophen of the same concentration in Children's Tylenol, and therefore causes consumers to overpay for Infants' Tylenol.  JJCI denies all the plaintiffs' allegations of deception, and asserts that the safety features of Infants' Tylenol, especially the accompanying syringe for safe dosing of very young children, means Infants' and Children's are different products. |

| WHO IS INCLUDED IN THE SETTLEMENT? |
|---|
| You are included in the Settlement as a "Class Member" if you purchased Infants' Tylenol for personal or household use in the United States at any time from October 3, 2014 to [the date the notice is first published]. |

| ARE THERE EXCEPTIONS TO BEING INCLUDED IN THE SETTLEMENT? |
|---|

The following persons are excluded from the settlement class:  (a) Defendants, (b) the officers, directors, or employees of Defendants and their immediate family, (c) any entity in which Defendants have a controlling interest, (d) any affiliate, legal representative, heir, or assign of Defendants, (e) all federal court judges who have presided over this Action and their immediate family; (f) all persons who submit a valid request for exclusion from the Class; and (g) those who purchased Infants' Tylenol for the purpose of resale or for use in a business setting.

### THE SETTLEMENT BENEFITS – WHAT YOU GET IF YOU QUALIFY

WHAT DOES THE SETTLEMENT PROVIDE?

JJCI will create a fund of up to $6.315 million. After deducting administrative costs, Class Counsel's attorneys' fees and expenses, and service awards for the named plaintiffs, the balance will be used to pay Class Member claims.  Class Members may claim $2.15 for every 1 and 2 fl oz bottle of Infants' Tylenol purchased. A maximum of 7 bottles or $15.05 may be claimed without proof of purchase. An unlimited number of bottles may be claimed with proof of purchase for all Infants' Tylenol purchases.

In addition, JJCI will modify the packaging of Infants' Tylenol and commit to educating and informing consumers, in response to inquiries and complaints to JJCI's Consumer Care Center (CCC) relating to comparisons of Infant's Tylenol and Children's Tylenol, that the liquid medicine within the bottles of both Infants' Tylenol and Children's Tylenol contains the same concentration of liquid acetaminophen.

### HOW YOU GET A CASH PAYMENT – SUBMITTING A CLAIM FORM

HOW CAN I GET A PAYMENT?

You must submit a Claim Form by **Month XX, XXXX** to get a cash payment.  A copy of the Claim Form is included in the Notice Package.  Claim Forms are also available at www.[XXXX].com or by calling 1-800-xxx-xxxx.

HOW DO I SUBMIT A CLAIM?

Complete and submit a Claim Form online at www._____.com or complete and return the attached Claim Form no later than [insert deadline]. Be sure to include all of the information the Claim Form requests, as well as proof of purchase, if necessary.

WHO DECIDES MY CLAIM?

The Claim Forms will be reviewed by an independent Claim Administrator according to criteria agreed to by the parties.

The Claim Administrator may contact you or other persons listed in your Claim Form if he or she needs additional information or otherwise wants to verify information in your Claim Form.

The Claim Administrator's determination is final.

WHEN WOULD I GET MY PAYMENT?

The Court will hold a hearing on _____ to decide whether to approve the settlement.  If the Court approves the settlement, after that there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Please be patient.

## WHAT IF THE FUND IS TOO SMALL?  TOO LARGE?

If the total amount to be paid for claims is more than $6.315 million after the payment of administrative costs, attorneys' fees and expenses to Class Counsel and a service award to each of the named plaintiffs, the payments to Class Members will be reduced *pro rata* such that each claimant would receive proportionally less than the amount he or she claimed.

If the Claim Fund is greater than the total amount to be paid for eligible claims, after accounting for and deducting the items described above, each Class Member's award will be proportionally increased on a *pro rata* basis up to $6.99 for each 1 oz. bottle purchased and $9.99 for each 2 oz. bottle purchased (this amount is based on the MSRP for each size during the Class Period). First, all claims with proofs of purchase will be reimbursed up to $6.99 for a 1 oz. bottle and $9.99 for a 2 oz. bottle.  If money remains in the Claim Fund Balance after the initial pro rata increase paid toward claims with proof of purchase, the remaining claims for bottles without proofs of purchase will be increased up to $6.99 for a 1 oz. bottle and $9.99 for a 2 oz. bottle.

If, after everyone sends in Claim Forms, the total of all approved claims are less than $6.315 million after the payment of administrative costs, attorneys' fees to Class Counsel, and a service award paid to the named plaintiffs, the remaining settlement funds will be donated to Nurse Family Partnerships.

## WHAT HAPPENS IF I DO NOTHING AT ALL?

If you do nothing, you will not get any money from the settlement.  But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against JJCI about the legal issues in this case, resolved by the Settlement and released by the Settlement Agreement.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

## HOW DO I GET OUT OF THE SETTLEMENT?

If you do not wish to be included in the Class and you want to keep your right to sue JJCI separately, you must exclude yourself from the settlement. To do so, send a letter (1) clearly stating that you want to be excluded from this lawsuit; and (2) includes your name, address, telephone number, and signature. Mail your exclusion request so it is postmarked no later than _____ to:

<div align="center">

[**INSERT CLAIM ADMINISTRATOR INFO**]

</div>

If you ask to be excluded, you will not get a settlement payment, and you will not be able to object to the settlement.  You will not be legally bound by anything that happens in this lawsuit and you may be able to sue (or continue to sue) the Defendants in the future.

If you have a pending lawsuit against the Defendants, speak to your lawyer immediately.  You may need to exclude yourself from this lawsuit in order to continue your own lawsuit.

Remember, the exclusion date is _____.

## THE LAWYERS REPRESENTING YOU

### DO I HAVE LAWYERS IN THIS CASE?

The Court appointed the law firms of Milstein Jackson Fairchild & Wade, LLP and Heideman Nudelman & Kalik, P.C. to represent you and other class members.  These lawyers are called Class Counsel.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### HOW WILL THE LAWYERS BE PAID?

Class Counsel will ask the Court to award them up to $2,083,950 in attorneys' fees and up to $385,000 in expenses. The named plaintiffs will also ask the Court to award them a service award in an amount not to exceed $4,000 each for their time and effort acting as plaintiffs and for their willingness to bring this litigation and act on behalf of consumers.  If approved by the Court, these amounts, as well as the costs associated with administering the settlement (up to $516,000) will be paid from the Claim Fund before making payments to Class Members who submit valid claims.

## OBJECTING TO THE SETTLEMENT

### HOW DO I TELL THE COURT THAT I DO NOT LIKE THE SETTLEMENT?

If you are a Class Member, you can object to the settlement if you do not like any part of it and the Court will consider your views.  To object, you must send a letter to the Court and the parties saying that you object to the settlement in *Elkies v. Johnson & Johnson Services, Inc.*, Case No. 2:17-cv-7320-GW(JEMx).  Your objection must also include:

(a) the name of this Action (*Elkies v. Johnson & Johnson Services, Inc.*, Case No. 2:17-cv-7320-GW(JEMx));

(b) your full name, address, email address (if available) and signature;

(c) the reasons why you object to the settlement, accompanied by any legal support and any supporting papers, evidence and/or documents to support your objection;

(d) a statement that you are a Class Member, including all information required by the Claim Form;

(e) the name and address of any counsel representing you, including any former or current counsel who may be entitled to compensation for any reason relating to the objection;

(f) a statement confirming whether  you or your counsel intends to personally appear and/or testify at the Final Approval Hearing;

(g) a detailed list of any other objections you and/or your counsel has submitted to any class actions, in any court, in any jurisdiction within the United States in the previous five years, or a statement confirming that you or your counsel have not objected to any other class action settlement in any court in the United States in the previous five years; and

(h) a list of persons who may be called to testify at the Final Approval Hearing in

support of your objection.

Your objection must be filed with the Court at the address below no later than _____. Copies of your objection must be sent to Class Counsel and Defense Counsel so they are postmarked by **[date]**.

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court, United States District Court Central District of California 350 West 1st Street Los Angeles, CA 90012 | Noel J. Nudelman Tracy Reichman Kalik Heideman Nudelman & Kalik, PC 1146 19th Street, NW, Fifth Floor Washington, DC 20036 | Matthew D. Powers O'Melveny & Myers LLP Two Embarcadero Center, 28th Floor San Francisco, CA 94111 - and – Joe O'Connor O'Melveny & Myers LLP 400 South Hope Street Los Angeles, CA  90071-2899 |

You can object to the Settlement and still submit a Claim Form on or before [deadline]. The Claim Form will be processed in the same way as all other Claim Forms. You cannot receive an extension to the deadline to submit a Claim Form merely because you also submit an objection.

WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?

Objecting is telling the Court that you do not like something about the settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you do not want to be part of the Class or the lawsuit.  You cannot request exclusion <u>and</u> object to the settlement.  If you exclude yourself, you have no basis to object because the case no longer affects you.

**RELEASE OF CLASS MEMBERS' CLAIMS AND DISMISSAL OF LAWSUIT**

WHAT AM I GIVING UP IN EXCHANGE FOR THE SETTLEMENT BENEFITS,?

If the Court approves the proposed settlement and you do not request to be excluded from the Class, you must release (give up) all claims that are subject to the Release, and the case will be dismissed on the merits and with prejudice.  **If you remain in the Class, you may not assert any of those claims in any other lawsuit or proceeding.  This includes any other lawsuit or proceeding already in progress.**

The text of the Release is reprinted in full at Appendix A to this notice.

**THE FINAL APPROVAL HEARING**

WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Judge will hold a Final Approval Hearing at _____ on _____ at the United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, California 90012, in Courtroom 9D.  At this hearing, the Judge will consider whether the settlement is fair, reasonable and adequate and whether to award Class Counsel's requests for attorneys'

fees, expenses and service awards for the Class Representatives. If there are objections, the Judge will consider them. The Judge will listen to people who have asked to speak at the hearing. After the hearing, the Judge will decide whether to approve the settlement. We do not know how long this decision will take.

### DO I HAVE TO COME TO THE HEARING?

No. Class Counsel will answer questions the Judge may have. But, you are welcome to come at your own expense. If you submit an objection, you do not have to come to the Court to talk about it. As long as you delivered your written objection on time and with all of the requisite information, the Judge will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### MY I SPEAK AT THE HEARING?

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must file with the Court a "Notice of Intention to Appear in *Elkies v. Johnson & Johnson Services, Inc.*, Case No. 2:17-cv-7320-GW(JEMx)." Be sure to include your name, address, telephone number, your signature and *a statement under penalty of perjury that you are a member of the Class* (*i.e.*, that you purchased Infants' Tylenol during the class period). Your Notice of Intention to Appear must be post-marked no later than _____, and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel at the three addresses listed above.

### GETTING MORE INFORMATION

### ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

This notice summarizes the proposed settlement. More details are in the Stipulation of Settlement. You can get a copy of the Stipulation of Settlement by writing to [**INSERT CLAIMS ADMINISTRATOR INFO**] or on the internet at www.[xxxx].com.

If you have questions about how to complete a Claim Form, you can call the Claim Administrator at _____. You can also contact attorneys for the class at www._____.com.

### PLEASE DO NOT CALL OR WRITE TO THE COURT FOR INFORMATION OR ADVICE.

DATED:_____     /s/ George H. Wu

|  | BY ORDER OF THE U.S. DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA |

### APPENDIX A - RELEASE

The Releasing Parties agree to release all claims against the Released Parties as set forth below:

A.      As of the Effective Date, in consideration of the settlement obligations set forth herein, any and all claims, demands, rights, causes of action, suits, petitions, complaints, damages of any kind, liabilities, debts, punitive or statutory damages, penalties, losses and issues of any kind or nature whatsoever, asserted or unasserted, known or unknown (including, but not limited to, any and all claims relating to or alleging deceptive or unfair business practices, false or misleading advertising, intentional or negligent misrepresentation, negligence, concealment, omission, unfair competition, promise without intent to perform, unsuitability, unjust enrichment, and any and all claims or causes of action arising under or based upon any statute, act, ordinance, or regulation governing or applying to business practices generally, including, but not limited to, any and all claims relating to or alleging violation of Cal. Bus. & Prof. Code § 17200 *et seq.*; Cal. Bus. & Prof. Code § 17500 *et seq.*; and Cal. Civ. Code § 1750 *et seq.*, arising out of or related to the Action, including the alleged false advertising at issue in the Action, that were asserted or reasonably could have been asserted in the Action by or on behalf of all Releasing Parties, whether individual, class, representative, legal, equitable, administrative, direct or indirect, or any other type or in any other capacity, against any Released Party ("Released Claims") shall be finally and irrevocably compromised, settled, released, and discharged with prejudice.

B.      Each of the Releasing Parties hereby waives any and all rights and benefits arising out of the facts alleged in the Action by virtue of the provisions of Civil Code § 1542, or any other provision in the law of the United States, or any state or territory of the United States, or principle of common law or equity that is similar, comparable or equivalent to Civil Code § 1542, with respect to this release. The Releasing Parties are aware that Civil Code § 1542 provides as follows:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.*

The Releasing Parties expressly acknowledge that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but the Releasing Parties, upon the Effective Date, shall be deemed to have, and by operation of law shall have, fully, finally and forever settled, released, and discharged any and all Released Claims, known or unknown, suspected or unsuspected, whether or not concealed or hidden, that now exist or heretofore have existed upon any theory of law or equity, including, but not limited to, Released Claims based on conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties agree that the Released Claims constitute a specific and not a general release.

C.      The Releasing Parties shall be deemed to have agreed that the release set forth in ¶¶ IV.A and B (the "Release") will be and may be raised as a complete defense to and will preclude any action or proceeding based on the Released Claims. The Releasing Parties agree that any members of the current Class are barred from bringing a future claim against JJCI on the same theory alleged in the Complaint based on any purchase of Infants' Tylenol after the Class Period.

D.      As of the Effective Date, by operation of entry of judgment, the Released Parties shall be deemed to have fully released and forever discharged Plaintiffs, all other Class Members and Class Counsel from any and all claims of abuse of process, malicious

prosecution, or any other claims arising out of the initiation, prosecution or resolution of the Action, including, but not limited to, claims for attorneys' fees, costs of suit or sanctions of any kind, or any claims arising out of the allocation or distribution of any of the consideration distributed pursuant to this Stipulation of Settlement.

## DEFINED TERMS USED IN THE RELEASE

"Action" means the case entitled *Elkies v. Johnson & Johnson Services, Inc.*, filed on October 5, 2017, in the U.S. District Court for the Central District of California and assigned Case No. 2:17-cv-7320-GW(JEMx).

"Class" and/or "Class Members" means all individuals in the United States who purchased Infants' Tylenol (the "Challenged Product") within the Class Period.  Specifically excluded from the Class are (a) Defendant, (b) the officers, directors, or employees of Defendant and their immediate family members, (c) any entity in which Defendant has a controlling interest, (d) any affiliate, legal representative, heir, or assign of Defendant, (e) all federal court judges who have presided over this Action and their immediate family members; (f) all persons who submit a valid request for exclusion from the Class; and (g) those who purchased the Challenged Product for the purpose of resale.

"Class Counsel" means the attorneys of record for Plaintiffs in this Action.

"Effective Date" means the date by which the Final Settlement Order and Judgment has become final, as defined in the Stipulation of Settlement.

"Parties" means the Plaintiffs and the Defendants.

"Released Parties" means Defendants and each of its parent, affiliated and subsidiary corporations and all of their agents, employees, partners, predecessors, successors, assigns, insurers, attorneys, officers and directors.

"Releasing Parties" means the named plaintiffs in the Action, individually and as representatives of all those similarly situated, and the Class Members.

"Stipulation of Settlement" and/or "Stipulation" means this Stipulation of Settlement, including its attached exhibits (which are incorporated herein by reference), duly executed by Plaintiffs, Class Counsel, Defendants and Defendant's Counsel.

# Exhibit F

# Claim Form

**EXHIBIT F**

| |
|---|
| **Infants' Tylenol**<br>**CLAIM FORM** |
| **You can also submit online at www.[xxxxx].com.**<br>Use this Claim Form to claim refunds of a portion of the purchase price of one or more Infants' Tylenol products that you purchased. Only one Claim Form may be submitted per household. Your **Claim Form must be postmarked or submitted online by [month day, 2019].**  If mailing please return this form to:<br><br>Infants' Tylenol Claims Administrator<br>[Address]<br>[City, State, Zip Code] |
| **CLASS MEMBER INFORMATION** |
| NAME: _____     TELEPHONE OR EMAIL: _____<br><br>ADDRESS: _____<br><br>CITY: _____     STATE: _____     ZIP CODE: _____ |
| **PURCHASE INFORMATION** |
| Complete the information below for all of the Infants' Tylenol you purchased in the United States between October 3, 2014 and **[Insert first date notice will be published]** for which you are submitting a claim. You may recover for up to 7 bottles **without** proof of purchase.<br><br>I purchased _____ bottles of 1 oz Infants' Tylenol in the United States between October 3, 2014 and [Insert first date notice will be published]<br><br>I purchased _____ bottles of 2 oz Infants' Tylenol in the United States between October 3, 2014 and [Insert first date notice will be published] |
| **PROOF OF PURCHASE** |
| To maximize your recovery, you should provide proof of purchases for any of your qualifying Infants' Tylenol purchases. Proof of purchase is **not required** to make a claim. **Your recovery will be limited to the greater of (i) 7 bottles or (ii) the number of bottles for which you provide proof of purchase.** In addition, claims accompanied by proof of purchase have priority to get more money in the event there is excess money in the claim fund.<br><br>Proof of purchase may be in the form of a receipt, rewards card records or other documents indicating the product purchased, product size, date of purchase and quantity purchased.<br><br>**Please select one of the following:**<br><br>_____     I am not submitting any proofs of purchase.<br><br>_____     I am submitting proofs of purchase for _____ 1 oz bottles and _____ 2 oz bottles. |
| **AFFIRMATION** |
| I understand that the decision of the Claim Administrator is final and binding on me and on Defendant.<br><br>The information on this claim form is true and correct to the best of my knowledge and belief.<br><br><br>SIGNATURE: _____     DATE: _____ |
| **CLAIM FORMS MUST BE RETURNED BY [MONTH DAY, 2019].**<br>**QUESTIONS?  VISIT WWW.[XXXXX].COM OR CALL 1-800-XXX-XXXX.** |

00028269

# Exhibit G

# Final Settlement Order and Judgment

1

**EXHIBIT G**

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

11

CENTRAL DISTRICT OF CALIFORNIA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RONY ELKIES, DANIELLE ALFANDARY, Individually and on Behalf of All Others Similarly Situated,

        Plaintiffs,

v.

 JOHNSON & JOHNSON SERVICES, INC.; JOHNSON & JOHNSON CONSUMER INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:17-cv-7320-GW(JEMx)

<u>CLASS ACTION</u>

**[PROPOSED] FINAL SETTLEMENT ORDER AND JUDGEMENT**

1    IT IS HEREBY ADJUDGED AND DECREED THAT:

2    1.    This Judgment incorporates by reference the definitions in the

3    Stipulation of Settlement dated September 19, 2019 ("Stipulation"), attached as

4    Exhibit A, and all capitalized terms used herein shall have the same meanings as set

5    forth in the Stipulation unless set forth differently herein.    The terms of the

6    Stipulation are fully incorporated in this Judgment as if set forth fully here.

7    2.    The Court has jurisdiction over the subject matter of this action and all

8    Parties to the action, including all Class Members who do not timely exclude

9    themselves from the Class.    The list of excluded Class Members was filed with the

10   Court on _____ and is attached as Exhibit B.

11   3.    Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Court hereby

12   certifies the following Class:

13           All individuals who purchased, in the United States, Infants' Tylenol
             for personal or household use since October 3, 2014 until _____
14           (the date notice of this Settlement to the Class is first published).
             Specifically excluded from the Class are (a) Defendants, (b) the
15           officers, directors, or employees of Defendants and their immediate
             family, (c) any entity in which Defendants have a controlling
16           interest, (d) any affiliate, legal representative, heir, or assign of
             Defendants, (e) all federal court judges who have presided over this
17           Action and their immediate family; (f) all persons who have
18           submitted a valid request for exclusion from the Class; and (g) those
             who purchased the Challenged Product for the purpose of resale or
19           for use in a business setting.
20

21   4.    Pursuant to Federal Rule of Civil Procedure 23(c)(3), all such persons

22   or entities who satisfy the Class definition above, except those Class Members who

23   timely and validly excluded themselves from the Class, are Class Members bound by

24   this Judgment.

25   5.    For settlement purposes only, the Court finds:

26           (a)    Pursuant to Federal Rule of Civil Procedure 23(a), Rony Elkies

27   and Danielle Alfandary are members of the Class, their claims are typical of the

28

                                                                      [PROPOSED] FINAL SETTLEMENT
                                                                         ORDER AND JUDGMENT

Class, and they fairly and adequately protected the interests of the Class throughout the proceedings in the Action.  Accordingly, the Court hereby appoints Rony Elkies and Danielle Alfandary as class representatives;

(b)    The Class meets all of the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3) for certification of the class claims alleged in the First Amended Complaint, including:  (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the class representative and Class Counsel; (e) predominance of common questions of fact and law among the Class for purposes of settlement; and (f) superiority; and

(c)    Having considered the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure, Class Counsel have fairly and adequately represented the Class for purposes of entering into and implementing the settlement. Accordingly, the Court hereby appoints Class Counsel as counsel to represent Class Members.

6.    Persons or entities who filed timely exclusion requests are not bound by this Judgment or the terms of the Stipulation and may pursue their own individual remedies against Defendants.  However, such excluded parties are not entitled to any rights or benefits provided to Class Members by the terms of the Stipulation.  The list of persons and entities excluded from the Class because they filed timely and valid requests for exclusion is attached hereto as Exhibit B.

7.    The Court directed that notice be given to Class members by publication and other means pursuant to the notice program proposed by the Parties in the Stipulation and approved by the Court.  The declaration from Kurtzman Carson Consulting (KCC), attesting to the dissemination of the notice to the Class, demonstrates compliance with this Court's Preliminary Approval Order.  The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights;

[PROPOSED] FINAL SETTLEMENT
ORDER AND JUDGMENT

1    and the binding effect of this Judgment, whether favorable or unfavorable, to the

2    Class.

3        8.    The distribution of the notice to the Class constituted the best notice

4    practicable under the circumstances, and fully satisfied the requirements of Federal

5    Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and

6    any other applicable law.

7        9.    Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds

8    after a hearing and based upon all submissions of the Parties and other persons that

9    the settlement proposed by the Parties is fair, reasonable, and adequate.  The terms

10   and provisions of the Stipulation are the product of arms-length negotiations

11   conducted in good faith and with the assistance of an experienced mediator,

12   Honorable Charles W. "Tim" McCoy (retired).  The Court has considered any timely

13   objections to the Settlement and finds that such objections are without merit and

14   should be overruled.  Approval of the Stipulation will result in substantial savings of

15   time, money and effort to the Court and the Parties, and will further the interests of

16   justice.

17       10.   Upon the Effective Date, the named Plaintiffs and each Class Member

18   other than those listed on Exhibit B shall be deemed to have, and by operation of this

19   Final Settlement Order and Judgment shall have released, waived and discharged

20   with prejudice Defendants from any and all claims, demands, rights, causes of action,

21   suits, petitions, complaints, damages of any kind, liabilities, debts, punitive or

22   statutory damages, penalties, losses and issues of any kind or nature whatsoever,

23   asserted or unasserted, known or unknown (including, but not limited to, any and all

24   claims relating to or alleging deceptive or unfair business practices, false or

25   misleading advertising, intentional or negligent misrepresentation, negligence,

26   concealment, omission, unfair competition, promise without intent to perform,

27   unsuitability, unjust enrichment, and any and all claims or causes of action arising

28   under or based upon any statute, act, ordinance, or regulation governing or applying

[PROPOSED] FINAL SETTLEMENT
ORDER AND JUDGMENT

to business practices generally, including, but not limited to, any and all claims relating to or alleging violation of Cal. Bus. & Prof. Code § 17200 et seq.; Cal. Bus. & Prof. Code § 17500 et seq.; Cal. Civ. Code § 1750 et seq., arising out of or related to the Action, including the alleged false advertising at issue in the Action, that were asserted or reasonably could have been asserted in the Action by or on behalf of all Releasing Parties, whether individual, class, representative, legal, equitable, administrative, direct or indirect, or any other type or in any other capacity, against any Released Party (the "Released Claims").

11.    All Class Members who have not timely and validly submitted requests for exclusion are bound by this Judgment and by the terms of the Stipulation.

12.    The Plaintiffs in the Action initiated this lawsuit, acted to protect the Class, and assisted their counsel.  Their efforts have produced the Stipulation entered into in good faith that provides a fair, reasonable, adequate and certain result for the Class.  Plaintiff Elkies is entitled to a service award of $.  Plaintiff Alfandary is entitled to a service award of $.  Class Counsel is entitled to reasonable attorneys' fees, which the Court finds to be $_____, and expenses in the amount of $_____.

13.    The Court hereby dismisses with prejudice the Action, and the Released Parties are hereby released from all further liability for the Released Claims.

14.    Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration and enforcement of this Judgment and the Stipulation, and all matters ancillary thereto.

15.    The Court finding that no reason exists for delay in ordering final judgment pursuant to Federal Rule of Civil Procedure 54(b), the clerk is hereby directed to enter this Judgment forthwith.

16.    The Parties are hereby authorized without needing further approval from the Court to agree to and adopt such modifications and expansions of the Stipulation, including without limitation the claim review procedure, that are consistent with this Judgment and do not limit the rights of Class Members under the Stipulation.

[PROPOSED] FINAL SETTLEMENT
ORDER AND JUDGMENT

1

2        IT IS SO ORDERED.

3

4

5        DATED:_____
                                              THE HONORABLE GEORGE H. W.
6                                             UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINAL SETTLEMENT
                                             ORDER AND JUDGMENT

# EXHIBIT 2

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3     ----------------------------x

4   RONY ELKIES and DANIELLE      )
    ALFANDRY, individually and on )
5   behalf of all others situated )
                                  )
6            Plaintiffs,          )   CASE NO.:
                                  )   2:17-CV-7320-GW-JEM
7        vs.                      )
                                  )
8   JOHNSON & JOHNSON SERVICES,   )
    INC., a New Jersey limited    )
9   liability company, JOHNSON &  )
    JOHNSON CONSUMER INC. a New   )
10  Jersey limited liability      )
    company, and DOES 1 through   )
11  100, inclusive,               )
                                  )
12           Defendants.          )

13    ----------------------------x

14              HIGHLY CONFIDENTIAL

15

16         Oral sworn deposition of JENNIFER CULLEN,

17  taken by and before Lisa Forlano, CCR, CRR, RMR, at

18  Golomb & Honik, P.C., 1835 Market Street,

19  Suite 2900, Philadelphia, Pennsylvania, on Tuesday,

20  July 10, 2018, commencing at 9:05 a.m.

21

22

23

24

25

HIGHLY CONFIDENTIAL
Transcript of Jennifer Cullen, Corporate Designee
Conducted on July 10, 2018                                          98

```
1    BY MR. NUDELMAN:
2            Q       Let me try it a different way.  Was
3    there different package flats, therefore PDPs, used
4    for Infants' Tylenol sold in California versus
5    elsewhere in the United States?
6                    MS. CHANOINE:  Objection, vague.
7                    THE WITNESS:  Based on my understanding
8        of your question, I'm not aware of distinct
9        PDPs being sold in California versus other
10       areas of the country.  However, there would be
11       variability in PDPs in -- you know, probably
12       across all the states of the country.
13   BY MR. NUDELMAN:
14           Q       Understanding the variabilities,
15   outside of variabilities, it's the same package flat
16   for Infants' Tylenol grape flavor one ounce that was
17   used by Johnson & Johnson; is that true?
18                   MS. CHANOINE:  Objection, vague.
19                   THE WITNESS:  Can you say that question
20       one more time just so I understand it?
21   BY MR. NUDELMAN:
22           Q       Outside of the variabilities, the
23   Infants' Tylenol package flat for grape flavored
24   one ounce as reflected in Exhibit 1 to Joe
25   O'Connor's declaration was the same package flat in
```

HIGHLY CONFIDENTIAL
Transcript of Jennifer Cullen, Corporate Designee
Conducted on July 10, 2018                          240

```
 1              C E R T I F I C A T I O N

 2

 3         I, LISA FORLANO, a Certified Realtime

 4    Reporter, Certified Court Reporter and Notary

 5    Public, do hereby certify that I reported the

 6    deposition in the above-captioned matter, that

 7    the said witness was duly sworn by me; that

 8    the foregoing is a true and correct transcript

 9    of the stenographic notes of testimony taken

10    by me in the above-captioned matter.

11         I further certify that I am not an

12    attorney or counsel for any of the parties,

13    not a relative or employee of any attorney or

14    counsel connected with the action, nor

15    financially interested in the action.

16

17         Lisa Forlano

18

19    _____

20    LISA FORLANO, CRR, CCR #XI01143

21    DATED: July 16, 2018

22

23

24

25
```

# EXHIBIT 3

```
 1                UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
                         -   -   -
 3    RONY ELKIES and DANIELLE    :
 4    ALFANDRY, individually and :
 5    on behalf of all others     :
 6    situated                    :
 7          vs.                   :
 8    JOHNSON & JOHNSON SERVICES :
 9    INC., a New Jersey limited :
10    liability company,          :
11    JOHNSON & JOHNSON CONSUMER :
12    INC. a New Jersey limited   :
13    liability company, and DOES:CASE NO.
14    1 through 100, inclusive   :2:17CV-7320-GW-JEM
15                         -   -   -
16             CONTAINS CONFIDENTIAL INFORMATION
17                    JUNE 28, 2018
18                         -   -   -
19             Deposition of JOHNSON & JOHNSON
20    SERVICES, INC By and through its Designated
21    Representative, EILEEN HARMAN, taken
22    pursuant to notice at 1835 Market Street, Suite
23    2900, Philadelphia, Pennsylvania, commencing at
24    10:03 a.m., before Susan A. Hurrey, Registered
25    Professional Reporter and Notary Public.
```

CONTAINS CONFIDENTIAL INFORMATION
Transcript of Eileen Harman, Corporate Designee
Conducted on June 28, 2018                              117

1        A.   Attached hereto as Exhibit-1 is a true and

2    correct copy of a package flat for Infants' Tylenol

3    that was in production at Johnson & Johnson

4    Consumer, Inc. from 2014 through mid-2016.  This is

5    an accurate reflection of the label for the

6    Infants' Tylenol product distributed to retailers

7    prior to and through to January 2016.

8        Q.   Could you please turn to Exhibit-1.

9        A.   (Witness complies.)

10       Q.   Is this what you referred to as a true and

11   correct copy of a package flat for Infants' Tylenol

12   that was in production at Johnson & Johnson

13   Consumer, Inc. from 2014 through mid-2016?

14       A.   Yes.

15       Q.   Was there a version in between the version

16   in Exhibit-10, your declaration and the version in

17   Exhibit-11, Mr. O'Connor's declaration?

18       A.   I'm not aware of a version, no.

19       Q.   So I just want to be clear.  The version in

20   Mr. O'Connor's declaration was the version directly

21   subsequent to the version in your declaration?

22       A.   That's what I believe so, yes.

23       Q.   There was nothing in between?

24       A.   That's right.

25       Q.   With regards to the version in your

1    declaration, was that available throughout the

2    United States as well?

3        A.  Yes.

4        Q.  There was no separate version for

5    California?

6        A.  No.

7        Q.  Can you identify the differences in the top

8    third of the package between the current version

9    and the version directly previous to the current

10   version which is attached to Exhibit-1 to your

11   declaration?

12            MR. POWERS:  Objection.  The document

13   speaks for itself.  It's a waste of time.

14            MR. WHITMAN:  I'm going to ask

15   questions about --

16            MR. POWERS:  It would be more time

17   efficient if you want to direct her to the piece

18   you want to ask her a question about.

19   BY MR. WHITMAN:

20       Q.  Do you see where it says see new warning in

21   the top third of the package flat in your

22   declaration?

23       A.  Yes.

24            MR. POWERS:  And you're talking about

25   Infants', right?

```
 1                   C E R T I F I C A T I O N

 2

 3             I hereby certify that the

 4   proceedings, evidence and objections noted, are

 5   contained fully and accurately in the notes taken

 6   by me on the hearing of this matter, and that this

 7   copy is a correct transcript of the same.

 8

 9

10

11

12   _____

13       SUSAN A. HURREY, R.P.R.

14       NOTARY PUBLIC

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT 4



# ABOUT US

Home > About Us





## BEGINNING WITH TRUST, ENDING WITH EXTRAORDINARY OUTCOMES.

### NURSE-FAMILY PARTNERSHIP® IS A COMMUNITY HEALTH PROGRAM THAT TRULY CHANGES LIVES – FOR GENERATIONS TO COME.

Nurse-Family Partnership empowers first-time moms to transform their lives and create better futures for themselves and their babies.

Over more than four decades, research consistently has proven that Nurse-Family Partnership succeeds at its most important goals: keeping children healthy and safe, and improving the lives of moms and babies.

Nurse-Family Partnership works by having specially trained nurses regularly visit young, first-time moms-to-be, starting early in the pregnancy, and continuing through the child's second birthday.

The expectant moms benefit by getting the care and support they need to have a healthy pregnancy. At the same time, new mothers develop a close relationship with a nurse who becomes a trusted resource they can rely on for advice on everything from safely caring for their child to taking steps to provide a stable, secure future for them both. Through the partnership, the nurse provides new moms with the confidence and the tools they need not only to assure a healthy start for their babies, but to envision a life of stability and opportunities for success for both mom and child.

The Nurse-Family Partnership National Service Office is a non-profit organization that provides network partners across the country the information, support and specialized training they need to properly implement Nurse-Family Partnership and produce the same successful results that have made the program a national model.

## FACTS ABOUT NURSE-FAMILY PARTNERSHIP

ABOUT US

CONTACT US

PROVEN RESULTS

THE DAVID OLDS STORY

MISSION, VISION & VALUES

WHERE WE OPERATE

LET'S BE FRANK – NURSE-FAMILY PARTNERSHIP BLOG

NEWS CENTER

FOR THE MEDIA

NEWSLINK NEWSLETTER

CAREERS

OUR PEOPLE

FINANCIAL INFORMATION

2018 ANNUAL REPORT

The following documents provide a general overview of Nurse-Family Partnership. They are all available in PDF format to download and print.

COMMUNITY   SHOP   DONATE   MENU



OVERVIEW

NATIONAL SNAPSHOT (CURRENT NUMBER OF STATES AND FAMILIES SERVED)

NURSES AND MOTHERS

REDUCES MATERNAL AND CHILD MORTALITY

BENEFITS AND COSTS

IMPROVED HEALTH OUTCOMES

PREVENTING CHILDHOOD OBESITY

RESEARCH TRIALS AND OUTCOMES

PAY FOR SUCCESS

TED MILLER'S STUDY: OUTCOMES, COSTS AND RETURN ON INVESTMENT IN THE U.S.

2019 PUBLIC POLICY PRIORITIES

SUBSTANCE ABUSE

PUBLIC FUNDING





# CONTACT US TO LEARN MORE, OR SO WE CAN GET YOU CONNECTED WITH YOUR PERSONAL NURSE.

*Disclaimer for 28 weeks or less pregnant: Some exceptions may apply please check with your local Nurse-Family Partnership agency for more information.*

Fields marked with an * are required

FIRST NAME *

LAST NAME

PHONE

EMAIL *

CITY

STATE *

ZIP *

AGE (MM/DD/YYYY)

I understand that filling out this form and submitting my contact information does not guarantee my place in the program and is consent to have my information forwarded to Nurse-Family Partnership to see if I can receive a personal nurse.

SUBMIT