1

**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

2

3

4

5

6

**HEIDEMAN NUDELMAN &**
**KALIK, P.C.**
Richard D. Heideman (admitted *pro hac vice*)
rdheideman@hnklaw.com
Noel J. Nudelman (admitted *pro hac vice*)
njnudelman@hnklaw.com
Tracy Reichman Kalik (admitted *pro hac vice*)
trkalik@hnklaw.com
1146 19th Street, NW 5th Floor
Washington, DC  20036
Tel: (202)463-1818
Fax: (202)463-2999

7

8

9

10

11

12

13

*Attorneys for Plaintiffs and the Class*

14

UNITED STATES DISTRICT COURT

15

FOR THE CENTRAL DISTRICT OF CALIFORNIA

16

17

18

RONY ELKIES and DANIELLE
ALFANDARY, individually and on
behalf of all others situated;

19

Plaintiffs,

20

vs.

21

22

JOHNSON & JOHNSON
SERVICES, INC., a New Jersey
limited liability company,
JOHNSON & JOHNSON
CONSUMER INC. a New Jersey
limited liability company, and DOES
1 through 100, inclusive,

23

24

25

26

Defendants.

27

28

Case No. 2:17-CV-7320-GW-JEM

**NOTICE OF MOTION AND**
**MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT**

Hearing Date:  June 22, 2020
Hearing Time:  8:30 a.m.
Courtroom:     9D
Judge:         Hon. George H. Wu

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 22, 2020 at 8:30 a.m., or on such date as may be specified by the Court, in the courtroom of the Honorable George Wu, United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, Courtroom 9D, 9th Floor, Plaintiffs Rony Elkies and Danielle Alfandary ("Plaintiffs") on behalf of themselves and the class, will and hereby do move for an order, pursuant to Fed. R. Civ. P. Rule 23, granting final approval of the class action settlement that was preliminarily approved on December 6, 2019 (ECF 172).

This motion will be heard concurrent with Plaintiffs' Motion for Attorneys' Fees and Costs and Service Award, which will be separately filed.

This motion is based on this Notice of Motion and the Memorandum of Points and Authorities in support thereof; the Amended Stipulation of Settlement (previously filed on October 24, 2019 at ECF 169-1); the Order Granting Preliminary Approval (ECF 172); the Declaration of Gillian L. Wade filed concurrently filed herewith in support of this Motion; the concurrently-filed Motion for Attorneys' Fees and Costs and Service Awards; and the Declaration of Carla Peak concurrently filed herewith; and, all of the papers and pleadings on file in this action, and upon such other and further evidence as the Court may be presented at the time of the hearing, including oral argument.

Dated: May 4, 2020

Respectfully submitted,

Gillian L. Wade
Sara D. Avila
**MILSTEIN JACKSON FAIRCHILD &
WADE, LLP**

Richard D. Heideman
Noel J. Nudelman
Tracy Reichman Kalik
**HEIDEMAN NUDELMAN &
KALIK, P.C.**

*Counsel for Plaintiffs and the Class*

# **TABLE OF CONTENTS**

I.   Introduction..................................................................................................1

II.  Background..................................................................................................2

    A.   Nature of the Litigation..............................................................2

    B.   Procedural History .....................................................................3

        1.   A Litigation Class Was Certified and Notice was Disseminated ...........................................................................3

        2.   The Parties Completed Fact and Expert Discovery and Engaged in Significant Discovery-Related Motions Practice.........................4

        3.   The Parties Engaged in Non-Collusive, Arms-Length Settlement Negotiations ..........................................................5

        4.   The Court granted preliminary approval, conditionally certified the settlement Class and ordered dissemination of notice ..............6

    C.   Summary of the Settlement Terms ...........................................6

        1.   The Settlement Class................................................................6

        2.   Monetary Recovery..................................................................7

        3.   Injunctive Relief......................................................................8

        4.   The Release by Class Members................................................9

        5.   Payment of Litigation and Settlement Administration Costs, Attorneys' Fees and Service Awards............................................10

    D.   The Court Granted Preliminary Approval of the Settlement and Notice to the Settlement Class Was Disseminated.................................10

III. The Proposed Settlement Warrants Final Approval.....................................11

    A.   The Settlement Class Should Remain Certified ....................................11

    B.   Class Members Received Adequate Notice.............................................12

C.   The Settlement is Fair, Reasonable and Adequate ................................ 13

1.   The Settlement Satisfies Fed. R. Civ. P. Rule 23(e)(2) ................ 15

a.   Plaintiffs and Class Counsel have adequately
represented the Class .................................................................. 15

b.   The settlement was negotiated at arms' length ..................... 15

c.   The settlement relief is adequate, considering the
costs, risks, and delay of trial and appeal ............................... 15

(i)   Plaintiffs' case faced significant barriers  ..................... 16

(ii)   The risk, expense, complexity, and duration of
continued litigation favor final approval  ....................... 17

(iii)  The risk of maintaining class status favors final
approval  ......................................................................... 18

(iv) The settlement amount offered is just one component
of the settlement and is adequate ................................... 18

d.   The methods for processing claims and distributing
monetary relief are effective and adequate ........................... 20

e.   The terms of the proposed award of attorneys' fees
are fair ....................................................................................... 20

f.   There are no Rule 23(e)(3) supplemental agreements
to identify .................................................................................. 21

g.   Class Members are treated equitably relative to
each other .................................................................................. 21

2.   The Remaining Ninth Circuit Factors Also Weigh in
Favor of Preliminary Approval ....................................................... 22

a.   Class Counsel had ample information to make an
informed decision ..................................................................... 22

b.   Class Counsel believe the settlement is in the best
interests of the Class ................................................................ 23

c.    No government entity has opposed the settlement.................24

d.    The Class' favorable reaction to the settlement
supports final approval ..........................................................24

IV.    Conclusion .......................................................................................25

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Ahmed v. HSBC Bank USA* (C.D. Cal. Jun. 21, 2019)
  2019 U.S. Dist. LEXIS 104401 ...................................................................22

*Armstrong v. Davis* (9th Cir. 2001)
  275 F.3d 849 ....................................................................................18

*Barbosa v. Cargill Meat Solutions Corp.* (E.D. Cal. 2013)
  297 F.R.D. 431 ..................................................................................20

*Carter v. Anderson Merchandisers, LP* (C.D. Cal. May 11, 2010)
  2010 U.S. Dist. LEXIS 55629 .........................................................24

*Churchill VIll., L.L.C. v. Gen. Elec.* (9th Cir. 2004)
  361 F.3d 566 ....................................................................................14

*Eisen v. Carlisle & Jacqueline* (1974)
  417 U.S. 156 ....................................................................................12

*Gaudin v. Saxon Mortg. Servs., Inc.* (N.D. Cal. Nov. 23, 2015)
  2015 U.S. Dist. LEXIS 159020 ...........................................................19

*Gulf Oil Co. v. Bernard* (1981)
  452 U.S. 89 ......................................................................................13

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
  F.3d 1011 ..................................................................................11, 13

*Hefler v. Wells Fargo & Co.* (N.D. Cal. Dec. 17, 2018)
  2018 U.S. Dist. LEXIS 213045 ...........................................................14

*Hendricks v. Ference*, (9th Cir. 2018)
  754 App'x 510 ..................................................................................19

*Hendricks v. Starkist Co.* (N.D. Cal. Sep. 29, 2016)
  2016 U.S. Dist. LEXIS 134872 ...........................................................19

*In re Bluetooth Headset Prods. Liab. Litig.* (9th Cir. 2011)
  654 F.3d 935 ....................................................................................15

*In re Hyundai & Kia Fuel Economy Litig.*) (9th Cir. 2019)
    926 F.3d 539 ................................................................................12

*In re Lenovo Adware Litig.* (April 24, 2019)
    2019 U.S. Dist. LEXIS 69797 ...............................................12, 23, 24

*In re Linkedin User Privacy Litig.*
    309 F.R.D. 589 ..............................................................................24

*In re Mego Fin. Corp. Sec. Litig.* (9th Cir. 2000).
    213 F.3d 454 ................................................................................18

*In re Online DVD-Rental Antitrust Litig.* (9th Cir. 2015)
    779 F.3d 934 ...........................................................................13, 22

*Larsen v. Trader Joe's Co.* (N.D. Cal. July 11, 2014)
    2014 U.S. Dist. LEXIS 95538 ..........................................................25

*Lewis v. Starbucks Corp.* (E.D. Cal. Sept. 11, 2008)
    2008 U.S. Dist. LEXIS 83192 ..........................................................23

*Linney v. Cellular Alaska Partnership* (9th Cir. 1998)
    151 F.3d 1234 ..............................................................................23

*McDonald v. CP OpCo, LLC* (N.D. Cal. May 13, 2019)
    U.S. Dist. LEXIS 80501 .................................................................17

*Molski v. Gleich* (9th Cir. 2003)
    318 F.3d 937 ................................................................................14

*Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004)
    221 F.R.D. 523 ..............................................................................18

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.* (9th Cir. 1982)
    688 F.2d 615 .......................................................................14, 16, 18

*Rodriguez v. W. Publ'g Corp.* (9th Cir. 2009)
    563 F. 3d 948 ..........................................................................14, 24

*Silber v. Mabon* (9th Cir. 1994)
    18 F.3d 1454 ................................................................................12

*Staton v. Boeing Co.* (9th Cir. 2003)
    327 F.3d 938 ...................................................................................14

*Torrisi v. Tuscon Electric Power Co.* (9th Cir. 1993)
    8 F.3d 1370 ....................................................................................16

## FEDERAL STATUTES

Fed. R. Civ. P. Rule 23 ...................................................................*passim*

## STATE STATUTES

Cal. Bus. & Prof. C. § 17200............................................................3, 9

Cal. Bus. & Prof. C. § 17500............................................................3, 9

Cal. Civ. C. §1542 .............................................................................9

Cal. Civ. C. § 1750 .........................................................................3, 9

Motion for Final Approval
Case No. 2:17-CV-7320-GW-JEM

## I.    Introduction

After nearly two years of litigating whether representations on the front packaging for Infants' Tylenol ("Infants") deceive consumers into believing Infants' Tylenol is specially formulated or unique for infants, Plaintiffs and Defendants Johnson & Johnson Consumer, Inc. ("JJCI") and Johnson & Johnson Services, Inc. (collectively, "J&J") reached a proposed class action settlement just three months before a class trial was scheduled to begin. Settlement negotiations occurred over three months, and began only after mediation was ordered by the Court following certification of a California litigation class. The parties reached the agreement with the help of a private mediator, Hon. Charles (Tim) McCoy, Ret. after completing full merits discovery and most expert discovery.

The proposed settlement consists of monetary and injunctive relief. ECF 169-1 (the Agreement).[1] Specifically, in exchange for a release of claims by a national consumer class of Infants' Tylenol purchasers, JJCI will make a non-reversionary $6.315 million cash payment for the benefit of the Class. This money will be used to pay the following: Settlement Administration Expenses ($516,000); Class Counsel's attorneys' fees (up to $2,083,950—less than Class Counsel's actual lodestar) and expenses ($357, 917); and, service awards for Mr. Elkies and Ms. Alfandary ($4,000 each). *Id.* If these amounts are finally approved, $3,349,133 will be available to pay Class Members who submit eligible claims. The Court preliminarily approved the Agreement on December 6, 2019. ECF 172. In its order, the Court found this settlement is "fair, reasonable, and adequate," and directed the Parties to implement the proposed notice plan. *Id.*

The Court-approved Settlement Administrator, Kurtzman Carson Consultants ("KCC"), carried out the notice plan, and the deadline to request exclusion or make a claim was April 13, 2020. News of the settlement went 'viral' and the response from the Class has been tremendous: only two class members requested exclusion, no

---

[1] All capitalized terms have the same meanings as ascribed in the Agreement.

objections have been received, and 723,229 individuals made eligible claims. Based on this data, individual cash reimbursements will decrease *pro rata* such that eligible Class Members will receive a refund of approximately $0.73 per bottle. Nearly 75% of claimants claimed 7 or more bottles, and will therefore each receive approximately $5.11 under the settlement.[2] KCC is continuing to manually review the claims, and Plaintiffs will provide updated claims data in advance of the Final Approval Hearing.

Moreover, the injunctive component of the proposed settlement provides meaningful changes to Infants' Tylenol's packaging, advertising and business practices, includes but is not limited to: (i) changing the picture of the child on the Infants' packaging; (ii) adding text to J&J's website to the effect that the medicine in Infants' and Children's contains the same concentration of Acetaminophen; and, (iii) committing to educate and inform consumers that the medicine in Infants' and Children's contains the same concentration of acetaminophen, in response to inquiries and complaints to J&J's customer care center regarding comparisons of Infant's and Children's; and (iv) continuing to include language on dosing charts that JJCI provides to healthcare providers to the effect that the medicine in Infants' and Children's contains the same concentration of acetaminophen. These changes in business practices directly address the gravamen of Plaintiffs' allegations, namely, that J&J's marketing of Infants' deceives consumers into believing it is specially formulated for infants.

For these reasons and others discussed further below, Plaintiffs respectfully request the Court grant final approval of the proposed class action settlement.

## II.    Background

### A.    Nature of the Litigation

Plaintiffs sued J&J on October 5, 2017, and filed a First Amended Complaint ("FAC") on November 21, 2017. ECF 1, 31. The FAC alleges J&J violated

---

[2] Claimants may be reimbursed for a maximum of 7 bottles without documentation. If they submitted valid proofs of purchase with their claims, claimants may be reimbursed for more, up to the number of bottles for which they have proof.

California's False and Misleading Advertising Law ("FAL"), Cal. Bus. & Prof. C. §§17500, *et seq*.; Consumer Legal Remedies Act ("CLRA"), Cal. Civ. C. §§1750, *et seq*.; and, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. C. §§17200, *et seq*. ECF 31. Plaintiffs, individually and on behalf of a putative national class a class of Infants' purchasers, sought restitution, damages, injunctive relief, declaratory relief, attorneys' fees and costs. *Id*.

Defendant JJCI manufactures and markets the pediatric pain-relievers Infants' Tylenol and Children's Tylenol. Plaintiffs allege the medicine contained in a bottle of Infants' (160 mg/ 5mL of acetaminophen) is the same as the medicine in Children's Tylenol ("Children's"). ECF 31 at ¶20. Thus, the representations on the front of a box of Infants' (the name Infants' Tylenol and the photo of a mother holding a baby) are likely to deceive reasonable consumers into believing the medicine in Infants' is unique or specially formulated for infants. ECF 31 at ¶¶59-113. The only material differences between Infants' and Children's are the sizes available, the plastic dosing device included in the products' packaging (Infants' includes a syringe, Children's a tiny cup), and the products' respective prices (Children's costs four times more, per ounce, than Infants'). ECF 74, p.3.

After the Court denied J&J's Motion to Dismiss (ECF 54), they filed their Answer to the First Amended Complaint on March 13, 2018. ECF 55. J&J denied and continues to deny all of Plaintiffs' allegations. *Id*., ECF 139, p 1; Agreement §II(F). Defendants' primary defense centered around the purported safety benefits of the plastic syringe contained in the Infants' packaging (which J&J contend is more expensive and safer for children under two years of age). Agreement §II(F). J&J also contends the products are not identical and the packaging is not deceptive. *See id*.

## B. Procedural History

### 1. A Litigation Class Was Certified and Notice was Disseminated.

On October 19, 2018, after full briefing and oral argument, the Court granted Plaintiffs' motion to certify a California class of Infants' purchasers. ECF 117, 118.

J&J immediately sought interlocutory appellate review in a Rule 23(f) Petition. Declaration of Gillian L. Wade, filed concurrently herewith ("Wade Dec.") at ¶6. Plaintiffs opposed, and on December 19, 2018 the Ninth Circuit denied J&J's Petition. *Id*.

After the class was certified (and while the Rule 23(f) Petition was pending), Class Counsel selected KCC to create notice documents, create a notice plan, and provide notice to the certified California class. *Id*. at ¶7. They also extensively met and conferred with J&J about KCC's proposed notice plan before submitting it to the Court for approval. ECF 24. After two hearings on Plaintiffs' contested Motion for Order to Approve Class Notice Plan and Content of Notice, the Court approved the proposed plan and appointed KCC as the notice administrator on January 10, 2019. ECF 123, 127, 129, 131. A few days later the Court granted the Parties' stipulation to slightly revise the class definition to "All persons who purchased, in California, Infants' Tylenol for personal use since October 3, 2014" (the "Litigation Class"). ECF 132. Notice to the Litigation Class went out in February 2019, and there were no opt-outs. Wade Dec.¶7.

### 2.    The Parties Completed Fact and Expert Discovery and Engaged in Significant Discovery-Related Motion Practice.

Before fact discovery closed on May 17, 2019, the Parties completed full merits discovery, which was a contentious process. They engaged in many in-person meetings between counsel and filed several L.R. 37-2 joint stipulations before Magistrate McDermott. *See* ECF 64, 71, 85, 121, 152.

Specifically, Plaintiffs obtained and analyzed over 62,000 documents, and J&J's written discovery responses regarding the safety, marketing, packaging, sale, and distribution of Infants' and Children's. Wade Dec. ¶8. Class Counsel also deposed J&J's four Rule 30(b)(6) corporate representatives in Philadelphia. *Id.* Following multiple conferences between the Parties, Plaintiffs brought, and prevailed on, a motion to compel J&J to produce documents and information regarding, *inter alia*,

the marketing and sales of Children's. ECF 71.

Plaintiffs also prepared and sat for depositions, responded to dozens of Special Interrogatories, over 100 document requests and nearly 50 Requests for Admissions. *Id.* In their written discovery requests and depositions, J&J sought highly personal and confidential discovery, such as medical records for Plaintiffs' two minor daughters. Wade Dec. ¶9. The Parties met and conferred to discuss Plaintiffs' written discovery responses on multiple occasions, and J&J ultimately filed a L.R. 37-2 Joint Stipulation to compel further responses, which was denied. *Id.* The Parties also briefed J&J's request for leave to re-depose each Plaintiff to ask them about their purchases and uses of pediatric acetaminophen products during the 10 months following their depositions. ECF 143. The Magistrate denied J&J's request. ECF 152.

The Magistrate also granted, in part, Plaintiffs' motion to quash J&J's subpoenas to pediatricians who treated Plaintiffs' minor daughters. ECF 85. The Magistrate's order limited the scope of the documents and deposition testimony J&J could obtain from the pediatricians. *Id*. The pediatricians' depositions took place before J&J opposed class certification. *Id. See also* ECF 102.[3]

At the time of settlement, the Parties had nearly completed full expert discovery, having exchanged opening expert reports and rebuttal reports. Wade Dec.¶10. Both of Plaintiffs' retained experts (Drs. Maronick and Sharp) were deposed.[4] *Id.* J&J designated two retained experts and five non-retained experts, as well as two rebuttal experts. *Id.* Four of J&J's experts were scheduled to be deposed but only one went forward before the Parties settled. *Id.*

### 3. The Parties Engaged in Non-Collusive, Arms-Length Settlement Negotiations.

The parties attended private mediation with the Honorable Charles (Tim)

---

[3] Both parties designated the pediatricians as experts for trial. Wade Dec. ¶9.
[4] Dr. Sharp was deposed twice—once regarding the contents of his preliminary expert analysis submitted with Plaintiffs' class certification motion and again after his formal expert report was produced. Wade Dec.¶11.

McCoy Ret.) at JAMS on April 4, 2019. *Id.* at ¶12; ECF 121, 135, and 138. A settlement was not reached during the mediation, but Judge McCoy continued facilitating settlement discussions the next three months that followed. *Id.* On the eve of the close of expert discovery, and less than a week before the motion cut-off, the parties reached an agreement in principle. ECF 121; Wade Dec. ¶12. The parties spent three additional months negotiating the details of the settlement, and another three months working to get the settlement preliminarily approved. *Id.*

### 4. The Court granted preliminary approval, conditionally certified the settlement Class and ordered dissemination of notice.

Plaintiffs moved for preliminary approval on September 24, 2019, which was heard on October 21, 2019. ECF 162, 168. At the October 10 hearing, the Court issued a tentative ruling and offered comments and suggestions on minor, mostly clerical revisions to the settlement documents. ECF 166 at 7, ECF 169 at 1. The Parties agreed to amend the original Stipulation of Settlement (ECF 162-1, Ex. 1) to address these comments. ECF 169. The Amended Stipulation of Settlement (ECF 169-1) included only one substantive change: the number of opt-outs required before J&J may terminate or modify the Agreement was increased from 100 to 250. Agreement ¶VI(D)(3). After additional hearings and revisions to the notice documents, the Court ultimately granted preliminary approval on December 6, 2019. ECF 172. In its order, it conditionally certified the settlement Class, directed that Notice be given in accordance with the proposed notice plan, and set the Final Approval Hearing for May 11, 2020. *Id.* The deadline to object was continued to May 26, 2020, and the Final Approval Hearing was continued to June 22. ECF 174.

## C. Summary of the Settlement Terms

### 1. The Settlement Class

The Settlement includes expanding the California-only Litigation Class to a national class. Agreement §V. Accordingly, Plaintiffs respectfully request final certification of the following Class for settlement: all individuals in the United States

who purchased Infants' Tylenol (the "Challenged Product") within the Class Period for personal or household use. Specifically excluded from the Class are (a) Defendants, (b) the officers, directors, or employees of Defendants and their immediate family members, (c) any entity in which Defendants have a controlling interest, (d) any affiliate, legal representative, heir, or assign of Defendants, (e) all federal court judges who have presided over this Action and their immediate family members; (f) all persons who submit a valid request for exclusion from the Class; and (g) those who purchased the Challenged Product for the purpose of resale or for use in a business setting. *Id.* at §I(11).

### 2. Monetary Recovery

JJCI will make a non-reversionary total cash payment of $6.315 million, which will be used to pay the following, in this order: (1) Settlement Administration Expenses; (2) reasonable attorneys' fees and costs; (3) service awards to Plaintiffs; and, (4) valid claims by settlement Class Members. Agreement §III(B).

Under the Agreement, each settlement Class Member was entitled to submit a claim for up to $2.15 per bottle of Infants' Tylenol purchased during the Class Period, regardless of the size purchased (Infants' is sold in 1oz and 2oz bottles). Class Members *with* proof of their purchase for all of their Infants' Tylenol purchases during the Class Period could make claims for every bottle, without limitation.[5] Class Members *without* proof of purchase for all of their Infants' Tylenol purchases during the Class Period could make claims for up to 7 bottles. Practically speaking, this means that claimants' compensation will be limited to a refund for the greater of (i) 7 bottles or (ii) the number of bottles for which they provide proof of purchase.

Under the terms of the Agreement, depending on the number of eligible claims, the Class Members' awards could have either decreased *pro rata* or increased *pro rata* (up to Infants' MSRP during the Class Period). Agreement §§III(B)(f)-(h).

---

[5] A valid proof of purchase means a receipt or other documentation by a third-party commercial source that reasonably establishes the fact and date of a purchase of Infants' Tylenol during the Class Period in the U.S. Agreement §III(B)(1)(e)(1).

Because of the volume of claims received to date, Class Members' individual awards will be decreased *pro rata.* Given the number of eligible claims as of May 1, 2020 (723,229), each claimant will receive approximately $0.73 for each bottle claimed (regardless of whether they submitted receipts). Declaration of Carla Peak ISO Final Approval ("Peak Dec.") at ¶ 22.[6] Each of the nearly 75% of Class Members who claimed 7 or more bottles, will receive approximately $5.11. *Id*. Plaintiffs will provide updated data in advance of the Final Approval Hearing, once KCC finishes their review of claims for fraud and validates the sufficiency of the proofs of purchase submitted. *Id*. Additionally, because the final amount to each Class Member depends on the total number of valid claims and whether the Court approves Plaintiffs' requests for attorneys' fees, costs, and service awards, the per-bottle amount may change.

If any distribution payments to Class Members are not cashed within 180 days or otherwise not payable, the remaining money will be disbursed to Nurse Family Partnerships, a community health program that provides low-income, first-time expecting mothers with visits and support from specially trained nurses. Agreement §III(B); ECF 162-1 at 93-94 (copy of 'About Us' page for Nurse Family Partnerships).

### 3.    Injunctive Relief

JJCI agreed to meaningful injunctive relief that directly addresses Plaintiffs' concerns and allegations. Specifically, within 180 days of the Effective Date, JJCI agrees to do the following for a period of 2 years: (a) change Infants' current packaging so that the child depicted on the front of the packaging is at least two years of age, to reflect the age of the child for which dosing instructions are provided;[7] (b)

---

[6] KCC received a total of 841,426 timely claims, but after an initial review to remove duplicates, only 723,229 claims are eligible.

[7] This excludes packaging on retailer websites and/or other channels outside of JJCI's control. If FDA approves relevant changes to the dosing instructions on the label of Infants' within that timeframe, JJCI can update the image accordingly.

add text on JJCI-controlled websites to the effect that the medicine in Infants' and

Children's contain the same concentration of liquid acetaminophen; (c) commit to

educating and informing consumers that the medicine in Infants' and Children's

contains the same concentration of acetaminophen, in response to inquiries and

complaints to the CCC regarding comparisons of Infant's and Children's; and (d)

continue to include language on dosing charts that JJCI provides to healthcare

providers to the effect that the medicine in Infants' and Children's contains the same

concentration of acetaminophen. Agreement §III(A)(1).

### 4.    The Release by Class Members

Class Members who did not properly exclude themselves by the deadline to do

so will be bound by the following Release:

> As of the Effective Date, in consideration of the settlement
> obligations set forth herein, any and all claims, demands, rights,
> causes of action, suits, petitions, complaints, damages of any kind,
> liabilities, debts, punitive or statutory damages, penalties, losses and
> issues of any kind or nature whatsoever, asserted or unasserted,
> known or unknown (including, but not limited to, any and all claims
> relating to or alleging deceptive or unfair business practices, false or
> misleading advertising, intentional or negligent misrepresentation,
> negligence, concealment, omission, unfair competition, promise
> without intent to perform, unsuitability, unjust enrichment, and any
> and all claims or causes of action arising under or based upon any
> statute, act, ordinance, or regulation governing or applying to
> business practices generally, including, but not limited to, any and all
> claims relating to or alleging violation of Cal. Bus. & Prof. Code
> § 17200 *et seq.*; Cal. Bus. & Prof. Code § 17500 *et seq.*; and Cal. Civ.
> Code § 1750 *et seq.*, arising out of or related to the Action, including
> the alleged false advertising at issue in the Action, that were asserted
> or reasonably could have been asserted in the Action by or on behalf
> of all Releasing Parties, whether individual, class, representative,
> legal, equitable, administrative, direct or indirect, or any other type
> or in any other capacity, against any Released Party ("Released
> Claims") shall be finally and irrevocably compromised, settled,
> released, and discharged with prejudice.

Agreement §IV(A). The Release also includes a Cal. Civ. C. §1542 waiver. *Id.* at

§IV(B).

### 5. Payment of Litigation and Settlement Administration Costs, Attorneys' Fees and Service Awards

As set forth in detail in the concurrently-filed motion, Class Counsel are requesting service awards of $4,000 each to Mr. Elkies and Ms. Alfandary. Agreement §III(B)(1). The service awards will be paid from the Settlement Amount to compensate Plaintiffs for their time and effort in this case, and for the risks they undertook in prosecuting the Action.

Class Counsel's concurrently-filed Application for Attorneys' Fees and Costs requests attorneys' fees in the amount of $2,083,950, which is 33% of the Settlement Amount. *Id*. at §VIII(A); *See* Declaration of Noel Nudelman ISO Motion for Attorneys' Fees and Costs ("Nudelman Dec.") at ¶3. This amount is less than Class Counsel's total lodestar. *Id*. at ¶105. Class Counsel also seeks reimbursement of litigation costs of $357,917. *Id*. at ¶4; *See also* Agreement at §VIII(A) (authorizing up to $385,000 for costs). As stated in the concurrently-filed fee brief,[8] significant (but necessary and reasonable) costs were incurred, including the costs of litigation class notice ($64,838), fees for testifying and consulting experts, and twelve depositions (most of which took place outside of California).[9] *See* Nudelman Dec. ¶¶118, 121.

### D. The Court Granted Preliminary Approval of the Settlement and Notice to the Settlement Class Was Disseminated.

A portion of the Settlement Amount will be used to pay for Settlement Administration Expenses, up to $516,000. Agreement §§ I(A)(34), III(B)(1)(a), Addendum A. The Settlement Class Notice Program was designed to give the best notice practicable, tailored to reach putative settlement Class Members, and reasonably calculated under the circumstances to apprise them of the Settlement and their right to make a claim for money, opt-out, or object. Peak Dec. ¶¶ 27-29. The

---

[8] This application is being filed 21 days before the deadline for Class Members to object or opt out. *Id*. at §VIII(A)(2).

[9] Counsel will not seek reimbursement from the Settlement Amount for any of the future expenses they will inevitably incur after this motion is filed (*e.g.* filing fees, parking expenses, etc.).

straightforward, single page Claim Form is easy for settlement Class Members to understand. *Id.* at Ex. 8 (Claim Form).

After the Court entered the Preliminary Approval Order, the Parties and KCC carried out their duties in connection with the administration of the settlement as set forth in the Agreement. Settlement Class Notice was comprised of the following: (1) a press release; (2) publication of the Summary Notice in *Parents* magazine; (3) digital notice distributed on a variety of websites and social media platforms (with links to the Settlement Website; (4) a website dedicated to the settlement at www.infantstylenolsettlement.com, which posted copies of the Detailed notice and other important case documents; (5) a toll-free hotline to provide Class Members with information, including responses to frequently asked questions and important dates and deadlines; and, (6) publication of the Summary Notice in Los Angeles Daily News for four consecutive weeks. Peak Dec.¶ 11, Ex. 7 (press release), Ex. 5 (Summary Notice), Ex. 6 (Digital Notice). The Detailed Notice, Claim Form, Press Release, toll-free number, and media notice are in English and Spanish. *Id.* Links to the Settlement Website were also placed on Class Counsel's respective firm websites. Agreement VI(B); Wade Dec.¶17. The deadline to make claims or opt out was April 13, and the deadline to object is May 26, 2020.

News of the settlement went viral and the number of claims far exceeded KCC's estimates and Class Counsel's expectations thus the cost to administer the large number of claims will be more than $516,000.[10]

## III.   The Proposed Settlement Warrants Final Approval

### A.     The Settlement Class Should Remain Certified.

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the settlement class satisfies the requirements of Fed. R. Civ. P. Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.,* F.3d 1011, 1019-1022 (9th Cir.

---

[10] However, Plaintiffs' request for Settlement Administration Expenses is limited to the maximum amount allowed under the Agreement ($516,000). Agreement §§ I(A)(34), III(B)(1)(a), Addendum A.

1998). The Court explained in its October 2018 ruling why certification of a California class in this case was warranted. ECF 117. The Court's tentative ruling on Plaintiffs' Motion for Preliminary Approval incorporated that discussion, and found that certification of a nationwide class for settlement purposes was also warranted. ECF 166 at 3.[11] No facts that would affect these requirements have changed since the Court preliminarily approved the settlement in December 2019, and this motion incorporates by reference the prior analysis as set forth in the Motion for Preliminary Approval, the tentative ruling, and the Preliminary Approval Order. *See* ECF 117, 118; ECF 166, ECF 172 at 3-4.

Accordingly, the Court need not revisit class certification here, and the Class should remain certified for settlement. *See In re Lenovo Adware Litig.,* NO. 15-md-02624-HSG, 2019 U.S. Dist. LEXIS 69797, *20 (April 24, 2019).

**B.    Class Members Received Adequate Notice.**

Final approval is proper if the Court determines that notice to the Class was "the best notice that is practicable under the circumstances[.]" Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Rule 23 specifically permits notice to be provided by "electronic means," as it was here. Fed. R. Civ. P. 23(c)(2)(B). Though Rule 23 mandates that reasonable efforts are made to reach all class members, it does not require that each individual actually receive notice. *See Silber v. Mabon*, 18 F.3d 1454 (9th Cir. 1994) (the standard for class notice is "best practicable" notice, not "actually received" notice). The content of notice "must clearly and concisely state in plain, easily understood language" essential settlement information, such as the nature of the action, the class definition, how and when class members may request exclusion, and the binding effect of a class judgment. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

---

[11] The Court's tentative ruling noted that no one has yet argued for the application of law other than California's, nor demonstrated any conflict between the laws of California and any other State. ECF 166 at 3 (citing *Espinosa v. Ahearn* (*In re Hyundai & Kia Fuel Economy Litig.*), 926 F.3d 539, 559 (9th Cir. 2019) (*en banc*)). This remains true.

At preliminary approval, the Court approved the proposed notice plan, which called for a multi-prong program by KCC. See ECF 172. The proposed plan contemplated notice via a press release, a robust online media campaign using targeted Internet banner ads online linking to the Settlement Website, and publication in *Parents* magazine and *Los Angeles Daily News*. *Id.*

The content of the notice documents provided all of the requisite information in plain, easily understood language. *See* Peak Dec.¶ 8-16, Exs. 4-8 (attaching copies of the notice documents). Additionally, the notice plan was successfully implemented as the Court directed.[12] Indeed, news of the settlement went "viral" and, as of May 1, 723,229 individuals have made eligible claims. Peak Dec.¶ 19.  There were only two opt-outs and to-date no objections have been received. *Id.*

## C.    The Settlement is Fair, Reasonable and Adequate.

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class action settlement "only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 944 (9th Cir. 2015). In evaluating a class action settlement, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Hanlon,* 150 F.3d at 1025 (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981)). Nevertheless, the District Court does not have the "ability to delete, modify, or substitute certain provisions." *Id.* At 1026. In evaluating a class settlement as fair reasonable and adequate, a court must consider whether:

    (A)   the class representatives and class counsel have adequately represented the class;

    (B)   the proposal was negotiated at arm's length;

    (C)   the relief provided for the class is adequate, taking into account:

        (i)   the costs, risks, and delay of trial and appeal;

        (ii)   the effectiveness of any proposed method of

---

[12] An extensive description of the notice plan is included in the Peak Declaration.

distributing relief to the class, including the
method of processing class-member claims;

   (iii)   the terms of any proposed award of attorney's
fees, including timing of payment; and

  (iv)   any agreement required to be identified under Rule
23(e)(3); and

  (D)   the proposal treats class members equitably relative
to each other.

Fed. R. Civ. P. 23(e)(2). [13]

Courts should apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.,* No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13 (N.D. Cal. Dec. 17, 2018). A district court "may consider some or all of the following factors" when assessing whether a class action settlement is fair, reasonable and adequate: (1) strength of the plaintiffs' case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) presence of a government participant; and, (8) reaction of the class members to the settlement. *See Rodriguez v. W. Publ'g Corp.,* 563 F. 3d 948, 963 (9th Cir. 2009) (citing *Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003) and *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003)); *see also Churchill VIll., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) (same). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982). As set forth below, the settlement is well within the range of what the Court might finally approve.

---

[13] Subsection (e)(2) was added to Rule 23 as part of the 2018 amendments. Fed. R. Civ. P. 23, *Advisory Comm. Notes.* The Advisory Committee explains that adding these specific factors to Rule 23(e)(2) was not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*

1.    **The Settlement Satisfies Fed. R. Civ. P. Rule 23(e)(2).**

a.    **Plaintiffs and Class Counsel have adequately represented the Class.**

As part of its Rule 23(a) analysis in certifying the Litigation Class, this Court held that Plaintiffs are adequate class representatives, noting they "are obviously vigorously prosecuting this action." ECF 117 at 10; ECF 118. The Court also found that "the proposed class counsel are clearly qualified (and assert they have sufficient resources) to litigate this action on a class-wide basis." ECF 117 at 10. The Court reiterated these findings in granting preliminary approval. ECF 172.[14] Thus, Plaintiffs and Class Counsel have demonstrated their adequacy.

b.    **The settlement was negotiated at arms' length.**

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez,* 563 F.3d at 965. Protracted settlement negotiations with the assistance of a mediator also weigh highly in favor of granting preliminary approval. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) ("presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness"). Here, the parties first engaged in settlement negotiations at a Court-ordered private mediation in April 2019 with Judge McCoy, and it took another three months for the Parties to reach an agreement in principle, which was less than a week before the motion cut-off date. Wade Decl. at ¶12. They then spent another several months working out the details of the Agreement. *Id.* It is an understatement to say the parties' negotiations were arms-length throughout the entire process. *Id.*

c.    **The settlement relief is adequate, considering the costs, risks, and delay of trial and appeal.**

Consistent with Rule 23's instruction to consider "the costs, risks, and delay of

---

[14] In its tentative ruling regarding preliminary approval, the Court noted "Plaintiffs and their counsel defeated challenges to the viability of their allegations, their attempt to obtain certification of a California class of consumers, and to their proposed notice-plan." ECF 166 at 5.

trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in this Circuit similarly evaluate the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; and the risk of maintaining class action status throughout the trial. *See, e.g. Rodriguez*, 563 F.3d at 963. Consideration of the *Rodriguez* factors in conjunction of the new Rule 23(e)(2)(C)(i) requirements also support final approval. Generally, the principle risks to be assessed are the difficulties and complexities of proving liability and damages. *See, e.g., Mego,* 213 F. 3d at 458-59; *Torrisi v. Tuscon Electric Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993) (approval based on uncertainty of claims and avoidance of summary judgment); *Officers for Justice,* 688 F.2d at 625 (approval based in part on possibility judgment after trial, when discounted, might not reward members for their patience and delay).

### i.    Plaintiffs' case faced significant barriers.

Plaintiffs believe their claims are meritorious, but J&J raised, and would continue to raise, challenges to the legal and factual basis for such claims. Wade Decl. at ¶19. To prevail at trial, Plaintiffs would need to prove not only that the challenged representations mislead consumers into believing Infants' was specially formulated for infants, but also the following: J&J's omission of an express statement telling consumers that Infants' contains the same medicine as Children's is material; the representations and/or omissions caused Plaintiffs and the Litigation Class' injuries; and, restitution (under the UCL) and/or damages (under the CLRA) was recoverable. To obtain punitive damages under the CLRA, Plaintiffs would also have had to prove J&J's conduct constitutes fraud, oppression or malice. *Id.*

Plaintiffs and Class Counsel are also pragmatic in their awareness that to succeed at trial, Plaintiffs would have needed to overcome J&J's defenses on the merits and prove damages. *Id.* Throughout the litigation, J&J has taken the position that the challenged representations are not deceptive, and that the phrase "specially formulated" does not appear in any Infants' marketing and is undefined and immaterial. *Id.* J&J also presented expert testimony they claim demonstrates some

consumers purchased Infants' (rather than Children's) because they wanted the syringe, and were willing to pay more for it. *Id.* J&J also defended their conduct on a robust safety argument. Namely, that Infants' and Children's are not the same products because—for safety reasons—they (i) contain different dosing devices and (ii) utilize different bottle flow restrictors to prevent accidental overdose. *Id.* Further, J&J mounted serious attacks on Plaintiffs' experts. *See, e.g.* ECF 103; Wade Dec. at ¶21. For example, J&J's marketing expert criticized the consumer survey Plaintiffs' marketing expert presented. Additionally, J&J hired two experts to rebut and criticize Dr. Sharp's damages model as faulty and unreliable because, inter alia, he did not properly account for the purported "benefits" of Infants' versus Children's. *Id.*

### ii. The risk, expense, complexity, and duration of continued litigation favor final approval.

The second *Rodriguez* factor is closely related to the first and evaluates the risk, expense, and likely duration of further litigation. Here, at the time of settlement, J&J was less than a week away from filing motions seeking summary judgment, exclusion of Plaintiffs' experts, and decertification. Wade Decl. ¶¶12, 22, 23. Continued litigation would have posed substantial risks and generated significant additional costs. *Id.* In addition to proceeding past these motions (the granting of any one of them would have been a death-knell to Plaintiffs), taking this case to trial would require the investment of substantial additional resources. *Id.*

Even if Plaintiffs prevailed at a class trial, any recovery could be delayed for years by appeal, which could have further delayed and jeopardized the Litigation Class' recovery. *Id.* And if the Litigation Class stayed certified through trial, any adverse judgment would bind the entire Litigation Class. *Id.* Because such additional litigation would have "in the best-case scenario been expensive and time-consuming—and in the worst-case scenario, could have led to Plaintiff[s] and the Class going home empty-handed," this factor likewise supports final approval. *See McDonald v. CP OpCo, LLC*, No. 17-cv-04915-HSG, U.S. Dist. LEXIS 80501, at

*13 (N.D. Cal. May 13, 2019).

### iii. The risk of maintaining the Litigation Class' class status favor of final approval.

Protracted litigation carries inherent risks that would have endangered maintaining the Litigation Class' certification status. J&J had advised Class Counsel of its intent to file a motion to decertify, which was due less than a week before the parties settled. Wade Decl. ¶23. Class Counsel is confident the decertification motion would have been denied, but recognize that any class certification order "may be altered or amended" at any time before final judgment, including after a full trial on the merits. *Id. See also* Fed. R. Civ. P. 23(c)(1)(C) and *Armstrong v. Davis,* 275 F.3d 849, 871 (9th Cir. 2001) (district court retains broad authority to modify or withdraw certification order).

### iv. The settlement amount offered is just one component of the settlement and is adequate.

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice v. Civil Service Comm'n of the City and Cnty. of San Francisco,* 688 F.2d 615, 628 (9th Cir. 1982). "It is well settled law that a cash settlement amounting only to a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000). Here, a comparison of the settlement award (comprised of both monetary and injunctive relief) to the potential damages that might be recovered at trial, given the risks of the litigation, supports the reasonableness of the settlement.

There is substantial value to the proposed injunctive relief. This includes meaningful changes to the Infants' packaging and the information J&J will communicate (*via* its website and customer care center) to consumers about the liquid

medicine within bottles of Infants' and Children's. Agreement §III(A)(1). J&J also agrees to continue including language on dosing charts that JJCI provides to healthcare providers to the effect that the liquid medicine in both Infants' and Children's contains the same concentration of liquid acetaminophen. *Id*. These changes in business practices and conduct directly address Plaintiffs' allegations.

As for the cash component, the proposed settlement requires J&J to create a $6.315 non-reversionary common fund, from which Class Members could have made claims for $2.15 per bottle without any limitation on the number of bottles with proof of purchase, and up to seven bottles without proof of purchase. The per-person amount available under the Settlement is fair and adequate, given Plaintiffs' damages expert calculated Plaintiffs' best-case-scenario at trial would be a price premium of $2.41 per ounce, or a blended rate of $3.89 per bottle. *See* Wade Dec. ¶24. Due to the robust claims rate, the amount per bottle available from the fund will be decreased *pro rata* to approximately $0.73 per bottle. The vast majority of Class Members who claimed the maximum 7 amount of bottles without proof of purchase (74.9% of claimants), will receive a total of approximately $5.11 each. This amount is equal to approximately 1.3 price premiums. Moreover, uncashed distribution checks will also be donated to Nurse Family Partnerships, thus ensuring the unused funds never revert back to J&J. Agreement § II(B)(i).

This settlement, particularly in light of the risks and costs of further litigation, falls within the range of reasonableness. *See Hendricks v. Starkist Co*., No. 13-cv-00729-HSG, 2016 U.S. Dist. LEXIS 134872, at *17 (N.D. Cal. Sep. 29, 2016) (*aff'd sub nom. Hendricks v. Ference*, 754 App'x 510 (9th Cir. 2018) (settlement "constituting only a single-digit percentage of the maximum possible exposure" was reasonable); *Gaudin v. Saxon Mortg. Servs., Inc*. No. 11-cv-01663-JST, 2015 U.S. Dist. LEXIS 159020, at *16-17 (N.D. Cal. Nov. 23, 2015) (final approval warranted where net settlement amount represented 13.6% of plaintiff's estimated maximum

recovery at trial).

### d. The methods for processing claims and distributing monetary relief are effective and adequate.

As explained by the 2018 Advisory Committee Notes to Rule 23, a "claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." The proposed method of processing claims here strikes that delicate balance.

Class Members who sought monetary relief under the Settlement needed only submit a relatively simple claim form online. Peak Dec., Ex. 8. The one-page Claim Form only required Class Members to provide their contact information and basic information about their purchases of Infants' (e.g. number of bottles purchased and whether they purchased 1oz or 2 oz bottles). *Id*.[15] Settlement Class Members had the option of making claims online or by printing the Claim Form and mailing it to the Settlement Administrator. Peak Dec.¶17. Payments to Class Members who submitted valid Claim Forms will be disbursed directly to eligible claimants. *Id*. at ¶ 22.

Both the claims process and method for distributing the monetary portion of the settlement are claimant-friendly, efficient, and support final approval.

### e. The terms of the proposed award of attorneys' fees is fair.

The Agreement provides that Class Counsel may apply for an award of attorneys' fees of no more than 33% of the Settlement Fund ($2,083,950). Agreement §VIII(A)(1), (3). *See, e.g., Barbosa v. Cargill Meat Solutions Corp.,* 297 F.R.D. 431, 448-455 (E.D. Cal. 2013) (awarding fees equal to one-third of the common fund in class action settlement and collecting cases). This amount is approximately 87% of Class Counsel's lodestar. Nudelman Dec. ¶ 105. Notably, in its tentative ruling regarding preliminary approval, the Court commented that the 33% Class Counsel

---

[15] Receipts were not required, but claimants could attach them to receive reimbursement for more than 7 bottles. *Id.*

seeks under the settlement is "entirely consistent with what most class plaintiffs' counsel seek (at least at first) even in cases where they have done much less work." ECF 166 at 7. The Agreement also provides that Class Counsel may apply for an award of litigation expenses up to $385,000. Agreement §VIII(A)(4).

If attorneys' fees and costs are awarded by the Court, the timing for payment of attorneys' fees under the Agreement is fair and reasonable. Specifically, payment will occur after the Effective Date, which is well after the appeals process and entry of a Final Settlement Order and Judgment. *Id.* §VII(A). Moreover, in the event that the Court denies or decreases the amount of attorneys' fees and/or costs requested, such denial or decrease will not invalidate the Agreement. *Id.* at §VIII(A)(6).

Accordingly, as detailed in Plaintiffs' concurrently-filed motion (incorporated herein by reference), the proposed attorneys' fees and costs are fair.

### f. There are no Rule 23(e)(3) supplemental agreements to identify.

Rule 23(e) requires that the parties identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The only agreements made in connection with the proposed settlement are Stipulation of Settlement (ECF 162) and subsequent Amended Stipulation of Settlement (ECF 169).

### g. Class Members are treated equitably relative to each other.

The 2018 Advisory Committee Notes to Rule 23 explain that this factor concerns "inequitable treatment of some class members vis-à-vis others. Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.* None of those concerns are present here.

Here, each Class Member is treated in the same manner with respect to the claims they are releasing and their eligibility for a monetary award. Even though

Infants' may have been sold at different prices based on retail location, Class Members will receive the same amount per bottle, regardless of the size actually purchased (Infants' is sold in 1 fl oz. and 2 fl oz. bottles) and the amount actually paid. Agreement §III(B)(2)(e). Overall, Class Members have the ability to obtain a payment commensurate with their potential losses, and does not favor one category of Class Members over others. This structure is fully in line with the 2018 Committee Notes' directive to "deter or defeat unjustified claims" without being "unduly demanding."

Similarly, the Agreement, which provides that Mr. Elkies and Ms. Alfandary may each apply for a service award of up to $4,000, does not improperly grant them preferential treatment. Rather, it is an appropriate amount to compensate them for their time and dedication to the case, particularly where they (and their daughters' pediatricians) were deposed and asked to provide highly controversial information and documentation concerning their daughters' medical history. *See, eg.,* ECF Nos. 85, 143, 152. *See also Ahmed v. HSBC Bank USA,* No. ED CV 15-2057 FMO (SPx), 2019 U.S. Dist. LEXIS 104401, *34 (C.D. Cal. Jun. 21, 2019) (finding $5,000 incentive award "presumptively reasonable") (citing *In re Online DVD-Rental,* 779 F.3d 934, 947-48 (9th Cir. 2015) (upholding $5,000 incentive awards that were roughly 417 times larger than that $12 award for class members).

### 2.     The Remaining Ninth Circuit Factors Weigh in Favor of Preliminary Approval.

The first four factors articulated by the Ninth Circuit in *Rodriguez,* 563 F. 3d at 963, are intertwined with Rule 23(e)(C)(2)(i)'s new criteria, thus Plaintiffs respectfully refer to the analysis of these issues in section VI(B)(2) above. As set forth below, consideration of the remaining *Rodriguez* factors further support approval.

### a.     Class Counsel had ample information to make an informed decision.

The fifth *Rodriguez* factor evaluates whether Class Counsel "had sufficient

information to make an informed decision about the case." *In re Lenovo Adware Litig.*, 2019 U.S. Dist. LEXIS 69797, at *27. Indeed, before entering into settlement discussions on behalf of a class, counsel should have "sufficient information to make an informed decision." *Linney v. Cellular Alaska Partnership,* 151 F.3d 1234, 1239 (9th Cir. 1998). *See also Lewis v. Starbucks Corp.,* No. 2:07-CV-00490-MCE-DAD, 2008 U.S. Dist. LEXIS 83192, at *6 (E.D. Cal. Sept. 11, 2008) (approval proper "as long as discovery allowed the parties to form a clear view of the strengths and weaknesses").

Here, Plaintiffs' case was extensively litigated: the Parties: (i) fully briefed and presented oral argument on Defendants' motion to dismiss; (ii) briefed multiple discovery-related LR 37-2 motions; (iii) completed all fact discovery, which included extensive written discovery and depositions; (iv) nearly completed all expert discovery, including the parties' formal disclosure of many opening and rebuttal experts; and (v) fully briefed and argued the issue of class certification and briefed the subsequent Rule 23(f) Petition, both of which Plaintiff ultimately prevailed on. Wade Dec. ¶26. This factor weighs in support of final approval. *In re Lenovo Adware Litig.*, 2019 U.S. Dist. LEXIS 69797, at *27 (extensive discovery, including review of thousands of pages, depositions, and briefing on motions to dismiss and to certify enabled parties to "assess the likelihood of success on the merits" and weighed in favor of final approval).

### b. Class Counsel believe the settlement is in the best interests of the Class.

The sixth *Rodriguez* factor considers "the experience and views of counsel" in deciding whether to approve a class settlement. *Rodriguez*, 563 F.3d at 967. This consideration reflects the idea that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation. *Id*. Where counsel are well-qualified to represent the class in a settlement based on their class action experience and familiarity with the

strengths and weaknesses of the action, "[c]ounsel's opinion is accorded considerable weight." *Carter v. Anderson Merchandisers, LP,* No. EDCV 07-0025-VAP, 2010 U.S. Dist. LEXIS 55629, at *8 (C.D. Cal. May 11, 2010)).

Here, Class Counsel have extensive experience prosecuting and settling class actions, particularly in the consumer protection context. See Wade Dec. ¶27-33. More importantly, Class Counsel vigorously prosecuted this case for nearly two years, and spent several additional months working out the details of the Agreement. *Id*. at ¶¶8, 12, 22, 24 Based on their experience and involvement, Class Counsel believe the settlement is adequate in light of the relief it provides and the risks attendant to continued litigation. *Id*. This factor therefore supports final approval.

### c.    No government entity has opposed the settlement.

The seventh *Rodriguez* factor takes into account the presence of any government participant and their views on settlement, if any. *Rodriguez*, 563 F.3d at 967. Here, in accordance with the Class Action Fairness Act, 28 U.S.C. §§1715, *et seq*., KCC caused notice of the settlement to be sent to the Attorneys General of all states and territories as well as the Attorney General of the United States. Peak Dec. ¶ 5. To date, no government agency has objected to the settlement. *Id*.[16]

### d.    The Class' favorable reaction to the settlement supports final approval.

The final *Rodriguez* factor evaluates how settlement Class Members have reacted to the settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class members." *In re Lenovo Adware Litig*., 2019 U.S. Dist. LEXIS 69797, at *16-17; see also *In re Linkedin User Privacy Litig*., 309 F.R.D. at 589 ("low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval"). Likewise, a high claims

---

[16] By pointing out that no government entity has objected to the Settlement, Plaintiffs in no way suggest that the Settlement enjoys the support of any government entity. Additionally, three weeks remain for objections to be lodged against the Settlement.

rate suggests class member support for the settlement. *See Larsen v. Trader Joe's Co.*, No. 11-5188, 2014 U.S. Dist. LEXIS 95538 (N.D. Cal. July 11, 2014) ("participation rate . . . weighs in favor of finding that the settlement is favorable to the class members").

Here, as of May 1, 2020 KCC has received 723,229 eligible claims—a tremendously favorable result that exceeded expectations. Peak Dec.¶ 22. Coupled with the absence of any objections to date and only two opt-outs, this factor weighs strongly in favor of final approval.

## IV.    Conclusion

Based on the foregoing, the Settlement is fair, reasonable and adequate. Thus, Plaintiff respectfully requests that the Court: (1) grant final approval of the Settlement; (2) finally certify the settlement Class; (3) authorize KCC to administer the settlement benefits to members of the settlement; (4) order Defendants to comply with the injunctive relief described in the Agreement; (5) authorize the entry of a final judgment and dismissal of the Action with prejudice; and, (6) rule on Plaintiffs' motion for attorneys' fees, costs and for service awards, filed concurrently herewith.

Dated: May 4, 2020                         Respectfully submitted,

_____
Gillian L. Wade
Sara D. Avila
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

Noel Nudelman
Richard D. Heideman
Tracy Reichman Kalik
**HEIDEMAN NUDELMAN & KALIK, P.C.**

*Counsel for Plaintiffs and the Class*